DocuSign Envelope ID: 1BF40E0A-A77A-454E-BA19-3F0B4A572985    Address: 423 BRANDYBUCK DRIVE, Sales Rep: Cameron McDonald    Job #708760046

8:26-cv-00097-DCC    Date Filed 02/02/26    Entry Number 24-4    Page 1 of 38    Printed: 11/10/2018

# HOME PURCHASE AGREEMENT

**NOTE:    THIS CONTRACT PROVIDES FOR MANDATORY BINDING ARBITRATION PURSUANT TO THE SOUTH CAROLINA UNIFORM ARBITRATION ACT, SECTIONS 14-48-10 ET SEQ., SOUTH CAROLINA CODE OF LAWS (1976, AS AMENDED).**

In consideration of the reciprocal covenants stated herein, **D.R. Horton, Inc., a Delaware Corporation**, ("Seller") and **Juanita E. Pickens and Raymond S. Pickens** (collectively, "Purchaser") agree as follows:

**1.   CONVEYANCE.**   Seller shall sell to Purchaser and Purchaser shall purchase from Seller all that certain parcel or tract of land located in **ANDERSON** County, SC, with a street address of **423 BRANDYBUCK DRIVE, PIEDMONT, SC   29673**, more particularly described as Lot **0046**, Block , **River Mill** Subdivision (the "Lot"), together with all improvements thereon and all appurtenances thereto collectively referred to as the "Property."

**2.   PURCHASE PRICE AND METHOD OF PAYMENT.**   Subject to adjustment as may be provided herein, the Purchase Price for the Property shall be: **Two Hundred Ninety Nine Thousand Nine Hundred and 00/100 Dollars ($299,900.00)** to be paid in cash as provided herein. The following is a breakdown of the Purchase Price as of the Effective Date (defined in Section 19 below):

| | |
|---|---|
| Base Price | **$284,990.00** |
| Plus Lot Premium | **+ $2,000.00** |
| Plus Options Selected To Date | **+ $23,480.00** |
| Minus Option Incentive | **<$8,070.00>** |
| Minus Special Discount | **<$2,500.00>** |
| Total Purchase Price | **$299,900.00** |

Purchaser acknowledges that the Special Discount shown above shall be provided to Purchaser as a credit against the Purchase Price only if Purchaser complies all of the terms and conditions of this Agreement and that such Special Discount shall be forfeited by Purchaser if Purchaser breaches the Agreement in any respect.   Purchaser further acknowledges that the above-stated Incentives are subject to the terms and conditions (including, without limitation, closing deadlines) set forth in Seller's marketing materials pertaining to such Incentives.

The terms of the subsection (a or b) checked below shall also apply.

**O  a.   No Financing Contingency.**

Purchaser shall pay to Seller the Purchase Price in cash at Closing (See Section 16 below). Within seven (7) business days of the Effective Date, Purchaser shall provide documentation to Seller that will verify to Seller's reasonable satisfaction that Purchaser has the available funds necessary to purchase the Property according to the terms of this Agreement. If Purchaser does not provide such documentation to Seller within that time period, then Seller may at its option terminate this Agreement by providing written notice to Purchaser of termination, in which event Seller shall retain the Earnest Money (see Section 4 below) and neither party shall have any further obligation or liability to the other hereunder.

**⊗  b.   Financing Contingency**

(1) Purchaser shall use its best efforts to obtain a loan in the principal amount of no more than **95%** of the Purchase Price, reduced to the next lowest hundred dollars, (the "Loan") to be secured by a first priority mortgage on the Property. The proceeds of the Loan, together with the balance of the Purchase Price, shall be paid to Seller by Purchaser in cash or other immediately available funds at Closing.

(2)   Purchaser shall apply for the Loan within <u>three (3)</u> business days after the Effective Date. **Failure by Purchaser to apply for the Loan within that time-period or to pursue approval of the Loan diligently thereafter shall constitute a material breach of this Agreement by Purchaser.** Within <u>seven (7)</u> days after the Effective Date, Purchaser shall provide Seller with a letter from Purchaser's lender confirming that Purchaser has pre-qualified for the Loan (the "Pre-qualification Letter"). Within twenty-one (21) days of the Effective Date, Purchaser shall provide Seller with a letter from Purchaser's lender confirming that the Loan has been conditionally approved (the "Conditional Approval Letter"). Within thirty (30) days of the Effective Date, Purchaser shall provide Seller with a letter from Purchaser's lender confirming that the Loan has been fully and finally approved, with no conditions or contingencies (the "Final Approval Letter"). If Purchaser fails to provide the Pre-qualification Letter, the Conditional Approval Letter or the Final Approval Letter to Seller within the applicable required time-period, then Seller, at Seller's option, may terminate this Agreement upon written notice to Purchaser, in which event the Earnest Money shall be refunded to Purchaser if Purchaser is not in breach of this Agreement, and thereafter neither party shall have any further liability or obligation to the other hereunder.

(3)   Purchaser acknowledges that there are many different loan programs available from many different lenders. Purchaser understands and acknowledges that certain loan/credit approvals are only valid for up to one hundred twenty (120) days. Purchaser shall update loan/credit approval documentation as needed in order to maintain current loan approval up until the date of closing. Purchaser agrees to execute all papers and perform all other actions necessary to obtain the Loan and to accept the Loan if approved by lender.

DocuSign Envelope ID: 1BF40E9A-A77A-454E-BA19-3F0B4A572985    8:26-cv-00097-DCC    Date Filed 02/02/26    Entry Number 24-4    Page 2 of 38

ldress:   423 BRANDYBUCK DRIVE, **Sales Rep:**   Cameron McDonald   Job #: **708760046**
**Printed:**   11/10/2018

Purchaser shall, in addition to the payment of principal and interest upon the Loan, pay at Closing such amounts as may be required by the lender to establish or maintain an escrow for insurance, property taxes or private mortgage insurance.

(4)    If Purchaser applies for and obtains a commitment for an FHA-insured or VA-guaranteed loan, then notwithstanding any other provision of this Agreement, Purchaser shall not be obligated to complete the purchase of the Property or to incur any penalty by forfeiture of earnest money or option money deposits or otherwise unless Purchaser has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Department of Veterans Affairs or a Direct Endorsement lender setting forth the appraised value of the property of not less than **$299,900.00**. The Purchaser shall have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development ("HUD") will insure. HUD does not warrant the value or the condition of the property. Purchaser should satisfy himself/herself that the price and condition of the property are acceptable.

**3. FINANCIAL INFORMATION.**  Purchaser acknowledges that Purchaser's financial situation may affect Purchaser's ability to obtain a loan and/or purchase this Property. Purchaser further acknowledges that it is important for the Seller to know Purchaser's financial situation and Purchaser's ability to obtain financing. Purchaser hereby grants permission for the Seller to contact any mortgage company or financial institution to which Purchaser may apply for a loan and to discuss Purchaser's financial situation and prospects of obtaining a loan. Purchaser hereby authorizes any mortgage company or financial institution from which Purchaser may seek a loan to discuss Purchaser's financial status with the Seller and to provide the Seller with any documentation or information regarding said financial status, including but not limited to Purchaser's credit score.  **Purchaser hereby authorizes and directs the settlement agent conducting the Closing to disclose to Seller the type of mortgage loan obtained by Purchaser (e.g., FHA, VA, USDA, Conventional) to purchase the Property**.

**4. DEPOSITS.**

a.    **Earnest Money**.   The parties hereby acknowledge that, as of the Effective Date, Purchaser has deposited with Seller earnest money in the amount shown below (the "Initial Deposit"). Purchaser shall pay to Seller Additional Deposits of earnest money in the amounts shown below by the due dates shown below. The Initial Deposit and any additional deposits of earnest money paid by Purchaser to Seller are hereinafter referred to as the "Earnest Money," both individually and collectively. Failure by Purchaser to pay any Additional Deposit(s) by the applicable due date shall constitute a material breach of this Agreement by Purchaser. The schedule of Earnest Money deposits is as follows:

| Earnest Deposits | | | | | |
|---|---|---|---|---|---|
| Due Date | Collection Date | Payment Type | Check Number | Deposit Amount | Collection Amount |
| 11/10/2018 | | | | $2,500.00 | $2,500.00 |
| | 11/10/2018 | Check - Electronic | 456679 | | $2,500.00 |
| | | | **Total** | **$2,500.00** | **$2,500.00** |

The Earnest Money shall be deposited with Seller in its general account upon execution of this Agreement by Seller. Purchaser acknowledges that the Earnest Money will be commingled with other funds of Seller and may be used by Seller for any purpose.

b.    **Disbursement**.   The Earnest Money shall be retained by Seller except as otherwise expressly stated in this Agreement. At Closing, the Earnest Money shall be credited to Purchaser against the Purchase Price; otherwise, the Earnest Money shall be disbursed as provided herein. If any dispute arises between Purchaser and Seller as to the final disposition of all or part of the Earnest Money, Seller may, but shall not be required to, interplead all or any disputed part of the Earnest Money into a court of competent jurisdiction. If Seller interpleads the Earnest Money into a court, Seller shall be entitled to recover the costs of such interpleader, including reasonable attorney's fees incurred in connection with the interpleader, from the Earnest Money.

c.    **Deposits of VA Borrowers**.

i.    Purchaser Notice Regarding Mortgage Loan.   Purchaser hereby represents that it [*SELECT ONE*] ○ DOES / ⊗ DOES NOT intend to apply for and obtain a mortgage loan guaranteed by the U.S. Department of Veterans Affairs (a "*VA Loan*") to purchase the Property. **IF PURCHASER DOES NOT CURRENTLY INTEND TO OBTAIN A VA LOAN, BUT LATER DECIDES TO OBTAIN A VA LOAN, PURCHASER SHALL PROMPTLY NOTIFY SELLER IN WRITING**.

ii.    Trust Account; Disbursement.   Notwithstanding any other provision of this Agreement, if Purchaser obtains a VA Loan, then the Earnest Money, Option Money (hereinafter defined), and all other sums deposited by Purchaser pursuant to this Agreement (collectively, the "*Deposits*") shall be deposited in a trust account that is safeguarded from the claims of creditors of Seller until the Deposits are (A) disbursed at Closing or (B) otherwise applied or disbursed in accordance with the terms of this Agreement.

**5. SURVEY.**  At Closing, Seller shall provide Purchaser with a plat of survey of the Lot performed by an independent, licensed surveyor, showing all structures and other improvements located on the Property as of the date of the survey (the "Survey").   At Closing, Purchaser shall pay Seller a reasonable fee of Four Hundred Dollars ($400.00) for obtaining and providing the Survey (the "Survey Fee"). Seller makes no warranty or representation whatsoever regarding the quality, accuracy or reliability of the Survey. Seller makes no warranty or representation whatsoever regarding the quality, accuracy or reliability of any survey of the Property obtained for the benefit Purchaser pursuant to this subsection, and Purchaser shall look solely to the surveyor for same. Purchaser acknowledges that any title insurance policy issued in favor of Purchaser may contain an exception from coverage for all matters that would be revealed by a current survey of the Property.

**6. WARRANTY OF TITLE.**  Seller shall convey insurable fee simple title in and to the Property to Purchaser at Closing by special or limited warranty deed (the "Deed"), subject to: (a) zoning ordinances affecting the Property; (b) utility, drainage and other easements,

deed restrictions or other conditions or restrictions of record upon which do not prevent use or enjoyment of the Lot or the House constructed thereon; (c) subdivision covenants, conditions and restrictions; (d) all matters shown on the final plat for the subdivision where the Property is located; (e) all prior conveyances of all rights, titles and interests to all oil, gas, water, petroleum, natural gas, coal, lignite and other minerals and hydrocarbons, and all geothermal energy and resources, located in whole or in part on, in or under the Lot and/or that may be produced or extracted from the Lot; and (f) any matters that would be shown or revealed by a current survey of the Lot. As used in this Agreement, "insurable fee simple title" shall mean title which a title insurance company licensed to do business in South Carolina will insure at its regular rates, subject only to its standard exceptions and those exceptions listed in subsections (a) through (e) above.

**7. TITLE EXAMINATION.**   Purchaser shall have until ten (10) days prior to the Closing Date (as defined in Section 16 below) to examine title to the Property and to furnish Seller with a written statement of any exceptions to insurable title. If Purchaser does not serve Seller with notice of exception to insurable title prior to that date, Purchaser shall have waived any objection to title to the Property as it existed as of the Effective Date. If Purchaser does serve such notice on Seller prior to that date, the notice shall specify and itemize the exceptions to insurable title. If Seller does not remove any exceptions to insurable title within a reasonable time, Purchaser shall have the right to terminate this Agreement and to receive a refund of the Earnest Money and Option Money (as defined in Exhibit B attached hereto), if any, paid to Seller. Under no circumstances shall Seller be obligated or required to remove or cure any exception to title to the Property that is a permissible exception to insurable title as defined in Section 6 above.

**8. DESTRUCTION.**   If the home built on the Lot (the "House") is either totally destroyed or substantially damaged (as determined by Seller in its sole discretion) before Closing, either party may terminate this Agreement by written notice to the other within ten (10) days after the date of such destruction. From and after the Closing (see Section 16 below), all risk of loss to the Property shall be upon Purchaser.

**9. INSPECTION.**

**a.   Procedure**.   Prior to Closing, Seller shall have the right to deny access to the Lot to any person at any time, as Seller determines in its sole discretion. However, Purchaser or a professional home inspector contracted by Purchaser shall have the right to enter upon the Property at reasonable times during normal business hours for the purpose of inspecting, examining, testing and surveying the Property, solely at Purchaser's expense, provided that any such inspection must meet the following requirements and conditions (collectively, "Inspections"):

(1)   Inspections by Purchaser:

(a)   All Inspections by Purchaser must be scheduled through the Community Construction Superintendent. These Inspections must be scheduled at least seven (7) days in advance, must take place during normal working hours (Mon. – Fri. 8:00AM to 4:00PM) and must be in accordance with Seller's production schedule.

(b)   Seller or its appointed representative shall have the right to accompany Purchaser during the Inspections.

(2)   Inspections by an independent professional home inspector:

(a)   All Inspections by a professional home inspector must be scheduled through the Community Construction Superintendent. These Inspections must be scheduled at least seven (7) days in advance, must take place during normal working hours (Mon. – Fri. 8:00AM to 4:00PM) and must be in accordance with Seller's production schedule. IF AN INSPECTOR DOES NOT HAVE AN APPOINTMENT ONE WEEK PRIOR TO THE PROPOSED INSPECTION, THE INSPECTOR WILL NOT BE ALLOWED TO PERFORM THE INSPECTION AND WILL BE INSTRUCTED TO RESCHEDULE. SELLER WILL NOT DELAY CONSTRUCTION OR CLOSING TO ACCOMMODATE INSPECTION APPOINTMENTS.

(b)   Seller or its appointed representative shall have the right to accompany the home inspector during the Inspection.

(c)   The home inspector must be licensed to do business in the State of South Carolina and must furnish to Seller a copy of the inspector's State License Certificate prior to conducting any Inspections.

(d)   Prior to each Inspection, the home inspector must furnish Seller with proof that the home inspector has: (i) worker's compensation insurance in accordance with applicable law, (ii) an errors and omissions insurance policy with a limit of no less than $300,000 and otherwise in accordance with applicable law and the guidelines of the Limited Warranty provided pursuant to Section 14(a) below, and (iii) a $300,000.00 General Liability Insurance Policy which names Seller as an additional insured.

**Failure by Purchaser to follow the procedures set forth in this subsection shall constitute a material breach of this Agreement. Unauthorized entry onto the Lot or unauthorized activities upon the Lot by Purchaser, its agents or contractors shall constitute a material breach of this Agreement by Purchaser. Purchaser specifically acknowledges that Purchaser may not, under any circumstances, install or construct any equipment, fixtures, structures or other improvements upon the Lot, or modify any of the existing equipment, fixtures, structures or other improvements, at any time and any such unauthorized activities shall constitute a material breach of the Agreement by Purchaser.  Purchaser shall not interrupt or otherwise interfere with sales or construction within the Subdivision. Upon completion of any Inspection, Purchaser shall restore the Property to its condition prior to the Inspection.**

**THE CLOSING SHALL NOT BE DELAYED DUE TO PURCHASER'S FAILURE TO SCHEDULE AND CONDUCT ALL INSPECTIONS SUFFICIENTLY IN ADVANCE OF CLOSING TO ALLOW SELLER TO ADDRESS ISSUES, IF ANY, IDENTIFIED BY THE INSPECTIONS.**

**b**. **Purchaser's Indemnity**.   Purchaser assumes all responsibility for the acts of Purchaser, Purchaser's agents, contractors or representatives in exercising Purchaser's rights under this Section, and shall indemnify and hold Seller harmless, to the extent permitted by applicable law, from any loss or expense Seller may suffer as a result of any claim or damage which arises directly or indirectly out of Purchaser's exercise of its rights under this Section. Notwithstanding any other provision herein, Purchaser's indemnity of Seller pursuant to this Section shall survive Closing and the termination of this Agreement for any reason.

**c**. **Inspection Results**.   In the event any inspection by Purchaser or its agents or contractors reveals a purported defect in the Property, Purchaser shall provide Seller with written notice of the claim of defect. If a professional home inspection was performed, the home inspector must prepare a report (including references to any applicable code sections). Purchaser shall deliver to Seller a true and complete copy of any report produced by the home inspector within forty-eight (48) hours of receipt of such report by Purchaser. If Seller determines the claim of defect is valid, Seller shall correct or repair the defect. If Seller determines the claim of defect is not valid, Seller shall notify the Purchaser of that determination within thirty (30) days of receipt of the written notice of claim of defect. Notwithstanding any other provision herein, Seller shall not be required to correct or repair any defect in construction that does not constitute a violation of: (1) the building code of the governing jurisdiction in which the Property is located, or (2) the building guidelines and standards of the provider of the Limited Warranty pursuant to Section 14(a) below.

**d**. **Walkthrough; Punch List**:   Prior to Closing, Seller and Purchaser will meet at the Property to conduct a walkthrough inspection and orientation, in accordance with Seller's standard practices (the "Initial Walkthrough"). At the conclusion of the Initial Walkthrough, Purchaser and Seller shall prepare and sign a written list of items on the Property that the parties agree should be corrected, repaired or replaced (hereinafter, the "Punch List"). Seller shall thereafter correct, repair or replace the items listed on the Punch List. Under no circumstances shall Seller be required to correct, repair or replace any items on or of the Property that are not listed on the Punch List signed by Seller. Within a reasonable amount of time after the Initial Walkthrough but prior to Closing, Seller and Purchaser shall meet at the Property to conduct a second walkthrough inspection (the "Final Walkthrough") in order to confirm which items on the Punch List have been corrected, repaired or replaced. At the conclusion of the Final Walkthrough, the parties will prepare and sign an updated Punch List reflecting the current status of each item thereon. Seller's obligation to correct, repair or replace any items that are listed on the Punch List shall survive Closing. Both the Initial Walkthrough and the Final Walkthrough shall take place at the hours of 10am, noon, or 2pm.   UNDER NO CIRCUMSTANCES SHALL CLOSING BE DELAYED DUE TO SELLER'S FAILURE TO COMMENCE OR COMPLETE CORRECTION, REPAIR OR REPLACEMENT OF ANY ITEMS ON A PUNCH LIST. UNDER NO CIRCUMSTANCES SHALL FUNDS BE ESCROWED AT CLOSING TO COVER THE COST OF CORRECTION, REPAIR OR REPLACEMENT OF ANY ITEMS ON A PUNCH LIST.

**10. REAL ESTATE BROKER AND COMMISSION.  SELLER IS LICENSED AS A REAL ESTATE OFFICE IN SOUTH CAROLINA.** In negotiating this Agreement, Seller has acted as its own real estate broker.   Purchaser acknowledges that Seller's sales agents represent Seller only and do not represent Purchaser or have any duty to Purchaser. Purchaser represents to Seller that Purchaser has not employed any real estate broker, agent or finder in connection with this Agreement, other than **Lisa Williams**, an agent of **Keller Williams** and   (collectively, "Co-Broker"). Purchaser shall indemnify and hold Seller harmless from and against any and all liabilities, losses, costs, damages and expenses (including attorneys' fees and expenses and costs of litigation) that Seller may suffer or incur because of any claim by any broker, agent or finder, whether or not meritorious, for any compensation with regard to this transaction arising out of any acts or contracts of Purchaser, other than the Co-Broker named above. Notwithstanding any other provision herein, the provisions of this Section shall survive Closing or termination of this Agreement for any reason. Purchaser acknowledges receipt of a copy of the disclosure titled Agency Relationships in Real Estate Disclosure

**11.   NO RELIANCE.**   Purchaser acknowledges that it has not relied upon the advice or representations, if any, of Seller or Seller's salespersons or other agents with regard to the legal and tax consequences of this Agreement or the terms and conditions of any proposed financing of the purchase of the Property. Purchaser acknowledges that if such matters are of concern to Purchaser, Purchaser must obtain independent, professional advice regarding them.

**12. WOOD INFESTATION REPORT.**   At the time of Closing, Seller shall provide Purchaser with a letter or a soil treatment report from a pest-control company licensed in South Carolina certifying that the Lot has been treated within one (1) year of the date of Closing for subterranean termite infestation. If required by Purchaser's lender, Purchaser may obtain at Seller's expense a South Carolina Wood Infestation Report performed by a pest-inspection company licensed in South Carolina.

**13. HAZARDOUS SUBSTANCES.**   Purchaser acknowledges that Seller makes no representation or warranty with respect to the presence or absence of toxic waste, radon, hazardous materials or other undesirable substances on the Property. SELLER HEREBY DISCLAIMS ANY LIABILITY OR RESPONSIBILITY FOR THE PRESENCE OF ANY SUCH SUBSTANCES IN, ON, UNDER OR ABOUT THE PROPERTY.

**14. WARRANTIES AND DISCLAIMER.**

**a**. **Ten-Year Limited Warranty**.   Seller shall provide Buyer with a written, ten-year limited warranty on the House administered by Residential Warranty Corporation ("RWC") which shall be effective as of the Closing Date. The terms and conditions of, and exclusions from, the ten-year limited warranty shall be as set forth in that document published by RWC entitled, "LIMITED WARRANTY, 10 YEAR LIMITED WARRANTY FOR NEW HOMES," and referred to herein as the "Limited Warranty." At Closing, Seller shall deliver to Buyer the actual Limited Warranty for the House, to be validated by RWC after Closing.

**b.   Manufacturers' Warranties**.   At Closing, Seller shall assign to Purchaser all warranties, expressed or implied, which are given by the manufacturer of any appliance or product installed in the House.

**c. Disclaimer and Limitation on Seller's Liability**.   THE LIMITED WARRANTY GIVEN TO PURCHASER BY SELLER PURSUANT TO SUBSECTION 14a ABOVE IS TO THE EXCLUSION OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, AND SELLER HEREBY DISCLAIMS ANY AND ALL SUCH OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF HABITABILITY, MERCHANTABIITY OR FITNESS FOR A PARTICULAR PURPOSE. IN ADDITION, SELLER MAKES NO REPRESENTATION OR WARRANTY WHATSOEVER REGARDING THE PAST, PRESENT OR FUTURE CONDITION OR USE OF ANY LANDS OR AREAS SURROUNDING THE PROPERTY OR IN THE VICINITY OF THE PROPERTY. AFTER CLOSING, SELLER SHALL HAVE NO LIABILITY OR OBLIGATION TO PURCHASER OF ANY NATURE WHATSOEVER EXCEPT AS PROVIDED IN THIS SECTION 14 OF THIS AGREEMENT, IN SECTION 9(d) ABOVE AND IN SELLER'S DEED TO PURCHASER. EXCEPT AS OTHERWISE PROVIDED IN THE LIMITED WARRANTY, SELLER SHALL NOT BE LIABLE FOR ANY REASON, UNDER ANY CIRCUMSTANCES, TO PURCHASER OR ANYONE CLAIMING THROUGH PURCHASER FOR MONETARY DAMAGES OF ANY KIND, INCLUDING SECONDARY, CONSEQUENTIAL, PUNITIVE, GENERAL, SPECIAL, OR INDIRECT DAMAGES.



**Initials**   Buyer   Co-Buyer   Seller

**15. MANDATORY BINDING ARBITRATION.** PURCHASER AND SELLER SHALL SUBMIT TO BINDING ARBITRATION ANY AND ALL DISPUTES WHICH MAY ARISE BETWEEN THEM REGARDING THIS AGREEMENT AND/OR THE PROPERTY, INCLUDING BUT NOT LIMITED TO ANY DISPUTES REGARDING: (A) SELLER'S CONSTRUCTION AND DELIVERY OF THE HOME; (B) SELLER'S PERFORMANCE UNDER ANY PUNCH LIST OR INSPECTION AGREEMENT; AND (C) THE LIMITED WARRANTY PURSUANT TO SECTION 14 ABOVE. THE ARBITRATION SHALL TAKE PLACE IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED. THE PROCEEDING SHALL BE CONDUCTED PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, AND TO THE EXTENT POSSIBLE, UNDER RULES WHICH PROVIDE FOR AN EXPEDITED HEARING. THE FILING FEE FOR THE ARBITRATION SHALL BE PAID BY THE PARTY FILING THE ARBITRATION DEMAND, BUT THE ARBITRATOR SHALL HAVE THE RIGHT TO ASSESS OR ALLOCATE THE FILING FEES AND ANY OTHER COSTS OF THE ARBITRATION AS A PART OF THE ARBITRATOR'S FINAL ORDER. THE ARBITRATION SHALL BE BINDING AND FINAL, AND EITHER PARTY SHALL HAVE THE RIGHT TO SEEK JUDICIAL ENFORCEMENT OF THE ARBITRATION AWARD. NOTWITHSTANDING ANY OTHER PROVISION HEREIN, ANY DISPUTES ARISING UNDER THE LIMITED WARRANTY SHALL BE MEDIATED, ARBITRATED AND/OR JUDICIALLY RESOLVED PURSUANT TO THE TERMS, CONDITIONS, PROCEDURES AND RULES OF THAT WARRANTY PROGRAM. NOTWITHSTANDING THE FOREGOING, SELLER SHALL HAVE THE RIGHT TO INTERPLEAD ALL OR ANY PART OF THE EARNEST MONEY INTO A COURT OF COMPETENT JURISDICTION AS PROVIDED FOR IN SECTION 4 HEREIN. NOTWITHSTANDING THE FOREGOING, THE ARBITRATION PROVISIONS OF THIS SUBSECTION (B) SHALL NOT APPLY IN THE EVENT THAT THE DISPUTE RELATES TO A DEFAULT BY THE SELLER UNDER SECTION 16(F) OF THIS AGREEMENT.



**Initials**   Buyer   Co-Buyer   Seller

**16. CLOSING.** The following shall constitute the "Closing": (a) receipt by the settlement agent of all funds necessary to close the transaction, (b) receipt by the settlement agent of the fully executed Deed for immediate recording in the office of the clerk of court or register of deeds, as applicable, (c) execution of the Closing Disclosure by Purchaser, Seller and the settlement agent, and (d) payment to Seller of the net proceeds of sale due to Seller. The date on which the Closing Disclosure is executed by all parties is referred to herein as the "Closing Date." Closing shall not be complete until Seller has received full payment of the Purchase Price. Keys to and possession of the Property will not be delivered to Purchaser until the Closing is complete. Closing shall be scheduled and conducted as follows:

**a. Closing Date.** The parties estimate that the Closing will take place on or before **12/10/2018**. Seller shall notify Purchaser of the final date and time of Closing at least three (3) business days in advance. Subject only to the provisions of Section 27 below, Closing shall occur no later than that date which is two (2) years after the date that Purchaser signs this Agreement.

**b. Exchange at Closing.** At Closing, Seller shall deliver to Purchaser the Deed for the Property, a certificate of occupancy for the house located on the Property issued by the applicable governmental authority, and, if applicable, a certificate of final approval by the FHA or VA. At Closing, Purchaser shall pay to Seller the Purchase Price in full.

**c. Place of Closing.** Closing shall take place at the office of a closing agent to be selected by Purchaser in **Greenville**, ⊗ South Carolina / ◯ North Carolina, or at such other place as the parties may agree in advance.

**d. Closing Costs.** Except as may be prohibited by FHA or VA regulations, Purchaser shall pay for all costs related to the Closing, including, but not limited to, the costs for preparation of the Deed, the cost of any title search, the cost for preparation and issuance of an owner's policy of title insurance and endorsements thereto, the Survey Fee, recording fees, deed and transfer taxes (deed stamps) imposed by the State of South Carolina upon the recording of the Deed, any capital contribution, initial assessment, transfer fee or estoppel certificate fee charged by the Association (as defined in Section 20), any costs and expenses associated with Purchaser's financing of Purchaser's acquisition of the Property, and any closing fee charged by the settlement agent.

**e. Prorations.** All real property taxes for the current year, homeowner association dues and assessments for the current assessment period (but not homeowner association capital assessments due at or after the Closing) and hazard insurances premiums (if applicable), shall be prorated as of the Closing Date, using the most accurate information available on the Closing Date.

**f. Completion of House**. If the House is not Complete at the time that the Purchaser signs this Agreement, Seller shall Complete the House within 2 years after the date that the Purchaser signs this Agreement, subject to extensions for circumstances reasonably beyond Seller's control as determined by South Carolina law. For purposes of this subsection (f), "Complete" means that the House is ready for occupancy by Purchaser, has all necessary and customary utilities extended to it, and a certificate of occupancy has been issued. Notwithstanding any provision in this Agreement to the contrary, including but not limited to Section 18(b), nothing herein shall limit Purchaser's remedies if Seller defaults under this subsection (f).

**17. UTILITIES AND PERSONAL PROPERTY**. Purchaser shall transfer all utilities into Purchaser's name within three (3) business days after Closing. Purchaser shall not move any personal property onto the Property prior to Closing.

**18. DEFAULT; REMEDIES.** The remedies specified below shall be the sole and exclusive remedies available to the parties in the event of breach of this Agreement, and shall be to the exclusion of all other remedies at law or in equity.

**a. Purchaser's Default.**  If Purchaser defaults on any of its obligations hereunder prior to Closing, Seller's sole and exclusive remedy shall be to terminate this Agreement by written notice to Purchaser; whereupon, Seller shall retain all Earnest Money and Option Money (if any) paid by Purchaser to Seller as liquidated damages. Thereafter, neither party shall have any further liability or obligation to the other hereunder.

**b. Seller's Default.**  If Seller defaults on any of its obligations hereunder prior to Closing, Purchaser's sole and exclusive remedy shall be either: (a) to terminate this Agreement by written notice to Seller, whereupon Purchaser shall be entitled to recover all Earnest Money and Option Money (if any) paid to Seller, or (b) to seek specific performance of this Agreement by serving written notice of default on Seller and by instituting mandatory binding arbitration of Purchaser's claim of default and demand for specific performance in accordance with Section 15 above. Notwithstanding the foregoing, nothing in this subsection (b) shall limit the Purchaser's remedies in the event that Seller defaults under Section 16(f) of this Agreement.

**19. TIME/DATE.**  The Effective Date of this Agreement shall be the date of signing of this Agreement by Seller. **Time is of the essence** as to the occurrence of all events, the satisfaction of all conditions and the performance of all obligations hereunder.

**20. RESTRICTIVE COVENANTS; HOMEOWNERS ASSOCIATION.**  Purchaser acknowledges receipt of a copy of that certain declaration of covenants, conditions and restrictions for **River Mill** Subdivision, together with all amendments thereto (collectively, the "Declaration"). Purchaser acknowledges that the Property is subject to the Declaration and that, upon purchase of the Property, Purchaser shall personally be subject to all the provisions of the Declaration, including but not limited to provisions requiring membership in and payment of assessments to any homeowners association for the Subdivision (the "Association"). Purchaser further acknowledges that the current regular assessment due to the Association is estimated to be **$485 per year**. Purchaser acknowledges that, in addition to the regular assessment, Purchaser shall be required to pay an initial fee or assessment to the Association at Closing in the amount of **$161.00**. PURCHASER FURTHER ACKNOWLEDGES THAT THE DECLARATION MAY BE AMENDED FROM TIME TO TIME AS PROVIDED THEREIN, AND THAT THE AMOUNTS TO BE PAID BY PURCHASER TO THE ASSOCIATION MAY CHANGE AT ANY TIME.

**21. SUCCESSORS AND ASSIGNS; INTERPRETATION.**  This Agreement shall inure to the benefit of, and be binding upon, the parties hereto and their heirs, successors, administrators, executors and assigns. Purchaser shall not have the right to assign Purchaser's interest in this Agreement. As required by context herein, the singular shall include the plural, and the neuter shall include the masculine and the feminine.

**22. ENTIRE AGREEMENT; AMENDMENT.**  This document contains the sole and entire agreement between the parties hereto with regard to the Property. All prior discussions have been merged into this Agreement. No representation, statement, promise or inducement shall be binding upon either party hereto unless specifically stated in this Agreement. This Agreement may not be modified except by a writing signed by both parties.

**23. SEVERABILITY.**  If any provision of this Agreement shall be declared invalid or unenforceable by laws applicable thereto, or unenforceable as to certain parties, then the performance of such provision shall be excused by the parties hereto and the remaining provisions of this Agreement shall remain in full force and effect.

**24. NO-WAIVER.**  Any failure or delay of Purchaser or Seller to enforce any term of this Agreement shall not constitute a waiver of such term, it being explicitly agreed that such a waiver must be specifically stated in a writing delivered to the other party in compliance with Section 28 below.  Any such waiver by Purchaser or Seller shall not be deemed to be a waiver of any other breach or of a subsequent breach of the same or any other term.

**25. ADDENDA AND EXHIBITS.**

    **a.  Addenda.**  The following Addenda are attached hereto and incorporated herein:
      ☑ (1) Addendum 1, <u>Builder's Referral Incentives and Contributions Addendum</u>
      ☑ (2) Addendum 2, SELECT ONE:
              ☐ <u>New Construction</u>
              ☐ <u>New Construction (Express Homes)</u>
              ☐ <u>Construction in Progress</u>
              ☒ <u>Construction Completed</u>
      ☒ Addendum 3, <u>Current Residence Contingency</u>
      ☒ Addendum 4, <u>Co-Broker Addendum</u>
      ☐ Addendum 5, <u>Alternative Incentive Addendum</u>
      ☐ Addendum 6, <u>Special Stipulations</u>
      ☐ Addendum 7, <u>Model House</u>
      ☐ Addendum 8, <u>Design Center Voucher</u>
      ☒ Addendum 9, <u>Variations in Materials and Components</u>
      ☐ Community-Specific Addenda

    **b.  Exhibits.**  The following Exhibits are attached hereto and incorporated herein:
      ☒ Exhibit A, Included Features Sheet
      ☒ Exhibit B, Home Options
      ☐ *RESERVED*
      ☒ Exhibit D, Stages of Construction

**26. NOTICE.**  Except when specifically provided otherwise herein**,** any notices required to be given hereunder must be in writing. Notice shall be deemed delivered upon receipt or refusal if deposited in the United States Mail, Certified Mail, Return Receipt

Requested, postage prepaid, properly addressed to the party to be served. Notice shall also be deemed given if delivered to the address for service of notice shown below by Federal Express, UPS or other nationally recognized overnight carrier service, with no signature or receipt required. Notice to Purchaser also shall be deemed given if delivered to the email address for service of notice shown under Purchaser's signature. Each party warrants that its correct mailing address for service of notice is shown below. Purchaser warrants that its correct telephone number and email address are shown below. A party may change its address for service of notice by giving the other party written notice of the change of address.

**27. EXCUSED DELAYS.**   Notwithstanding any other provision herein, if Seller is delayed in performing any of its obligations hereunder or meeting any specified completion dates by labor disputes, fire, delays in deliveries, adverse weather conditions, unanticipated damage to or destruction of the Property, governmental controls or moratoria, acts of God or any other causes beyond Seller's reasonable control, then the time-period specified herein for performance of such obligation and/or meeting such completion date shall be extended a sufficient number of working days to enable and allow Seller to perform and/or complete the obligation. Notwithstanding the foregoing, nothing in this Section 27 shall be construed as limiting the Seller's obligations under Section 16(f) of this Agreement.

**28. OFFER.**   This instrument shall be regarded as an offer by the first party to sign until fully executed by both parties, at which time it shall become binding on both parties.

**29. ELECTRONIC SIGNATURES AND TRANSMISSIONS.**   This Agreement may be executed by electronic means via DocuSign. Such signatures shall be deemed to constitute originals for all purposes hereunder. In addition, if either party transmits executed documents in electronic format via facsimile or email, then the other party may rely upon such documents as if they were executed originals.

**WHEN SIGNED BY BOTH PARTIES, THIS DOCUMENT WILL BECOME A BINDING CONTRACT IMPOSING LEGALLY ENFORCEABLE OBLIGATIONS UPON YOU. SELLER'S SALES REPRESENTATIVE DOES NOT HAVE AUTHORITY TO EXECUTE THIS CONTRACT ON BEHALF OF SELLER OR OTHERWISE BIND SELLER. IF YOU DO NOT FULLY UNDERSTAND THIS DOCUMENT OR IF YOU DO NOT FEEL IT MEETS YOUR NEEDS, YOU SHOULD CONSULT A SOUTH CAROLINA REAL ESTATE ATTORNEY BEFORE SIGNING IT.**

IN WITNESS WHEREOF, the parties hereto have executed this Home Purchase Agreement on the dates indicated below.

**PURCHASER:**

*Juanita E. Pickens*
88F8FEA8500844A...
_____   11/10/2018
**Buyer:** Juanita E. Pickens            Date

*Raymond S. Pickens*
EBF5410D194D4A3...
_____   11/10/2018
**Co-Buyer:** Raymond S. Pickens        Date

Purchaser's Current Mailing Address:
107 Oak Hill Drive
Simpsonville, SC    29681
US
Purchaser's Home Phone: (907) 854-8572
            Mobile Phone:
            Work Phone:
Purchaser's Email: jepickens@outlook.com

Co-Buyer's Current Mailing Address:
107 Oak Hill DriveSimpsonville, SC 29681
Co-Buyer's Home Phone:
            Mobile Phone:
            Work Phone:
Co-Buyer's Email: raymondpickens@hotmail.com

**SELLER:**

**D.R. Horton, Inc., a Delaware Corporation**

*Emily Ann Twyman*
936A2303FCC5430...
_____   11/14/2018
Emily Ann Twyman                     Date

    Assistant Secretary, D.R. Horton

Seller's Address:
D.R. Horton, Inc., a Delaware Corporation
100 Verdae Blvd, Suite 401
Greenville, SC    29607
**MAIN:** (864) 757-9930

*For Internal Purposes Only:*
Seller's Sales Representative:

*Cameron McDonald*
74093CBA2B8249C...
_____   11/10/2018
**Sales Rep:** Cameron McDonald        Date

# SOUTH CAROLINA DISCLOSURE OF REAL ESTATE BROKERAGE RELATIONSHIPS



**South Carolina Real Estate Commission**
PO BOX 11847, Columbia, S.C. 29211-1847
Telephone: (803) 896-4400   Fax: (803) 896-4427
http://llr.sc.gov/POL/REC/

Pursuant to South Carolina Real Estate License Law in S.C. Code of Laws Section 40-57-370, a real estate licensee is required to provide you a meaningful explanation of agency relationships offered by the licensee's brokerage firm. This must be done at the first practical opportunity when you and the licensee have substantive contact.

Before you begin to work with a real estate licensee, it is important for you to know the difference between a broker-in-charge and associated licensees. The broker-in-charge is the person in charge of a real estate brokerage firm. Associated licensees may work only through a broker-in-charge. **In other words, when you choose to work with any real estate licensee, your business relationship is legally with the brokerage firm and not with the associated licensee.**

A real estate brokerage firm and its associated licensees can provide buyers and sellers valuable real estate services, whether in the form of basic **customer** services, or through **client**-level agency representation. The services you can expect will depend upon the legal relationship you establish with the brokerage firm. It is important for you to discuss the following information with the real estate licensee and agree on whether in your business relationship you will be a **customer** or a **client**.

## You Are a Customer of the Brokerage Firm

South Carolina license law defines customers as buyers or sellers who choose <u>NOT</u> to establish an agency relationship. The law requires real estate licensees to perform the following *basic duties* when dealing with *any* real estate buyer or seller as customers: *present all offers in a timely manner, account for money or other property received on your behalf, provide an explanation of the scope of services to be provided, be fair and honest and provide accurate information, and disclose "material adverse facts" about the property or the transaction which are within the licensee's knowledge.*

*Unless or until you enter into a written agreement with the brokerage firm for agency representation, you are considered a "customer" of the brokerage firm, and the brokerage firm will <u>not</u> act as your agent. As a customer, you should <u>not</u> expect the brokerage firm or its licensees to promote your best interest, or to keep your bargaining information confidential <u>unless a transaction broker agreement obligates the brokerage firm otherwise.</u>*

Customer service does not require a written agreement; therefore, you are not committed to the brokerage firm in any way <u>unless a transaction broker agreement or compensation agreement obligates you otherwise</u>.

## Transaction Brokerage

A real estate brokerage firm may offer transaction brokerage in accordance with S.C. Code of Laws Section 40-57-350. Transaction broker means a real estate brokerage firm that provides customer service to a buyer, a seller, or both in a real estate transaction. A transaction broker may be a single agent of a party in a transaction giving the other party customer service. A transaction broker also may facilitate a transaction without representing either party. The duties of a brokerage firm offering transaction brokerage relationship to a customer can be found in S.C. Code of Laws Section 40-57-350(L)(2).

## You Can Become a Client of the Brokerage Firm

Clients receive more services than customers. If client status is offered by the real estate brokerage firm, you can become a client by entering into a written agency agreement requiring the brokerage firm and its associated licensees to act as an agent on your behalf and promote your best interests. If you choose to become a client, you will be asked to confirm in your written representation agreement that you received this agency relationships disclosure document in a timely manner.

A *seller becomes a client* of a real estate brokerage firm by signing a formal listing agreement with the brokerage firm. For a seller to become a client, this agreement must be in writing and must clearly establish the terms of the agreement and the obligations of both the seller and the brokerage firm which becomes the agent for the seller.

A *buyer becomes a client* of a real estate brokerage firm by signing a formal buyer agency agreement with the brokerage firm. For a buyer to become a client, this agreement must be in writing and must clearly establish the terms of the agreement and the obligations of both the buyer and the brokerage firm which becomes the agent for the buyer.

(Rev 1/17) Page **1** of **2**

DocuSign Envelope ID: 1BF40E6A-A77A-454E-BA19-3F0B4A572085

# SOUTH CAROLINA DISCLOSURE OF REAL ESTATE BROKERAGE RELATIONSHIPS



**South Carolina Real Estate Commission**
PO BOX 11847, Columbia, S.C. 29211-1847
Telephone: (803) 896-4400   Fax: (803) 896-4427
http://llr.sc.gov/POL/REC/

(Rev 1/17) Page **2** of **2**

# SOUTH CAROLINA DISCLOSURE OF REAL ESTATE BROKERAGE RELATIONSHIPS



**South Carolina Real Estate Commission**
PO BOX 11847, Columbia, S.C. 29211-1847
Telephone: (803) 896-4400   Fax: (803) 896-4427
http://llr.sc.gov/POL/REC/

If you enter into a written agency agreement, as a client, the real estate brokerage has the following *client-level duties: obedience, loyalty, disclosure, confidentiality, accounting, and reasonable skill and care*. Client-level services also include advice, counsel and assistance in negotiations.

## Single Agency

When the brokerage firm represents only one client in the same transaction (the seller or the buyer), it is called single agency.

## Dual Agency

Dual agency exists when the real estate brokerage firm has two clients in one transaction – a seller client and a buyer client. At the time you sign an agency agreement, you may be asked to acknowledge whether you would consider giving written consent allowing the brokerage firm to represent both you and the other client in a disclosed dual agency relationship.

## Disclosed Dual Agency

In a disclosed dual agency, the brokerage firm's representation duties are limited because the buyer and seller have recognized conflicts of interest. Both clients' interests are represented by the brokerage firm. As a disclosed dual agent, the brokerage firm and its associated licensees cannot advocate on behalf of one client over the other, and cannot disclose confidential client information concerning the price negotiations, terms, or factors motivating the buyer/client to buy or the seller/client to sell. Each Dual Agency Agreement contains the names of both the seller client(s) and the buyer client(s) and identifies the property.

## Designated Agency

In designated agency, a broker-in-charge may designate individual associated licensees to act solely on behalf of each client. Designated agents are not limited by the brokerage firm's agency relationship with the other client, but instead have a duty to promote the best interest of their clients, including negotiating a price. The broker-in-charge remains a disclosed dual agent for both clients, and ensures the assigned agents fulfill their duties to their respective clients. At the time you sign an agency agreement, you may be asked to acknowledge whether you would consider giving written consent allowing the brokerage firm to designate a representative for you and one for the other client in a designated agency. Each Designated Agency Agreement contains the names of both the seller client(s) and the buyer client(s) and identifies the property.

## It's Your Choice

As a real estate consumer in South Carolina, it is your choice as to the type and nature of services you receive.
- You can choose to remain a customer and represent yourself, with or without a transaction broker agreement.
- You can choose to hire the brokerage firm for representation through a written agency agreement.
- If represented by the brokerage firm, you can decide whether to go forward under the shared services of dual agency or designated agency or to remain in single agency.

If you plan to become a client of a brokerage firm, the licensee will explain the agreement to you fully and answer questions you may have about the agreement. Remember, however that until you enter into a representation agreement with the brokerage firm, you are considered a customer and the brokerage firm cannot be your advocate, cannot advise you on price or terms, and cannot keep your confidences unless a transaction broker agreement obligates the brokerage firm otherwise.

The choice of services belongs to you – the South Carolina real estate consumer.

**Acknowledgement of Receipt by Consumer:**

DocuSigned by:

*Juanita E. Pickens*

88F8FEA8500844A...

_____    _11/10/2018_

**Buyer:** Juanita E. Pickens                              Date

(Rev 1/17) Page **3** of **2**

# SOUTH CAROLINA DISCLOSURE OF REAL ESTATE BROKERAGE RELATIONSHIPS

**South Carolina Real Estate Commission**
PO BOX 11847, Columbia, S.C. 29211-1847
Telephone: (803) 896-4400   Fax: (803) 896-4427
http://llr.sc.gov/POL/REC/

DocuSigned by:

*Raymond S. Pickens*

EBF5410D194D4A3...

**Co-Buyer:** Raymond S. Pickens

Date: 11/10/2018

(Rev 1/17) Page **4** of **2**

**Buyer(s):** Juanita E. Pickens and Raymond S. Pickens, **Community:** River Mill, **Plat:** 0046//, **Address:** 423 BRANDYBUCK DRIVE, **Sales Rep:** Cameron McDonald

**Job: 708760046**
**Printed:** 11/10/2018

## FHA REAL ESTATE CERTIFICATION

This certification is attached to and made part of that certain Home Purchase Agreement (the "Agreement") by and between D.R. Horton, Inc., a Delaware Corporation, as Seller, and Juanita E. Pickens and Raymond S. Pickens, as Purchaser, for the purchase and sale of Lot 0046, Block/Phase , River Mill Subdivision in ANDERSON, SC. Capitalized terms not otherwise defined herein shall have the same meanings as ascribed to them in the Agreement.

**Purchaser, Seller, and Co-Broker hereby certify that (1) the terms and conditions of the Agreement are true to the best of their knowledge and belief, and (2) any other agreement entered into by any of these parties in connection with this real estate transaction is part of, or attached to, the Agreement.**

**PURCHASER:**

*Juanita E. Pickens*
88F8FEA8500844A...
_____   11/10/2018
**Buyer:** Juanita E. Pickens          Date

*Raymond S. Pickens*
EBF5410D194D4A3...
_____   11/10/2018
**Co-Buyer:** Raymond S. Pickens        Date

**SELLER:**

**D.R. Horton, Inc., a Delaware Corporation**

*Emily Ann Twyman*
936A2303FCC5430...
_____   11/14/2018
Emily Ann Twyman                Date
Assistant Secretary, D.R. Horton

**CO-BROKER:**

*Lisa Williams*
2B6F31B03A3B46A...
_____   11/10/2018
**Broker Agent:** Lisa Williams         Date

FHA Real Estate Certification

Iress: 423 BRANDYBUCK DRIVE. **Sales Rep:** Cameron McDonald   Job: **708760046**
**Printed:** 11/10/2018

# EXHIBIT B
# HOME OPTIONS

Seller will include in the House the following options and upgrades selected by Purchaser (the "Initial Options") at the prices indicated below. Payment for the Initial Options in the amount stated below must be made to Seller simultaneously with the execution of this Agreement; such payment for the Initial Options, and any and all future payments made by Purchaser for options or upgrades in advance of Closing, are collectively referred to in this Agreement as "Option Money." Option Money paid to Seller shall not be held in escrow, and shall be nonrefundable to Purchaser, except in the event of material breach of this Agreement by Seller or as otherwise provided in this Agreement. Upon Closing, all Option Money previously paid to Seller shall be credited to Purchaser against the Purchase Price.

In the event Seller omits the installation of any Initial Option in the House, Seller's responsibility shall be limited to a refund of the applicable price or allowance stated below. Any such omission shall not invalidate this Agreement, constitute a breach of its terms or give rise to any claim for damages against Seller. In the event any Initial Option or option selected by Purchaser at a later date is discontinued, Seller reserves the right to substitute an item or brand of equal value.

The Initial Options are as follows:

## Selected Options

| DEC – Deco Options | | | | | | | |
|---|---|---|---|---|---|---|---|
| Option # | Rev. # | Rev. Date | User | Qty. | Unit Price | Ext. Price | |
| 04006000 | 0 | 11/10/2018 | Cameron McDonald | 1.0000 | $ 95.00 | $ 95.00 | P |
| Color: | | | Location: | | | | |
| STRUCTURED WIRING - TV/CABLE -PER LOCATION --  marked on collateral. | | | | | | | |
| 04121000 | 0 | 11/10/2018 | Cameron McDonald | 1.0000 | $ 625.00 | $ 625.00 | P |
| Color: | | | Location: | | | | |
| HOME AUDIO - HD LINK 25 | | | | | | | |
| 08050000 | 0 | 11/10/2018 | Cameron McDonald | 2.0000 | $ 395.00 | $ 790.00 | P |
| Color: | | | Location:  master, family | | | | |
| LIGHTING-FAN w/LIGHT KIT-BRUSHED NICKEL-PER FAN - SPECIFY LOCATION | | | | | | | |
| 17005220 | 0 | 11/10/2018 | Cameron McDonald | 1.0000 | $2,905.00 | $2,905.00 | P |
| Color:  Brellin glacier Gray | | | Location: | | | | |
| CABINET BASE - DESIGNER KITCHEN - D2 - LVL2 | | | | | | | |
| 17009220 | 0 | 11/10/2018 | Cameron McDonald | 1.0000 | $ 810.00 | $ 810.00 | P |
| Color:  Brellin Glacier Gray | | | Location: | | | | |
| CABINET BASE - BATHS - D2 - LVL2 | | | | | | | |
| 22320000 | 0 | 11/10/2018 | Cameron McDonald | 1.0000 | $ 95.00 | $ 95.00 | P |
| Color: | | | Location:  above master shower | | | | |
| RECESSED CAN LIGHT W/ SWITCH | | | | | | | |
| 22340030 | 0 | 11/10/2018 | Cameron McDonald | 1.0000 | $ 400.00 | $ 400.00 | P |
| Color:  brushed nickel | | | Location: | | | | |
| 3 PENDANT LIGHTS W/ SWITCH | | | | | | | |
| 25001110 | 0 | 11/10/2018 | Cameron McDonald | 1.0000 | $ 990.00 | $ 990.00 | P |
| Color: | | | Location: | | | | |
| CHEF'S FRIGID. GAS APPLIANCE PACKAGE - S.S. | | | | | | | |
| This Option is Only Available in Kitchens that include a Wall Oven Cabinet. Includes the following STAINLESS Appliances: FFGC3026SS - 30" Gas Cooktop FFID2426TS - Built-In Dishwasher FFMV1645TS - OTR Microwave FFET3026TS - 30" Electric Double Wall Oven Model Transition on homes Started after Jan. 1, 2018 | | | | | | | |
| 36001000 | 0 | 11/10/2018 | Cameron McDonald | 537.0000 | $ 1.00 | $ 537.00 | P |
| Color:  CA20 12x12 | | | Location:  master bath | | | | |
| FLOORING - UPGRADE TILE | | | | | | | |
| 38001000 | 0 | 11/10/2018 | Cameron McDonald | 2468.0000 | $ 1.00 | $2,468.00 | P |
| Color:  Riverland 5" Bayfront | | | Location: | | | | |
| FLOORING - UPGRADE HARDWOOD  Foyer, DR, kitchen/breakfast, FR/hall, garage entry | | | | | | | |
| 56102000 | 0 | 11/10/2018 | Cameron McDonald | 1.0000 | $1,800.00 | $1,800.00 | P |
| Color: | | | Location: | | | | |
| BLINDS - 2" WHITE-WHOLE HOUSE | | | | | | | |
| 56150000 | 0 | 11/10/2018 | Cameron McDonald | 2.0000 | $ 80.00 | $ 160.00 | P |
| Color: | | | Location: | | | | |
| BLINDS - 2" WHITE - DOOR | | | | | | | |
| 95002000 | 0 | 11/10/2018 | Cameron McDonald | 1.0000 | $ 400.00 | $ 400.00 | P |
| Color: | | | Location: | | | | |
| GARAGE DOOR OPENER (1/2 HP) | | | | | | | |
| FCPT0002 | 0 | 11/10/2018 | Cameron McDonald | 1.0000 | $ 0.00 | $ 0.00 | P |
| Color:  temple stone | | | Location:  standard carpet pad | | | | |
| DR164-LONGVIEW ISLE | | | | | | | |
| FSVL0001 | 0 | 11/10/2018 | Cameron McDonald | 1.0000 | $ 0.00 | $ 0.00 | P |
| Color:  AC431 | | | Location:  Bath 2,3, laundry | | | | |

VINYL FLOOR - ARCADIA SILVER

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | **Sub-Total** | | **$12,075.00** | |

## POS – Point of Sale Options

| Option # | Rev. # | Rev. Date | User | | | Qty. | Unit Price | Ext. Price | |
|---|---|---|---|---|---|---|---|---|---|
| 00152001 | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $4,900.00 | $4,900.00 | P |
| **Color:** | | | | **Location:** | | | | | |
| COVERED PATIO - MONO | | | | | | | | | |
| 00701000 | 0 | 11/10/2018 | Cameron McDonald | | | 120.0000 | $ 9.00 | $1,080.00 | P |
| **Color:** | | | | **Location:** | back patio | | | | |
| ADD CONCRETE PATIO - PER SQ FT  addition to covered area. | | | | | | | | | |
| 25005110 | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $1,625.00 | $1,625.00 | P |
| **Color:** | | | | **Location:** | | | | | |
| FGSS2635TF - 25CF FRIGIDAIRE GALLERY SIDE BY SIDE REFRIGERATOR - S.S. | | | | | | | | | |
| Model Transition on homes Started after Jan. 1, 2018 | | | | | | | | | |
| 25007021 | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $2,500.00 | $2,500.00 | |
| **Color:** | | | | **Location:** | | | | | |
| FRONT LOAD FRIGIDAIRE WASHER &ELECTRIC DRYER PACKAGE-WHITE | | | | | | | | | |
| Includes the following WHITE Appliances: EFLW427UIW - Front Load Washer EFME427UIW - Electric Dryer EPWD257UIW - Pedestal (2) For Washer & Dryer Model Transition on homes Started after Jul. 1, 2018 | | | | | | | | | |
| 71010500 | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $ 300.00 | $ 300.00 | P |
| **Color:** | | | | **Location:** | | | | | |
| LEYLAND CYPRESS - 5' to 6' - PER TREE | | | | | | | | | |
| JSPK00AZ | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $1,000.00 | $1,000.00 | P |
| **Color:** | | | | **Location:** | | | | | |
| IRRIGATION SYSTEM - ADDL. ZONE | | | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | **Sub-Total** | | **$11,405.00** | |

## STD – Standard Options

| Option # | Rev. # | Rev. Date | User | | | Qty. | Unit Price | Ext. Price | |
|---|---|---|---|---|---|---|---|---|---|
| 000000D2 | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $ 0.00 | $ 0.00 | P |
| **Color:** | | | | **Location:** | | | | | |
| D2 SERIES HOME | | | | | | | | | |
| 00001001 | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $ 0.00 | $ 0.00 | P |
| **Color:** | | | | **Location:** | | | | | |
| FOUNDATION - MONOLITHIC SLAB | | | | | | | | | |
| 00202000 | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $ 0.00 | $ 0.00 | P |
| **Color:** | | | | **Location:** | | | | | |
| TREY - OWNER'S SUITE | | | | | | | | | |
| 00475001 | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $ 0.00 | $ 0.00 | P |
| **Color:** black slate | | | | **Location:** | | | | | |
| FIREPLACE - MONO | | | | | | | | | |
| 18001010 | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $ 0.00 | $ 0.00 | P |
| **Color:** CALEDONIA | | | | **Location:** | | | | | |
| GRANITE COUNTERTOP BASE - KITCHEN - LVL1 | | | | | | | | | |
| 18009010 | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $ 0.00 | $ 0.00 | P |
| **Color:** CALEDONIA | | | | **Location:** | | | | | |
| GRANITE COUNTERTOP BASE - BATHS - LVL1 | | | | | | | | | |
| 22214000 | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $ 0.00 | $ 0.00 | P |
| **Color:** SATIN NICKEL FINISH | | | | **Location:** | | | | | |
| LIGHT PACKAGE - STEFAN (SPECIFY FINISH) | | | | | | | | | |
| 49001020 | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $ 0.00 | $ 0.00 | P |
| **Color:** LR94 3x6 | | | | **Location:** | | | | | |
| KITCHEN BACKSPLASH - CERAMIC TILE - LEVEL 2 | | | | | | | | | |
| CLRPLUS2 | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $ 0.00 | $ 0.00 | P |
| **Color:** package 7 | | | | **Location:** | | | | | |
| COLOR PLUS COMMUNITY-COLORPLUSSIDING WITH VINYL BOXING.  PLEASE USE CP COLOR SCHEMES | | | | | | | | | |
| JSPK001Z | 0 | 11/10/2018 | Cameron McDonald | | | 1.0000 | $ 0.00 | $ 0.00 | P |
| **Color:** | | | | **Location:** | | | | | |
| IRRIGATION SYSTEM-1ST TWO ZONES | | | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | **Sub-Total** | | **$ 0.00** | |
| | | | | | **Total:** | | **$23,480.00** | |

DocuSign Envelope ID: 1BF4056A-A77A-454E-BA19-8F9B4A572985  ress: 423 BRANDYBUCK DRIVE. Sales Rep: Cameron McDonald  708760046

8:26-cv-00097-DCC     Date Filed 02/02/26     Entry Number 24-4     Page 15 of 38  Printed: 11/10/2018

## Color Selections

| 17 – Cabinets | | | | | |
|---|---|---|---|---|---|
| Option # | Color | Rev. # | Rev. Date | User | |
| CABINETS - HARDWARE | H316 | 0 | 11/10/2018 | | |
| **Location:** | | | | | |
| **Notes:** | | | | | |

| 38 – Flooring-Wood | | | | | |
|---|---|---|---|---|---|
| Option # | Color | Rev. # | Rev. Date | User | |
| STANDARD SHOWER WALL TILE | CA20 12x12 | 0 | 11/10/2018 | | |
| **Location:** fiberglass pan | | | | | |
| **Notes:** | | | | | |

| 53 – Interior Paint/Trim | | | | | |
|---|---|---|---|---|---|
| Option # | Color | Rev. # | Rev. Date | User | |
| Interior Paint Color - Walls and Ceilings | City Loft | 0 | 11/10/2018 | | |
| **Location:** | | | | | |
| **Notes:** | | | | | |

| 92 – LV Exterior Finishes | | | | | |
|---|---|---|---|---|---|
| Option # | Color | Rev. # | Rev. Date | User | |
| Exterior ColorPlus Color Scheme | Package 7 | 0 | 11/10/2018 | | |
| **Location:** | | | | | |
| **Notes:** Color Package 7- Main Siding: Woodstock Brown, Secondary Color: Navajo Beige, Shake Color: Timber Bark, Garage Door: SW6155 Rice Grain, Shutters and Front Door: Enduring Bronze, Window Color: Beige, Brick Color: Castle Rock | | | | | |

| 54 – Vanity/Tub/Shower | | | | | |
|---|---|---|---|---|---|
| Option # | Color | Rev. # | Rev. Date | User | |
| SHOWER DOOR - MASTER | Chrome | 0 | 11/10/2018 | | |
| **Location:** | | | | | |
| **Notes:** | | | | | |

Purchaser acknowledges that, upon execution of this Agreement, Purchaser shall be required to pay Option Money in the amount of **$ 0.00** for the Initial Options.

**PURCHASER:**

*Juanita E. Pickens*
—88F8FEA8500844A...
_____     11/10/2018
**Buyer:** Juanita E. Pickens                              Date

*Raymond S. Pickens*
—EBF5410D194D4A3...
_____     11/10/2018
**Co-Buyer:** Raymond S. Pickens                     Date

**SELLER:**
**D.R. Horton, Inc., a Delaware Corporation**

DocuSigned by:
*Emily Ann Twyman*
—936A2303FCC5430...
_____     11/14/2018
Emily Ann Twyman                                       Date

Assistant Secretary, D.R. Horton

DocuSigned by:
*Cameron McDonald*
—74093CBA2B8249C...
_____     11/10/2018
**Sales Rep:** Cameron McDonald                     Date

*For Internal Purposes Only:*

DocuSign Envelope ID: 1BF40E6A-A77A-454E-BA19-8E9B4A572985    Iress: 423 BRANDYBUCK DRIVE, Sales Rep: Cameron McDonald    708760046

6:26-cv-00097-DCC    Date Filed 02/02/26    Entry Number 24-4    Page 16 of 38    Printed: 11/10/2018



## EXHIBIT D
## STAGES OF CONSTRUCTION

This Exhibit is attached and made part of the Home Purchase Agreement ("Agreement") by and between **D.R. Horton, Inc., a Delaware Corporation**, as Seller, and **Juanita E. Pickens and Raymond S. Pickens**, as Purchaser, for the purchase and sale of Lot **0046**, Block **0046**, of **River Mill** Subdivision (the "Property"). Any capitalized terms used in this Exhibit shall have the same meanings as ascribed to them in the Agreement. In the event of a conflict between this Exhibit and the Agreement, this Exhibit shall control. The parties hereby agree as follows:

1.  STRUCTURAL FEATURES AND OPTIONS TO BE INCLUDED IN THE HOUSE MUST BE LISTED ON EXHIBIT A OR B <u>AT THE TIME SELLER EXECUTES THE AGREEMENT</u>. Structural features and options include, without limitation, the following: **plan elevation, floor plan options, foundation type (slab/basement), bedrooms, bathrooms, bonus rooms, media rooms, sunrooms, porches, garages, windows, exterior doors, and fireplaces**.



Initials    Buyer    Co-Buyer

2.  The parties hereby agree that the box checked below indicates the approximate stage of construction of the House as of 11/10/2018, according to the most recent report from Seller's superintendent. Purchaser may request changes only as stated below. **PURCHASER ACKNOWLEDGES THAT CONSTRUCTION OF THE HOUSE IS (OR SOON WILL BE) UNDERWAY AND THAT, AS CONSTRUCTION PROGRESSES, FURTHER OPTIONS WILL BE FORECLOSED AS STATED BELOW. PURCHASER ACKNOWLEDGES THAT IT IS PURCHASER'S SOLE OBLIGATION TO TIMELY REQUEST ANY CHANGES.** Construction stages listed below are approximations and may vary from the actual construction process for the particular home.



Initials    Buyer    Co-Buyer

☐      <u>**Prior to Seller Release to Construction (Prior to Stage 00)**</u>

**The following changes may be permitted prior to Stage 00:**
Interior trim and doors
Knee-walls to rails
Exterior Colors
Paint Colors
Plumbing fixtures, bath accessories
Cabinet finishes
Lighting fixtures
Bath Tile surrounds and backsplashes
Additional concrete patio
Appliances
Countertops, Kitchen sink
Carpeting
Hardwood flooring
Ceramic tile flooring
Front door handsets
All electrical prewires
Security and prewires
Washer and dryer
Garage door openers
Refrigerator
Blinds
Paddle fans in areas prewires exist

☐      **Stage 00 – 04**
**00 Permit/Planning Stage**
**01 Foundation Layout/Trench Stage**
**02 Foundation Poured Stage**
**02A Snap First Floor**
**03 Frame Stage**
**03A Load Trusses**
**04 Exterior Finish Stage**

**The following changes may be permitted during Stages 00 – 04:**
Countertops, kitchen sink
Carpet
Hardwood flooring

8:26-cv-00097-DCC     Date Filed 02/02/26     lress: 423 BRANDYBUCK DRIVE, Sales Rep: Cameron McDonald     Job:708760046     Printed: 11/10/2018

Ceramic tile flooring
Kitchen ceramic backsplash
Washer and dryer
Garage door openers
Refrigerator
Blinds
Paddle fans in areas prewires exist
Fireplace surrounds

☒          **Stage 05 – 13**
**05 Mechanicals Rough Stage**
**06 Insulation/Drywall Stage**
**07 Interior Finish Stage**
**08 Mechanicals Final Stage**
**09 Flooring/Final Touches Stage**
**10 Final Inspection Performed**
**11 Certificate of Occupancy received**
**12 Quality Control Walk Performed**
**13 Buyer Walkthrough Performed**

**The following changes may be permitted during Stages 05 – 13, if requested at least four (4) weeks prior to Closing:**
Washer and dryer
Garage door openers
Refrigerator
Blinds
Paddle fans in areas prewires exist

Notwithstanding the foregoing, Seller may, in Seller's sole discretion, decline to permit any changes to the House after the Effective Date.

**PURCHASER:**

*Juanita E. Pickens*
—88F8FEA8500844A...
_____     11/10/2018
**Buyer:** Juanita E. Pickens          Date

*Raymond S. Pickens*
—EBF5410D194D4A3...
_____     11/10/2018
**Co-Buyer:** Raymond S. Pickens     Date

*Cameron McDonald*
—74093CBA2B8249C...
_____     11/10/2018
**Sales Rep:** Cameron McDonald     Date

**SELLER:**

**D.R. Horton, Inc., a Delaware Corporation**

*Emily Ann Twyman*
—936A2303FCC5430...
_____     11/14/2018
Emily Ann Twyman                     Date

Assistant Secretary, D.R. Horton

*For Internal Purposes Only:*

8:26-cv-00097-DCC    Date Filed 02/02/26    Entry Number 24-4    Page 18 of 38

Buyer(s): Juanita E. Pickens and Raymond S. Pickens, **Community:** River Mill, **Plat:** 0046//, **Address:** 423 BRANDYBUCK DRIVE, **Sales Rep:** Cameron McDonald

**Job: 708760046**
**Printed:** 11/10/2018



### ADDENDUM 1
### BUILDER'S REFERRAL INCENTIVES AND CONTRIBUTIONS ADDENDUM

This **ADDENDUM** is attached to and made a part of that Home Purchase Agreement between **D.R. Horton, Inc., a Delaware Corporation**, as Seller, and **Juanita E. Pickens and Raymond S. Pickens**, as Purchaser (the "Purchase Agreement"), regarding that parcel of real estate located in **ANDERSON** County, **SC**, briefly described as Lot **0046**, **River Mill**, and referred to in the Purchase Agreement as the "Lot." All terms defined in the main text of the Purchase Agreement shall have the same meanings when used in this Addendum. This Addendum, together with the Purchase Agreement, constitutes the sole and entire agreement between Seller and Purchaser with regard to any incentives, allowances, adjustments, credits, discounts, rebates or other contributions of any kind or amount (collectively, the "Referral Incentives and Contributions") made, or to be made, by Seller to Purchaser in connection with Seller's referral of Purchaser to SELLER'S PREFERRED MORTGAGE LENDER(S) DESCRIBED BELOW ("PREFERRED LENDER"), and there are no agreements regarding such Referral Incentives and Contributions, whether written or unwritten, expressed or implied, between the parties except as set forth in this Addendum. In the event of any conflict between the terms and provisions of this Addendum and the terms and provisions of the main text of the Purchase Agreement, the terms and provisions of this Addendum shall control.

Purchaser acknowledges receipt of that document entitled, "Notice of Seller's Business Affiliations" (the "Affiliation Notice"), and Purchaser confirms its understanding that Seller has an affiliation with DHI MORTGAGE COMPANY, LTD. ("DHI MORTGAGE") and that Purchaser is not required to use this affiliated company or any Preferred Lender (described below) as a condition of Purchaser's purchase of the Property or Purchaser's access to settlement services in connection with the purchase of the Property. The parties state, acknowledge and agree as follows:

1. Seller shall provide for the benefit of Purchaser the Referral Incentives and Contributions listed in Section 2 below, **provided that** Purchaser chooses to use PREFERRED LENDER to finance the purchase of the Property and **provided that each and all of the following occur**:

    **a**. Purchaser applies to PREFERRED LENDER for a mortgage loan to finance the purchase of the Property within the timeframe required under Section 2(b) of this Purchase Agreement;

    **b**. Purchaser's loan application is approved by PREFERRED LENDER, and PREFERRED LENDER actually funds the loan and finances the purchase of the Property;

    **c**. Purchaser closes on the purchase of the Property on or before the final date and time for Closing set by Seller pursuant to subsection 16(a) of the Purchase Agreement; and

    **d**. Purchaser uses the closing attorney recommended by Seller to act as settlement agent and close the purchase of the Property.

2. Provided that all the above conditions are satisfied and met in a timely manner, Purchaser shall be entitled to a contribution from Seller towards Purchaser's closing costs in an amount up to the lesser of: (a) three percent (3.00%) of the final Purchase Price, or (b) **$8,997.00** Dollars. This contribution, up to the applicable limit, shall be applied against closing costs actually charged to Purchaser, in the following order (as applicable): Origination Charge, Origination Fee, Upfront Unfinanced Mortgage Insurance (if applicable).

If any of the maximum amount of contribution remains unapplied after payment of all of the above listed closing costs, then the remainder shall be applied against other usual and customary closing costs actually charged to Purchaser by other settlement service providers. Notwithstanding the foregoing: (i) any contribution by Seller to Purchaser's closing costs shall be subject to Purchaser's loan program and any lender guidelines or restrictions, (ii) no portion of the maximum amount of contribution may be applied as a credit to, or in partial payment of, the Purchase Price of the Property or disbursed to Purchaser, and (iii) any unapplied portion of the maximum amount of contribution shall be forfeited by Purchaser.

3. Preferred Lender. The PREFERRED LENDER relating to this Builder's Referral Incentive and Contributions Addendum is DHI Mortgage. More information regarding DHI Mortgage is available at: www.dhimortgage.com.

**Purchaser's decision to use any lender other than PREFERRED LENDER will not affect any concessions, incentives or discounts offered by Seller for the purchase of the Property other than the closing cost contributions described in Section 2 above.**

**IN WITNESS WHEREOF, THE UNDERSIGNED, HAVING READ AND REVIEWED THIS ADDENDUM, HAVE SIGNED THIS ADDENDUM ON THE DATE SHOWN BELOW.**

**Purchaser:**

*Juanita E. Pickens*
—88F8FEA8500844A...
_____    11/10/2018
**Buyer:** Juanita E. Pickens    Date

*Raymond S. Pickens*
—EBF5410D194D4A3...
_____    11/10/2018
**Co-Buyer:** Raymond S. Pickens    Date

**Seller:**

**D.R. Horton, Inc., a Delaware Corporation**
DocuSigned by:
*Emily Ann Twyman*
—936A2303FCC5430...
_____    11/14/2018
Emily Ann Twyman    Date
Assistant Secretary, D.R. Horton

Page 1 of 1

(rev. 28-Dec-2016)

# ADDENDUM 2
# COMPLETED CONSTRUCTION

This Addendum is attached to and made a part of that Home Purchase Agreement (the "Agreement") between **Juanita E. Pickens and Raymond S. Pickens**, as Purchaser, and **D.R. Horton, Inc., a Delaware Corporation**, as Seller, regarding that parcel of land located in **ANDERSON** County, **SC**, briefly described as Lot **0046 - River Mill** Subdivision and referred to in the Agreement as the "Lot." All terms defined in the Agreement shall have the same meanings when used in this Addendum. Purchaser and Seller further agree as follows:

**1. CONSTRUCTION OF HOUSE.** Seller has completed construction of a ⦸ single-family detached / ◯ townhouse residence (the "House") on the Lot, and a Certificate of Occupancy has been issued for the House. Purchaser has thoroughly examined the completed House prior to signing this Agreement. Subject only to the provisions of subsections 9.d and 14 of this Agreement, Closing shall constitute acceptance of the House AS BUILT. Purchaser further acknowledges and agrees that, prior to Closing, Seller may remove or retain any trees and other vegetation currently existing on the Property if, in Seller's sole discretion, Seller determines that such removal or retention is necessary or desirable in connection with the development of the Subdivision.

**2. CHANGES.** The House as constructed includes those features and options listed on Exhibits A and B to the Agreement. After the execution of this Agreement, Purchaser may not change any options or features in the House except as approved by Seller (which approval may be may be withheld in Seller's sole discretion). If Seller does approve such a change, Purchaser shall pay to Seller a Change Fee in the amount of Five Hundred and 00/100 Dollars ($500.00) for each such change at the time the request is approved by Seller. Any change if approved by Seller shall be limited to one change order after the Effective Date of this Agreement. Any Change Fee paid shall be nonrefundable and shall not be credited against the Purchase Price. Seller shall not be obligated to make any changes unless they are evidenced by a written amendment to this Agreement. At the time of execution of such amendment, Purchaser shall pay to Seller Option Money (as defined in Exhibit B) in the amount of the total increase in the Purchase Price resulting from the change. Any Option Money paid to Seller at any time shall not be held in escrow, and shall be nonrefundable to Purchaser except in the event of breach of this Agreement by Seller. Upon Closing, all Option Money previously paid to Seller shall be credited to Purchaser against the Purchase Price. Purchaser recognizes that any changes to the House may affect the Closing Date.

**3. PURCHASER'S INQUIRIES.** Purchaser shall direct all inquiries and questions to Seller's on-site associate. The on-site associate will provide Purchaser with timely responses; however, the associate does not and shall not have authority to change the terms of this Agreement in any manner. This Agreement may be changed or modified only by a written amendment duly executed by both Purchaser and Seller. **Purchaser acknowledges that Seller's sales associates, superintendents, closing staff, warranty staff and other employees do not have authority to modify this Agreement**. Only an authorized corporate officer of Seller may modify this Agreement on Seller's behalf.

IN WITNESS WHEREOF, THE UNDERSIGNED, HAVING READ AND REVIEWED THIS ADDENDUM, HAVE SIGNED THIS ADDENDUM ON THE DATES SHOWN BELOW.

**PURCHASER:**

*Juanita E. Pickens*
88F8FEA8500844A...
_____    11/10/2018
**Buyer:** Juanita E. Pickens                Date

*Raymond S. Pickens*
EBF5410D194D4A3...
_____    11/10/2018
**Co-Buyer:** Raymond S. Pickens          Date

**SELLER:**

**D.R. Horton, Inc., a Delaware Corporation**

*Emily Ann Twyman*
936A2303FCC5430...
_____    11/14/2018
Emily Ann Twyman                      Date
Assistant Secretary, D.R. Horton

*For Internal Purposes Only:*
Seller's Sales Representative:

*Cameron McDonald*
74093CBA2B8249C...
_____    11/10/2018
**Sales Rep:** Cameron McDonald          Date

DocuSign Envelope ID: 1BF4056A-A77A-454E-BA19-8F9B4A572985

Buyer(s): Juanita E. Pickens and Raymond S. Pickens, Community: River Mill, Plat: 0046/7, Address: 425 BRANDYBUCK DRIVE, Sales Rep: Cameron McDonald

8:26-cv-00097-DCC    Date Filed 02/02/26    Entry Number 24-4    Page 20 of 38    Job: 708760046

# ADDENDUM 3
# CURRENT RESIDENCE CONTINGENCY

This Addendum is attached to and made a part of that Home Purchase Agreement (the "Agreement") between **Juanita E. Pickens and Raymond S. Pickens**, as Purchaser, and **D.R. Horton, Inc., a Delaware Corporation**, as Seller, regarding that parcel of land located in **ANDERSON** County, **SC**, briefly described as Lot **0046**, Block/Phase , **River Mill** subdivision, and referred to in the Agreement as the "Lot." All terms defined in the Agreement shall have the same meanings when used in this Addendum. Purchaser and Seller further agree as follows:

**1. CONTINGENCY.** The subsection checked below shall apply:

⊗ **a.** <u>No Contingency</u>. Purchaser agrees and acknowledge that Purchaser's performance of its obligations under this Agreement shall not be contingent upon the sale of Purchaser's current or former residence or any other property.

○ **b**. <u>Contingency</u>. Purchaser's performance of its obligations under this Agreement shall be contingent upon the <u>closing</u> of Purchaser's sale of certain real property owned by Purchaser identified below (the "Current Residence"). The contingency described in the foregoing sentence is referred to in this Addendum as the "Contingency." In the event the Contingency is not satisfied or waived in writing by Purchaser on or before the deadline stated below (the "Contingency Deadline"), either party may terminate this Agreement upon written notice to the other. In such event, the Earnest Money shall be refunded to Purchaser, the Option Money, if any, shall be retained by Seller, and neither party shall have any further liability or obligation to the other hereunder.

**2. PURCHASER'S WARRANTIES.** If Section 1(b) above is checked, Purchaser represents and warrants as follows:

a. Purchaser warrants that the Current Residence is <u>currently</u> listed for sale (or will be listed within 5 business days of the Effective Date) with a reputable real estate brokerage licensed to do business in the state and county in which it is located, and that the Current Residence is listed by that brokerage firm in the authorized multiple listing service used by real estate agencies in the community in which it is located. Purchaser warrants that it shall maintain these listings of the Current Residence until it is sold or this Agreement is terminated.

b. Purchaser warrants that there ☐ **IS** / ☐ **IS NOT** a fully executed contract currently in effect for the sale of Purchaser's Current Residence.

c. Purchaser warrants that, except for the Contingency, this Agreement is not contingent upon the closing of a sale of any property owned by Purchaser and that, at the time of Closing, Purchaser will have sufficient cash available (together with the Loan) to complete the purchase of the Property contemplated in the Agreement. In the event the Purchaser does not have sufficient cash available at Closing or cannot obtain financing without closing on the sale of another property, Seller may terminate this Agreement upon written notice to Purchaser. In such event, Seller shall retain the Earnest Money and the Option Money, if any, and thereafter neither party shall have any further liability or obligation to the other hereunder.

**3. AUTOMATIC EXPIRATION.** Notwithstanding any other provision herein, if this Agreement has not been previously terminated, the Contingency shall automatically expire on the date that is <u>ten (10) days after the Contingency Deadline</u> and thereafter shall not be a condition to Purchaser's obligation to close on the purchase of the Property. FROM AND AFTER THAT DATE, PURCHASER SHALL NOT HAVE THE RIGHT TO TERMINATE THIS AGREEMENT FOR FAILURE OF THE CONTINGENCY TO BE MET OR SATISFIED.

**4. THIRD PARTY OFFERS; TERMINATION BY SELLER.** Purchaser acknowledges that Seller shall continue to market the Property so long as the Contingency remains in effect. If Seller receives a bona fide offer to purchase the Property from a third party during such period, then Seller shall notify Purchaser that it has received such offer. Purchaser shall then have forty-eight (48) hours from receipt of such notice to notify Seller that Purchaser waives the contingency to Purchaser's performance stated in this Addendum, in which event the contingency shall become void and have no further force or effect. If Purchaser does not so notify Seller within that time period, then Seller may terminate this Agreement upon written notice to Purchaser, in which event Seller shall refund all Earnest Money to Purchaser, Seller shall retain all Option Money, if any, and thereafter neither party shall have any further liability or obligation to the other under this Agreement.

**5. CONFLICT.** In the event of any conflict between the terms and provisions of the main text of this Agreement and the terms and provisions of this Addendum, the terms and provisions of this Addendum shall control.

Buyer(s): Juanita E. Pickens and Raymond S. Pickens, Community: River Mill, Plat: 00467, Address: 425 BRANDYBUCK DRIVE, Sales Rep: Cameron McDonald

Job: **708760046**

**Printed:** 11/10/2018

**Purchaser:**

DocuSigned by:

*Juanita E. Pickens*

88F8FEA8500844A...

11/10/2018

_____  _____

**Buyer:** Juanita E. Pickens          Date

DocuSigned by:

*Raymond S. Pickens*

EBF5410D194D4A3...

11/10/2018

_____  _____

**Co-Buyer:** Raymond S. Pickens       Date

**Seller:**

**D.R. Horton, Inc., a Delaware Corporation**

DocuSigned by:

*Emily Ann Twyman*

936A2303FCC5430...

11/14/2018

_____  _____

Emily Ann Twyman                 Date

Assistant Secretary, D.R. Horton

*For Internal Purposes Only*
SELLER'S SALES REP:

DocuSigned by:

*Cameron McDonald*

74093CBA2B8249C...

11/10/2018

_____  _____

**Sales Rep:** Cameron McDonald        Date

DocuSign Envelope ID: 1BF40F6A-A77A-454E-BA19-3F0B4A572985

Buyer(s): Juanita E. Pickens, Co-Buyer: , Subdivision: River Mill, Property: 423 BRANDYBUCK DRIVE, Sales Rep: Seth McDonald

Job: 708760046
Printed: 11/10/2018



### ADDENDUM 4
### CO-BROKER ADDENDUM

| | |
|---|---|
| Seller: | **D.R. Horton, Inc., a Delaware Corporation** |
| Purchaser(s): | **Juanita E. Pickens and Raymond S. Pickens** |
| Property: | **423 BRANDYBUCK DRIVE, PIEDMONT, SC  29673** |
| | Lot **0046**, **River Mill** Subdivision |
| Co-Broker Real Estate Agency: | **Keller Williams** |
| Co-Broker Agent: | **Lisa Williams** |
| Co-Broker Agent License No. | |
| Co-Broker Broker-In-Charge / Qualifying Broker: | |
| Co-Broker Broker-In-Charge / Qualifying Broker License No. | |

This Co-Broker Addendum ("Addendum") is being provided pursuant to the Home Purchase Agreement ("Agreement") by and between Seller and Purchaser for the purchase and sale of the above-referenced Property. Capitalized terms not otherwise defined herein shall have the same means as ascribed to them in the Agreement. If any term or condition of this Addendum conflicts with any term or condition of the Agreement, the terms and conditions of this Addendum shall prevail.

1.  **Commission**.  Purchaser hereby identifies and designates the above named Sales Agent, Real Estate Broker and Real Estate Agency, collectively, as "Co-Broker," as provided in Section 10 of the Agreement. Subject to the terms and provisions of the Agreement and this Addendum, and provided that Closing actually occurs, Co-Broker will receive a real estate sales commission at Closing in the amount of  **3.00%** of the Purchase Price stated Section 2 of the Agreement as of the Effective Date (the "Base Commission"). For the purposes of this Addendum, the term "Commission" is intended to include the Base Commission and all other commissions, incentives, and bonuses, if any, to be received by Co-Broker in connection with the purchase and sale of the Property pursuant to the Agreement. No commission of any kind shall be earned or due unless and until Closing occurs. Co-broker's Commission shall be subject to limitations, if any, on total broker commission imposed by Purchaser's lender. The Commission must be paid at Closing and must be shown on the closing disclosure.

2.  **Bonus Commission**.  The subsection checked below shall apply:

    ⊘ No bonus commission shall be due or paid.

    **OR**

    ⭕ If Closing occurs on or before , then, at Closing, the Co-Broker shall be paid an additional, bonus commission in the amount specified in the sub-subsection checked below:

    ☐

    **OR**

    ☐    Relocation fee reimbursement up to **$0.00**

3.  **Real Estate Certification**.  Co-Broker hereby certifies as follows:

    a.  The terms, conditions, representations and warranties contained in the Agreement are true, to the best of my knowledge and belief; and

    b.  Any other agreement entered into by any parties in connection with the subject real estate transaction is part of, or attached to, the Agreement.

Addendum 4: Co-Broker Addendum (rev. 07-May -2018)

Printed: 11/10/2018

4. **Warranty of Authority**.  The undersigned Sales Agent (or other person signing on behalf of Co-Broker) represents and warrants that he or she has the requisite authority to bind Co-Broker, including the above-named Real Estate Broker and Real Estate Agency as to all matters addressed in this Addendum and to modify any existing commission agreement with respect to the Agreement and under which Co-Broker may be entitled to receive a commission.

**CO-BROKER:**

DocuSigned by:

*Lisa Williams*

2B6F31B03A3B46A...                                    11/10/2018

_____    Date

**Broker Agent:** Lisa Williams

**SELLER:**

**D.R. Horton, Inc., a Delaware Corporation**

DocuSigned by:

*Emily Ann Twyman*

936A2303FCC5430...                                    11/14/2018

_____    _____

Emily Ann Twyman                                      Date

Assistant Secretary, D.R. Horton

*For Internal Purposes Only*

SELLER SALES REP:

DocuSigned by:

*Cameron McDonald*

74093CBA2B8249C...                                    11/10/2018

_____

**Sales Rep:** Cameron McDonald                      Date

Addendum 4: Co-Broker Addendum (rev. 07-May -2018)

Printed: 11/10/2018

Addendum 4: Co-Broker Addendum (rev. 07-May -2018)

DocuSign Envelope ID: 1BF4056A-A77A-454E-BA19-3F0B4A572985



**Printed:** 11/10/2018



## CO-BROKER CERTIFICATION

| | |
|---|---|
| Seller: | **D.R. Horton, Inc., a Delaware Corporation** |
| Purchaser(s): | **Juanita E. Pickens and Raymond S. Pickens** |
| Property: | **423 BRANDYBUCK DRIVE, PIEDMONT, SC  29673** |
| | Lot **0046**, **River Mill** Subdivision |
| Co-Broker Real Estate Agency: | **Keller Williams** |
| Co-Broker Agent: | **Lisa Williams** |
| Co-Broker Agent License No. | |
| Co-Broker Broker-In-Charge / Qualifying Broker: | |
| Co-Broker Broker-In-Charge / Qualifying Broker License No. | |
| Agency Address: | **403 Woods Lake Road, #100, GREENVILLE, SC  29607, US** |

This Co-Broker Rebate Certification (this "Certification") is being provided pursuant to the Home Purchase Agreement ("Agreement") by and between Seller and Purchaser, in connection with the purchase and sale of the above-referenced Property. Capitalized terms not otherwise defined herein shall have the same means as ascribed to them in the Agreement. If any term or condition of this Addendum conflicts with any term or condition of the Agreement, the terms and conditions of this Addendum shall prevail. As used herein, "Co-Broker" shall refer collectively to the above named Co-Broker Sales Agent, Co-Broker Broker-In-Charge/Qualifying Broker, and Co-Broker Real Estate Agency.

1. Certification.

    a. Co-Broker hereby acknowledges and certifies that it **WILL NOT** pay to Purchaser all or any part of the Commission (as defined in Addendum 4) at Closing. Co-Broker acknowledges and agrees that no payment by Co-Broker of any portion of the Commission will be made directly to, or indirectly on behalf of, Purchaser or any other interested and/or related party, and that no part of the Commission will be used to pay Purchaser costs associated with the purchase and sale of the Property.

    b. Co-Broker certifies that it **HAS NOT** and **WILL NOT** give, pay, or provide any payment or other benefit directly or indirectly (as part of Closing or outside of Closing) to Purchaser or to any other interested and/or related party, or pay any of Purchaser's costs or liabilities to any third party, for the purpose of inducing Purchaser to close on the sale of the Property. Any such inducement payment or benefit and any shared commission are collectively referred to hereinafter as "*Inducements*" or, in the singular, an "*Inducement*."

    c. In the event Co-Broker decides at a later date to pay or give any type of Inducement, Co-Broker agrees to execute an amendment to the Agreement to disclose the terms of such Inducement in order to create transparency with regard to how such Inducement applies to the purchase and sale of the above-referenced Property.

    d. Co-Broker acknowledges that Seller is relying on this Certification as verification of whether any payment of any portion of the Commission to Purchaser is to be made.

2. Warranty of Authority.  The undersigned Sales Agent (or other person signing on behalf of Co-Broker) represents and warrants that he or she has the requisite authority to bind Co-Broker, including the above-named Real Estate Broker and Real Estate Agency as to all matters addressed in this Addendum and to modify any existing commission agreement with respect to the Agreement and under which Co-Broker may be entitled to receive a commission.

    **CO-BROKER:**

Addendum 4: Co-Broker Addendum (rev. 07-May -2018)

DocuSign Envelope ID: 1BF4056A-A77A-454E-BA19-3F9B4A572985

Printed: 11/10/2018

DocuSigned by:

*Lisa Williams*

2B6F31B03A3B46A...

11/10/2018

**Broker Agent:** Lisa Williams                Date

Addendum 4: Co-Broker Addendum (rev. 07-May -2018)

Buyer(s): Juanita E. Pickens and Raymond S. Pickens, **Community:** River Mill, **Plat:** 0046//, **Address:** 423 BRANDYBUCK DRIVE, **Sales Rep:** Cameron McDonald

**Job: 708760046**

**Printed:** 11/10/2018

# ADDENDUM 9
## VARIATIONS IN MATERIALS AND COMPONENTS

This Addendum is attached to and made a part of that Home Purchase Agreement (the "Agreement") between Juanita **E.** Pickens and Raymond S. Pickens, as Purchaser, and **D.R. Horton, Inc., a Delaware Corporation**, as Seller, regarding that parcel of land located in **ANDERSON** County, **SC**, briefly described as Lot **0046**, Block/Phase , **River Mill** subdivision, and referred to in the Agreement as the "Lot." All terms defined in the Agreement shall have the same meanings when used in this Addendum. Purchaser and Seller further agree and acknowledge as follows:

**1.** Many materials, both natural and man-made, used in the construction of homes contain variations and inconsistencies. Such variations and inconsistencies are beyond Seller's control, and Seller shall not be responsible or liable for them. Some of the materials and components which may exhibit variations and inconsistencies are detailed in the sections below.

**2.** <u>CONCRETE</u>. Purchaser understands and acknowledges that when adding additional concrete to the existing concrete pad, the two pads may not match in color. Also, there may be visible seam between the two pads.

**3.** <u>INTERIOR PAINT</u>. Seller installs a level 4 drywall/Gypsum Board finish in its homes. White or light color flat paint is recommended for this type of finish and is a standard feature in Seller's homes. Colored, gloss or semi-gloss paint are not recommended as they may magnify joint or patch photographing in critical lighting areas.

**4.** <u>OUTLET LOCATIONS</u>. Purchaser understands that any cable, phone and/or data outlet locations that are not specifically designated at the initial time of selections will be placed by the construction supervisor, and will not be moved.

**5.** <u>WOOD</u>.

    a. Purchaser understands that wood of the same species will vary in color, mineral streaking, texture, pitch pockets, and grain uniformity, depending on when, where and how the tree grew and the fact that different wood products come from different manufacturers. These characteristics may occur on adjacent cabinets, between pair of doors and/or drawers, with the same cabinet panels, between flooring, stair treads and railings and between flooring and cabinets/vanities. It is these differences, caused by nature, that create the warmth and individuality of fine woods. Darker finishes tend to hide some of these natural characteristics while lighter finishes tend to accentuate the differences. Because of this, the variations in color and contrast may be different than in a display or in a smaller sample.

    b. Seller shall not be responsible under any circumstances for damage or wear to hardwood flooring caused in whole or in part by moisture. Please refer to the Limited Warranty administered by Residential Warranty Corporation for terms, conditions, and exclusions pertaining to flooring.

**6.** <u>STUCCO</u>. The final appearance of your home may be impacted by sunlight angles, shadows from architectural details, application and texturing techniques, environmental surrounding and color lot to color lot variations.

**7.** <u>BRICK/STONE</u>. Brick and stone products are composed of earthen materials and go through many processes before firing and consequently each run or lot of brick/stone will vary. Photographs, samples and even completed homes are only a representation of the color and each run or lot and even installation can vary from home to home. An exact replication of total color or percentages as displayed by samples or model homes cannot be guaranteed.

**8.** <u>GRANITE/CERAMIC/MARBLE</u>. The materials used in counter tops, fireplace surrounds/hearths, wall and floor tile contain color variations and "veining", natural blemishes, and grain. Accordingly, consistency <u>cannot be guaranteed.</u>

**9.** In the event of any conflict between the provisions of this Addendum and the provisions of the Agreement, the Agreement shall control. In the event of any conflict between the provisions of this Addendum and the provisions of the Limited Warranty, the Limited Warranty shall control.

IN WITNESS WHEREOF, THE UNDERSIGNED, HAVING READ AND UNDERSTOOD THIS ADDENDUM, HEREBY EXECUTE THIS ADDENDUM AS OF THE DATES SHOWN BELOW.

| **Purchaser:** | **Seller:** |
|---|---|
| *Juanita E. Pickens* (DocuSigned by: 88F8FEA8500844A...) | **D.R. Horton, Inc., a Delaware Corporation** |
| 11/10/2018 | *Emily Ann Twyman* (DocuSigned by: 936A2303FCC5430...) |
| **Buyer:** Juanita E. Pickens — Date | 11/14/2018 |
| *Raymond S. Pickens* (DocuSigned by: EBF5410D194D4A3...) | Emily Ann Twyman — Date |
| 11/10/2018 | Assistant Secretary, D.R. Horton |
| **Co-Buyer:** Raymond S. Pickens — Date | |

Buyer(s): Juanita E. Pickens, Raymond S. Pickens    River Mill, Lot: 46    Plan: 2/0 QUICK DRIVE    Sales Rep: Heather McDonald    Job:708760046    Printed: 11/10/2018



## ADDENDUM 11
## CLOSING ATTORNEY INCENTIVE

This **ADDENDUM** is attached to and made a part of that Home Purchase Agreement between **D.R. Horton, Inc., a Delaware Corporation**, as Seller, and **Juanita E. Pickens and Raymond S. Pickens** as Purchaser (the "Agreement"), regarding that parcel of real estate located in **ANDERSON** County, **SC**, briefly described as Lot **0046**, **River Mill**, and referred to in the Agreement as the "Lot." In the event of any conflict between the terms and provisions of this Addendum and the terms and provisions of the main text of the Agreement, the terms and provisions of this Addendum shall control. All terms defined in the main text of the Agreement shall have the same meanings when used in this Addendum. Seller and Purchaser hereby agree as follows:

1.  Seller has recommended Harvey & Vallini, LLC, 100 Verdae Boulevard, Suite 400, Greenville, South Carolina 29607 ("Harvey & Vallini") to act as settlement agent and close the purchase of the Property. Purchaser acknowledges that there are numerous settlement agents available to Purchaser, and that Purchaser is free to use any settlement agent it chooses to close the purchase of the Property contemplated in this Agreement. If Purchaser chooses to use Harvey & Vallini to act as settlement agent and close the purchase of the Property, Seller shall provide Purchaser a credit at closing in the amount of **$2,500.00** towards the total Purchase Price for the House (hereinafter referred to in this Addendum as the "Closing Attorney Credit").

2.  Purchaser hereby elects to use Harvey & Vallini to act as settlement agent and close the purchase of the Property. In consideration of such election, Seller shall provide Purchaser the Closing Attorney Credit at Closing.

3.  The parties hereby acknowledge that the Closing Attorney Credit is already reflected in the "Special Discount" line in the table in Section 2 of the Agreement. In the event Purchaser elects to use a different settlement agent at Closing, the parties shall amend the Agreement to remove the Closing Attorney Credit and the Purchase Price shall be adjusted accordingly.

**IN WITNESS WHEREOF, THE UNDERSIGNED, HAVING READ AND REVIEWED THIS ADDENDUM, HAVE SIGNED THIS ADDENDUM ON THE DATES SHOWN BELOW.**

**Purchaser:**

DocuSigned by:
*Juanita E. Pickens*
88F8FEA8500844A...
_____    11/10/2018
**Buyer:** Juanita E. Pickens    Date

DocuSigned by:
*Raymond S. Pickens*
EBF5410D194D4A3...
_____    11/10/2018
**Co-Buyer:** Raymond S. Pickens    Date

**Seller:**

**D.R. Horton, Inc., a Delaware Corporation**

DocuSigned by:
*Emily Ann Twyman*
936A2303FCC5430...
_____    11/14/2018
Emily Ann Twyman    Date

Assistant Secretary, D.R. Horton

rev. 11-Sept-2018

DocuSign Envelope ID: 1BF4056A-A77A-454E-BA19-3F9B4AF72985

11/10/2018

# Closing Disclosure Contact Information

Below is information intended to assist interested parties with the completion of the Closing Disclosure.

**GENERAL INFORMATION**

| | |
|---|---|
| **Buyer(s):** | Juanita E. Pickens and Raymond S. Pickens |
| **Subdivision:** | River Mill |
| **Lot Address:** | 423 BRANDYBUCK DRIVE, PIEDMONT, SC  29673 |
| **Lot/Block:** | 0046/ |

| | | | |
|---|---|---|---|
| **Total Price:** | $299,900.00 | **Builder Key:** | 708760046 |
| | | **Ratify Date:** | |

**REAL ESTATE BROKER INFORMATION (BUYER)**

| | | | |
|---|---|---|---|
| **Company Name:** | Keller Williams | | |
| **Company Address:** | 403 Woods Lake Road, #100 | | |
| | GREENVILLE, SC  29607 | | |
| **Broker Officer:** | | | |
| **Broker Officer License:** | | **Officer Email:** | |
| **Agent Name:** | Lisa Williams | | |
| **Agent License:** | | | |
| **Agent Email:** | lisacwilliams@kw.com | | |
| **Agent Cell:** | | | |
| **Agent Work:** | | | |
| **Agent Fax:** | | | |

**REAL ESTATE BROKER INFORMATION (SELLER)**

| | |
|---|---|
| **Company Name:** | D.R. Horton, Inc., a Delaware Corporation |
| **Company Address:** | 100 Verdae Blvd, Suite 401 |
| | Greenville, SC  29607 |
| **Company License:** | _____ |
| **Agent Name:** | Cameron McDonald |
| **Agent License:** | |
| **Agent Email:** | CMcdonald@drhorton.com |
| **Agent Cell:** | |
| **Agent Work:** | |

**SELLER INFORMATION**

| | |
|---|---|
| **Name:** | D.R. Horton, Inc., a Delaware Corporation |
| **Address:** | 100 Verdae Blvd, Suite 401 |
| | Greenville, SC  29607 |

**SETTLEMENT AGENT INFORMATION**

| | |
|---|---|
| **Company Name:** | HARVEY AND VALLINI LLC          (GRNVL) |
| **Company Address:** | 100 VERDAE BOULEVARD SUITE 400 |
| | GREENVILLE, SC  29607 |
| **Title Request Email:** | *scupstatepackages@hvlawsc.com* |
| **Agent Name:** | PIERCE, TROY |
| **Agent Email:** | DRHGreenville@hvlawsc.com |
| **Agent Cell:** | (864) 729-6870 |
| **Agent Work:** | (864) 729-6870 |
| **Agent Fax:** | (864) 752-1789 |

# NOTICE OF SELLER'S BUSINESS AFFILIATIONS

**TO:** Juanita E. Pickens and Raymond S. Pickens
[Homebuyer(s)]

**PROPERTY:** **423 BRANDYBUCK DRIVE**

**FROM:**   **D.R. HORTON, INC.**
100 Verdae Blvd., Ste. 401
Greenville, SC 29607
[Seller]

**DATE:** 11/10/2018

This is to give you notice that the above referenced seller has a business relationship with:

**DHI MORTGAGE COMPANY, LTD.**
100 Verdae Blvd., Ste. 401
Greenville, SC 29607

**D.R. HORTON INSURANCE AGENCY, INC.**
1341 Horton Circle
Arlington, TX 76011

**DHI TITLE OF SOUTH CAROLINA**
10700 Pecan Park Blvd, Ste 220
Austin, TX 78750

The nature of this business relationship is that these companies are corporate affiliates, each being 100% wholly owned by, or by a subsidiary of, the same parent corporation.  Because of this relationship, this referral may provide seller a financial or other benefit.

Set forth below is the estimated charge or range of charges by each company for settlement services listed. You are **NOT** required to use these companies as a condition of your purchase of the property from seller or as a condition of your application for, or settlement of, a mortgage loan on the property in connection with your purchase. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| DHI MORTGAGE COMPANY, LTD. | | DHI TITLE OF SOUTH CAROLINA | |
|---|---|---|---|
| **Service** | **Charge or Range** | **Service** | **Charge or Range** |
| Loan Origination Charge: | 1%  of Loan Amount plus $595.00 | Simultaneous Lender's Title Insurance | $100.00 - $250.00 |
| | An additional 1% of the Loan Amount may apply for certain Affordable Housing Loan Programs | Owner's Title Insurance: | $750.00 - $900.00 |

DHI Title charge estimates are based on an average home price of $300,000.  Title Insurance Rates are set by the state.  Adjustments to Sales Price, Loan Amount and Lender requirements will impact the cost of your title insurance.  Mortgage fees may vary depending upon whether the loan is originated or brokered by DHI Mortgage Company, Ltd.

Note: If you apply with DHI Mortgage Company, Ltd., a Loan Estimate of all settlement charges will be provided to you by DHI Mortgage Company, Ltd. at or within three business days after loan application.

You may be entitled to additional builder discounts/credits paid by the seller to purchase multiple settlement services as set forth in the Builder's Incentive and Concessions Addendum to your purchase contract.

| D. R. HORTON INSURANCE AGENCY, INC. |
|---|
| D.R. HORTON INSURANCE AGENCY, INC. is a licensed insurance agent that offers policies of property insurance as agent for one or more insurance companies qualified to transact insurance business in the state of South Carolina. You will be provided a separate proposal or quote of the terms and conditions of any policy of insurance offered by D.R. HORTON INSURANCE AGENCY, INC. in which you express an interest. For comparison purposes, the cost for a hazard insurance policy for a home valued at $300,000 with commonly selected coverage items and deductibles would range between: $300 and $11,205 per annum.  The specific premium depends on various factors, including but not limited to, the value of the home, the location of the home, deductibles selected, and the amount of coverage selected.  The quote will set out the estimated premium and other charges, or range of charges, by D.R. HORTON INSURANCE AGENCY, INC. for its insurance products or services. |

**ACKNOWLEDGMENT:**
I/we have read this disclosure form and understand that seller is referring me/us to purchase the above-described settlement services from **DHI MORTGAGE COMPANY, LTD.**, **DHI TITLE OF SOUTH CAROLINA,** and **D.R. HORTON INSURANCE AGENCY, INC.**, and may receive a financial or other benefit as the result of this referral.

DocuSigned by:
*Juanita E. Pickens*
88F8FEA8500844A...
_____    11/10/2018
**Buyer:** Juanita E. Pickens                    Date

DocuSigned by:
*Raymond S. Pickens*
EBF5410D194D4A3...
_____    11/10/2018
**Co-Buyer:** Raymond S. Pickens            Date

Revised 08.01.18 aeb

One-Time Direct Payment Via ACH Debit

By signing below, you are agreeing to process a deposit of $2,500.00, using a one-time electronic ACH debit of funds from your bank account, which will be processed on, or after the date of ratification of my home home purchase contract by D.R. Horton, Inc., a Delaware Corporation, for the following Property:

Property Address 423 BRANDYBUCK DRIVE PIEDMONT, SC 29673

Consent to Use of Electronic Signatures and Records

This notice contains important information that you are entitled to receive before you consent to electronic delivery of documents. Please read the information below, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by signing at the bottom of this document.

Because you have asked to pay your deposit via a one-time ACH debit, D.R. Horton, Inc., a Delaware Corporation will ask for your written authorization to do so. The authorization is titled "Consumer Authorization for One-Time Direct Payment via ACH Debit" and is referred to in this document as the "ACH Authorization Form."

By signing below, you confirm your ability and consent to receive the ACH Authorization Form electronically from D.R. Horton, Inc., a Delaware Corporation, rather than in paper form. If you choose not to receive the ACH Authorization Form electronically rather than in paper form, you will not be able to proceed with your ACH transaction. You may, however, choose a different form of payment for your deposit.

If you sign this Consent, D.R. Horton, Inc., a Delaware Corporation will:

(i) Provide you the ACH Authorization Form via the same electronic terminal on which you are accessing and reading this Consent ("Electronic Terminal");

(ii) Require you to sign the ACH Authorization Form electronically; and

(iii) Later send you a copy of this Consent and the ACH Authorization Form (the "Copies") by e-mail for you to print or download and retain for your records.

You have the right to receive the Copies in paper form. To request a paper form of the Copies at no charge, please follow the procedures set forth in the "Consent to Use of Electronic Signatures and Records" contained in your home purchase contract.

This Consent only applies to the ACH Authorization Form that will be provided to you on the next screen on the Electronic Terminal. A separate consent form will be provided in connection with other documents sent electronically in connection with your home purchase.

To access the ACH Authorization Form, you will only need to access and read the document on the Electronic Terminal on which you are accessing and reading this Consent.

Because this Consent is used only in connection with the ACH Authorization Form provided on the next screen, you CANNOT later withdraw consent.

By signing below, I confirm that:

• I can access and read this electronic Consent to Use of Electronic Signatures and Records;

• I agree to electronically access and sign the ACH Authorization Form on the Electronic Terminal; and

• The e-mail address provided below is the address where I would like the Copies delivered to me.

Electronic Signature Accepted

Electronic Signature Accepted

Consumer Authorization for One-Time Direct Payment Via ACH Debit

I authorize D.R. Horton, Inc., a Delaware Corporation to electronically debit my account for a one-time deposit and, if necessary, to electronically credit my account for corrections, refunds or returns.  The one-time debit for my deposit in the amount of  $2,500.00 will be processed on, or after the date of ratification of my home purchase contract by D.R. Horton, Inc., a Delaware Corporation .

Account Type:  Personal

Name on Account:

Bank Account Number: 1293793

Bank Routing Number: 325272021
Bank Name:

I understand that this ACH Authorization will remain in full force and effect until I notify D.R. Horton, Inc., a Delaware Corporation by sending an email to CTGowan@drhorton.com that I wish to cancel this ACH Authorization. I understand that I may cancel this ACH Authorization within 24 hours after I sign this ACH Authorization.  If, my home purchase contract has not been ratified by D.R. Horton, Inc., a Delaware Corporation, and my deposit has not been deducted from my account, prior to my timely cancellation, this ACH Authorization will be considered void.  On the other hand, if my home purchase contract has been ratified by D.R. Horton, Inc., a Delaware Corporation, and my deposit has been deducted from my account, prior to my timely cancellation, I will receive a full refund of the deposit authorized by this ACH Authorization. If my ACH transaction is returned due to Non-Sufficient Funds (NSF) or Uncollected Funds Return, I understand that D.R. Horton, Inc., a Delaware Corporation may attempt to process the transaction again within thirty (30) days of the return of my ACH transaction.
By signing below, I understand and agree to be subject to the terms of the following Refund Policy.

Refund Policy

Prior to closing, your ability to receive a refund of your initial earnest money deposit or any option deposit will be governed by the terms of your home purchase contract. Typically, your home purchase contract will provide that deposits are refundable only if a contingency specifically listed in your home purchase contract is not met or in the event of a seller default.

We encourage you to review your home purchase contract. After closing, there are no refunds.

Transaction Date:11/10/2018
Transaction Time: 14:53:00 PM

Electronic Signature Accepted



## Certificate Of Completion

Envelope Id: 1BF40E6AA77A454EBA193F0B4A572985    Status: Completed
Subject: Purchase Agreement for Property at 423 BRANDYBUCK DRIVE, PIEDMONT, SC
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 33 | Signatures: 41 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 10 | Home Sales |
| AutoNav: Enabled | | 1341 Horton Circle |
| EnvelopeId Stamping: Enabled | | Arlington, TX  76011 |
| Time Zone: (UTC-06:00) Central Time (US & Canada) | | noreply-edocs@drhorton.com |
| | | IP Address: 199.36.190.2 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original | Holder: Home Sales | Location: DocuSign |
| 11/10/2018 3:03:06 PM | noreply-edocs@drhorton.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Juanita E. Pickens<br>jepickens@outlook.com<br>Security Level:<br>https:.PaperDocuments<br>ID: 00000000-0000-0000-0000-000000000000<br>11/10/2018 7:28:23 AM | DocuSigned by:<br>*Juanita E. Pickens*<br>88F8FEA8500844A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 104.129.206.84 | Sent: 11/10/2018 3:03:13 PM<br>Viewed: 11/10/2018 3:28:31 PM<br>Signed: 11/10/2018 3:30:19 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 11/10/2018 3:28:31 PM<br>ID: a1af6775-1d01-42d8-a843-920675f9cd88 | | |
| Raymond S. Pickens<br>raymondpickens@hotmail.com<br>Security Level:<br>.Email<br>11/10/2018 3:41:45 PM | DocuSigned by:<br>*Raymond S. Pickens*<br>EBF5410D194D4A3...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 107.77.205.196<br>Signed using mobile | Sent: 11/10/2018 3:03:13 PM<br>Viewed: 11/10/2018 3:42:34 PM<br>Signed: 11/10/2018 3:46:18 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 11/10/2018 3:42:34 PM<br>ID: c25ec936-5d3d-4462-8b39-d0f355031596 | | |
| Lisa Williams<br>lisacwilliams@kw.com<br>Security Level:<br>https:.PaperDocuments<br>ID: 00000000-0000-0000-0000-000000000000<br>11/10/2018 7:30:42 AM | DocuSigned by:<br>*Lisa Williams*<br>2B6F31B03A3B46A...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 104.129.206.84 | Sent: 11/10/2018 3:03:13 PM<br>Viewed: 11/10/2018 3:30:50 PM<br>Signed: 11/10/2018 3:31:14 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 11/10/2018 3:30:50 PM<br>ID: ecaa8cc2-e1cf-47d4-8d19-eb0044b821af | | |
| Emily Ann Twyman<br>CTGowan@drhorton.com<br>Security Level:<br>https:.PaperDocuments<br>ID: 00000000-0000-0000-0000-000000000000<br>11/14/2018 1:33:18 AM | DocuSigned by:<br>*Emily Ann Twyman*<br>936A2303FCC5430...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 104.129.206.63 | Sent: 11/10/2018 3:03:13 PM<br>Resent: 11/14/2018 9:33:15 AM<br>Viewed: 11/14/2018 9:33:49 AM<br>Signed: 11/14/2018 9:34:49 AM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 11/14/2018 9:33:49 AM<br>ID: cb3b2bea-0966-46f3-a736-bbf0f40b9af6 | | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Cameron McDonald<br>CMcdonald@drhorton.com<br>Security Level:<br>https:.PaperDocuments<br>ID: 00000000-0000-0000-0000-000000000000<br>11/10/2018 7:03:18 AM | DocuSigned by:<br>*Cameron McDonald*<br>74093CBA2B8249C...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 104.129.206.84 | Sent: 11/10/2018 3:03:13 PM<br>Viewed: 11/10/2018 3:04:26 PM<br>Signed: 11/10/2018 3:26:56 PM |

**Electronic Record and Signature Disclosure:**
    Accepted: 11/10/2018 3:04:26 PM
    ID: 40c4ec94-ddc0-4229-a0fd-ce2d65c98d2e

| In Person Signer Events | Signature | Timestamp |
|---|---|---|
| **Editor Delivery Events** | **Status** | **Timestamp** |
| **Agent Delivery Events** | **Status** | **Timestamp** |
| **Intermediary Delivery Events** | **Status** | **Timestamp** |
| **Certified Delivery Events** | **Status** | **Timestamp** |
| **Carbon Copy Events** | **Status** | **Timestamp** |
| **Notary Events** | **Signature** | **Timestamp** |

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 11/14/2018 9:33:15 AM |
| Certified Delivered | Security Checked | 11/14/2018 9:33:50 AM |
| Signing Complete | Security Checked | 11/14/2018 9:34:49 AM |
| Completed | Security Checked | 11/14/2018 9:34:49 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 5/21/2013 1:06:10 PM
Parties agreed to: Juanita E. Pickens, Raymond S. Pickens, Lisa Williams, Emily Ann Twyman, Cameron McDonald

8:26-cv-00097-DCC    Date Filed 02/02/26    Entry Number 24-4    Page 36 of 38

**CONSENT TO ELECTRONIC RECEIPT OF CONSUMER DISCLOSURES REGARDING YOUR HOME PURCHASE CONTRACT AND ELECTRONIC SIGNATURE OF YOUR HOME PURCHASE CONTRACT**

D.R. Horton, America's Builder (hereinafter "we," "us" or the "Company") is required by law to provide you certain written notices and disclosures about your home purchase contract (collectively, "Disclosures"). Set forth below are the terms and conditions for providing Disclosures to you electronically. In addition, we provide you with the option of electronically executing, through the DocuSign, Inc. ("DocuSign") electronic signing system ("DocuSign System"), all documents comprising your home purchase contract including, but not limited to, the home purchase contract and related contract addenda, Disclosures, amendments and change orders (hereinafter referred to as "Your Contract"). The terms and conditions regarding such electronic signature are also set forth below.

Please read carefully and thoroughly the information below. If you can access this information electronically, to your satisfaction, and agree to receive Disclosures electronically and to execute Your Contract with us electronically through the DocuSign System, in accordance with these terms and conditions, please confirm your agreement by clicking the "I agree" button at the bottom of this document. If you do not agree, you will receive Disclosures in paper format, and you will be required to sign paper copies of Your Contract in ink. If Your Contract and Disclosures are provided to you in paper format, there will be no charge or expense to you. The terms and conditions set forth below and your agreement to these terms and conditions will apply to all transactions related to Your Contract conducted between you and the Company through the DocuSign System. **You are not required to receive or execute documents comprising Your Contract electronically.**

**Right to Obtain Paper Copies**

At any time, you may request from us a paper copy of Your Contract or Disclosures that we previously made available to you electronically. You will have the ability to download and print documents that we send to you through the DocuSign System during, and immediately after, a signing session and, if you elect to create a DocuSign signer account, you may access such documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you a paper copy of any such document, you may request a paper copy from us by following the procedure described below under "Procedure to Request Paper Copies of Your Contract and Disclosures Regarding Your Contract from the Company." We will not charge you any fees for one paper copy of any such requested document.

**Right to Withdraw Your Consent**

If you decide to receive Disclosures from us electronically and to execute Your Contract with us electronically through the DocuSign System, you may, at any time thereafter, change your mind and tell us that you now wish to receive Disclosures only in paper format and to execute Your Contract with an ink signature. How you must inform us of your decision to receive future Disclosures in paper format, execute Your Contract with an ink signature and withdraw your consent: (i) to receive Disclosures and (ii) to execute Your Contract electronically is described below under "Procedure to Withdraw Your Consent to Receive Future Disclosures Regarding Your Contract in Electronic Format and Electronically Execute Your Contract."

**Consequences of Changing Your Mind**

If you elect to receive required Disclosures only in paper format and execute Your Contract with an ink signature, it will slow the speed at which we can complete certain steps in the home

purchase transaction with you and deliver certain related services to you because we must send the required Disclosures and Your Contract to you in paper format, and then wait until we receive your acknowledgment of your receipt of such paper Disclosures and Your Contract, including any required signatures.

**All Disclosures Regarding Your Contract Will Be Sent to You Electronically**

Unless you tell us otherwise in accordance with the procedures described herein, all Disclosures and Your Contract will be provided to you electronically through the DocuSign System. To reduce the chance of you inadvertently not receiving a Disclosure or a document comprising Your Contract, we prefer to provide all required Disclosures and Your Contract documents to you by the same method (electronically or in paper format) and, if electronically, to one email address. Thus, you can receive all Disclosures and Your Contract electronically or in paper format via mail. If you do not agree to electronic receipt, please let us know as described below under "Procedure to Withdraw Your Consent to Receive Future Disclosures Regarding Your Contract in Electronic Format and Electronically Execute Your Contract." Please also see the paragraph immediately above that describes the consequences of electing not to receive Disclosures and Your Contract documents electronically.

**Procedure to Contact the Company**

You may send an email message, as described below, to support-edocs@drhorton.com: (i) to let us know of any changes as to how we may contact you electronically, (ii) to request paper copies of certain information from us, and (iii) to withdraw your prior consent to receive Disclosures and execute Your Contract electronically.

**Procedure to Advise the Company of Your New Email Address**

To let us know of a change in the email address where you wish to receive Disclosures and Your Contract electronically, you must send an email message to support-edocs@drhorton.com. In the body of such request, you must state: your previous email address and your new email address. We do not require any other information from you to change your email address.

In addition, you must notify DocuSign to arrange for your new email address to be reflected in your DocuSign account by following the process for changing an email address in the DocuSign System.

**Procedure to Request Paper Copies of Your Contract and Disclosures Regarding Your Contract from the Company**

To request delivery from us of a paper copy of any Disclosure previously provided to you electronically or any document comprising Your Contract that you executed electronically, you must send an email to support-edocs@drhorton.com and in the body of such request you must state your email address, full name, US Postal address, telephone number and property address for the home you are purchasing or have purchased.

**Procedure to Withdraw Your Consent to Receive Future Disclosures Regarding Your Contract in Electronic Format and Electronically Execute Your Contract**

To inform us that you no longer wish to receive future Disclosures in electronic format or that you have changed your mind regarding the use of the DocuSign System to execute Your Contract electronically, you must either:

    i.    decline to sign Your Contract within your DocuSign session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or

ii.     send an email to support-edocs@drhorton.com and, in the body of such request, state your email address, full name, U.S. Postal address, telephone number and property address for the home you are purchasing or have purchased. We do not need any other information from you to withdraw your consent.

As a result of your consent withdrawal, you will no longer be able to use the DocuSign System to receive Disclosures electronically or to sign Your Contract electronically. Withdrawal of your consent will not, however, affect the legal validity and enforceability of any Disclosure that you previously received electronically or of any documents that comprise Your Contract that you previously executed electronically. Any withdrawal of your consent will be effective immediately. We will not charge you a fee for withdrawal of your consent.

**Required\* Hardware and Software**

| Operating Systems: | Windows® XP, Windows Vista®; Windows 7; Mac OS® X |
|---|---|
| Browsers: | Final release versions of Internet Explorer® 7.0 or above (Windows only); Mozilla Firefox 3.0 or above (Windows and Mac); Safari™ 3.0 or above (Mac only); Google Chrome 5.0 or above. |
| Mobile Signing: | Apple iOS 4.0 or above; Android 2.2 or above. |
| PDF Reader: | Acrobat® or similar software may be required to view and print PDF files |
| Screen Resolution: | 1024 x 768 minimum |
| Enabled Security Settings: | Allow per session cookies |

**\***These minimum requirements are subject to change. If these requirements change, you will be asked to re-accept the disclosure. Pre-release (e.g. beta) versions of operating systems and browsers are not supported.

**Acknowledging Your Access and Consent to Receive Materials Regarding Your Contract Electronically and Execute Your Contract Electronically**

To confirm to us that you can access this information electronically, which will be similar to other Disclosures and documents comprising Your Contract that we will provide to you, please verify, by clicking the "I agree" button below, that: (i) you were able to read this electronic disclosure and that you also were able to print this page on paper or electronically save it for your future reference and access or (ii) that you were able to email this disclosure to an address where you will be able to print it on paper or save it for your future reference and access. Further, if you consent to receiving Disclosures in electronic format and to execute Your Contract through the DocuSign System on the terms and conditions described above, please let us know by clicking the "I agree" button below.

**By checking the "I agree" box, I confirm that:**

- **I can access and read this electronic CONSENT TO ELECTRONIC RECEIPT OF CONSUMER DISCLOSURES REGARDING YOUR HOME PURCHASE CONTRACT AND ELECTRONIC SIGNATURE OF YOUR HOME PURCHASE CONTRACT; and**
- **I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and**
- **Until or unless I notify the Company as described above, I consent to receive and to execute through electronic means, all Disclosures and all Your Contract documents.**