EXHIBIT H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| Michael Vriens and Nicolas Bardsley, *individually, and on behalf of others similarly situated,* | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 2:23-cv-06797-DCN |
| vs. | ) ) ) | |
| Tip-Top Roofing & Construction, LLC; Pacific Contractors, LLC; Builders FirstSource - Southeast Group, LLC; Carolina Custom Carpentry, LLC; Quad K, LLC; JJL Construction, LLC; CAC Carpentry, LLC; Alpha Construction of SC, LLC; Good Luck Incorporated; South Atlantic Framing, Inc.; SRC Construction, LLC; Jalisco Framing, LLC; Mendoza Construction, LLC; VL Contractor, LLC; 84 Lumber Company, LP; Varanda Contracting Group, Inc.; TOMECH, LLC d/b/a Firm Foundation Costal Carolina's; Valim Construction, LLC; Ram Construction SC, LLC; Gold Star Construction, LLC; ProBuild East, LLC; Archer Exteriors, Inc.; Americo Roofing Concepts, Inc.; Contract Exteriors, LLC; Holy City Exteriors, LLC; SR Construction, LLC; Robert Helms Construction, Inc.; Quick Roofing, LLC; Monarch Company, LLC; Accurate Building Company, LLC; Southend Exteriors, Inc.; Above the Sky Roofing, Inc.; ABC Supply Co. Inc.; SRS Distribution, Inc. f/k/a Superior Distribution; Contract Lumber, Inc.; BMC East, LP; US LBM-Professional Builders Supply a/k/a US LBM Holding, LLC a/k/a US LBM, LLC; SEC Holdings, LLC d/b/a Southend Exteriors and Professional Builders Supply, LLC d/b/a Professional Builders Supply Commercial PRSRE-GVL, LLC; and D.R. Horton, Inc., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **ORDER** |
| Defendants. | ) ) | |

1

|  | ) |
| --- | --- |
| D.R. Horton, Inc., | ) |
|  | ) |
| Crossclaim Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| Tip-Top Roofing & Construction, LLC; Pacific | ) |
| Contractors, LLC; Builders FirstSource - | ) |
| Southeast Group, LLC; Carolina Custom | ) |
| Carpentry, LLC; Quad K, LLC; | ) |
| JJL Construction, LLC; CAC Carpentry, LLC; | ) |
| Alpha Construction of SC, LLC; Good Luck | ) |
| Incorporated; South Atlantic Framing, Inc.; | ) |
| SRC Construction, LLC; Jalisco Framing, LLC; | ) |
| Mendoza Construction, LLC; VL Contractor, | ) |
| LLC; 84 Lumber Company, LP; Varanda | ) |
| Contracting Group, Inc.; TOMECH, LLC d/b/a | ) |
| Firm Foundation Costal Carolina's; Valim | ) |
| Construction, LLC; Ram Construction SC, | ) |
| LLC; Gold Star Construction, LLC; ProBuild | ) |
| East, LLC; Archer Exteriors, Inc.; Americo | ) |
| Roofing Concepts, Inc.; Contract Exteriors, | ) |
| LLC; Holy City Exteriors, LLC; SR | ) |
| Construction, LLC; Robert Helms | ) |
| Construction, Inc.; Quick Roofing, LLC; | ) |
| Monarch Company, LLC; Accurate Building | ) |
| Company, LLC; Southend Exteriors, Inc.; | ) |
| Above the Sky Roofing, Inc.; ABC Supply Co. | ) |
| Inc.; SRS Distribution, Inc. f/k/a Superior | ) |
| Distribution; Contract Lumber, Inc.; BMC | ) |
| East, LP; and US LBM-Professional Builders | ) |
| Supply a/k/a US LBM Holding, LLC a/k/a US | ) |
| LBM, LLC, | ) |
|  | ) |
| Crossclaim Defendants. | ) |

This matter is before the court on defendant D.R. Horton, Inc.'s ("D.R. Horton") amended motion to compel arbitration and to stay proceedings. ECF No. 215. For the reasons set forth below, the court grants D.R. Horton's motion to compel arbitration and to stay proceedings.

## I.  BACKGROUND

On July 11, 2022, Michael Vriens ("Vriens") entered into a contract (the "Homeowner Contract") with D.R. Horton for the construction and purchase of a home within Moore's Landing, located at 1261 Ames Way, Mount Pleasant, South Carolina 29466 (the "Home").  ECF No. 1-1, Am. Compl. ¶¶ 1–2.  D.R. Horton, a homebuilder company operating in Coastal South Carolina, built the Home.[1]  Id. ¶¶ 3–4.  Tip-Top Roofing & Construction, LLC ("Tip-Top") and Pacific Contractors, LLC ("Pacific") supplied materials, provided labor, and/or installed roofing components (hereinafter collectively "Roofing") on Vriens' home, acting on D.R. Horton's behalf.  Id. ¶ 13. Additional contractors include: Builders FirstSource – Southeast Group, LLC; Carolina Custom Carpentry, LLC; Quad K, LLC; JJL Construction, LLC; CAC Carpentry, LLC; Alpha Construction of SC, LLC; Good Luck Incorporated; South Atlantic Framing, Inc.; SRC Construction, LLC; Jalisco Framing, LLC; Mendoza Construction, LLC; VL Contractor, LLC; 84 Lumber Company, LP; Varanda Contracting Group, Inc.; TOMECH, LLC d/b/a Firm Foundation Costal Carolina's; Valim Construction, LLC; Ram Construction SC, LLC; Gold Star Construction, LLC; ProBuild East, LLC; Archer Exteriors, Inc.; Americo Roofing Concepts, Inc.; Contract Exteriors, LLC; Holy City Exteriors, LLC; SR Construction, LLC; Robert Helms Construction, Inc.; Quick Roofing,

---

[1] "Coastal South Carolina" is the portion of the following counties that are in a 140 mph or greater wind zone under the International Residential (Building) Code, 2015, 2018, and 2021 editions, as adopted in South Carolina: Beaufort, Colleton, Charleston, Dorchester, Berkeley, Georgetown, and Horry.  Am. Compl. ¶ 9.

LLC; Monarch Company, LLC; Accurate Building Company, LLC; Southend Exteriors, Inc.; Above the Sky Roofing, Inc.; ABC Supply Co., Inc.; SRS Distribution, Inc. f/k/a Superior Distribution; Contract Lumber, Inc.; BMC East, LP, US LBM-Professional Builders Supply a/k/a US LBM Holding, LLC a/k/a US LBM, LLC, SEC Holdings, LLC d/b/a Southend Exteriors and Professional Builders Supply, LLC d/b/a Professional Builders Supply Commercial PRSRE-GVL, LLC (collectively, the "Subcontractors"). ECF No. 215 at 4.  The Subcontractors each entered into an independent contractor agreement ("ICA") with D.R. Horton to provide certain labor and/or materials.  ECF No. 215 at 4.  Vriens alleges that D.R. Horton and the Subcontractors deficiently constructed Homes in violation of building codes and industry standards.  Am. Compl. ¶¶ 20, 36, 65, 72.

D.R. Horton argues that the Homeowner Contracts and the ICAs generally provide that all disputes shall be subject to alternative dispute resolution, including mediation and arbitration.  ECF No. 215 at 4.  D.R. Horton maintains that all Homes sold to original purchasers (or "upstream purchasers") include the arbitration clauses.  Id. at 3. D.R. Horton argues that such arbitration clauses also compel subsequent purchasers (or "downstream purchasers") to arbitrate.  Id.  Nicholas Bardsley ("Bardsley") is a purported downstream purchaser of a home built by D.R. Horton.  Id.  Vriens and Bardsley, individually, and on behalf of others similarly situated, are the "Plaintiffs."  Id.

Additionally, D.R. Horton has filed crossclaims, asserting claims against the Subcontractors under the ICAs related to the alleged defective work or materials during the construction of the Homes.  Id. at 4.

The full arbitration provision in the Homeowner Contract provides:

**15. MANDATORY BINDING ARBITRATION**.  PURCHASER AND SELLER SHALL SUBMIT TO BINDING ARBITRATION ANY AND ALL DISPUTES WHICH MAY ARISE BETWEEN THEM REGARDING THIS AGREEMENT AND/OR THE PROPERTY, INCLUDING BUT NOT LIMITED TO ANY DISPUTES REGARDING: (A) SELLER'S CONSTRUCTION AND DELIVERY OF THE HOME; (B) SELLER'S PERFORMANCE UNDER ANY PUNCH LIST OR INSPECTION AGREEMENT; AND (C) THE LIMITED WARRANTY PURSUANT TO SECTION 14 ABOVE. THE ARBITRATION SHALL TAKE PLACE IN THE COUNTY IN WHICH THE PROPERTY IS LOCATED. THE PROCEEDING SHALL BE CONDUCTED PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION, AND TO THE EXTENT POSSIBLE, UNDER RULES WHICH PROVIDE FOR AN EXPEDITED HEARING. THE FILING FEE FOR THE ARBITRATION SHALL BE PAID BY THE PARTY FILING THE ARBITRATION DEMAND, BUT THE ARBITRATOR SHALL HAVE THE RIGHT TO ASSESS OR ALLOCATE THE FILING FEES AND ANY OTHER COSTS OF THE ARBITRATION AS A PART OF THE ARBITRATOR'S FINAL ORDER. THE ARBITRATION SHALL BE BINDING AND FINAL, AND EITHER PARTY SHALL HAVE THE RIGHT TO SEEK JUDICIAL ENFORCEMENT OF THE ARBITRATION AWARD. NOTWITHSTANDING ANY OTHER PROVISION HEREIN, ANY DISPUTES ARISING UNDER THE LIMITED WARRANTY SHALL BE MEDIATED, ARBITRATED AND/OR JUDICIALLY RESOLVED PURSUANT TO THE TERMS, CONDITIONS, PROCEDURES AND RULES OF THAT WARRANTY PROGRAM. NOTWITHSTANDING THE FOREGOING, SELLER SHALL HAVE THE RIGHT TO INTERPLEAD ALL OR ANY PART OF THE EARNEST MONEY INTO A COURT OF COMPETENT JURISDICTION AS PROVIDED FOR IN SECTION 4 HEREIN. NOTWITHSTANDING THE FOREGOING, THE ARBITRATION PROVISIONS OF THIS SUBSECTION (B) SHALL NOT APPLY IN THE EVENT THAT THE DISPUTE RELATES TO A DEFAULT BY THE SELLER UNDER SECTION 16(F) OF THIS AGREEMENT.

ECF No. 215-2 ¶ 15.

Likewise, the ICAs contains an arbitration provision that applies to the

Subcontractors, stating:

**13.1 DISPUTES**.  ALL DISPUTES, WHETHER EXISTING NOW OR ARISING IN THE FUTURE BETWEEN THEM, RELATED IN ANY WAY TO THIS AGREEMENT, TO CONTRACTOR'S WORK, OR TO

ANY DISPUTE THAT OWNER OR CONTRACTOR SHALL HAVE WITH ANY THIRD PARTY RELATED TO THE WORK ("DISPUTES") SHALL BE SUBJECT TO ALTERNATIVE DISPUTE RESOLUTION. THESE DISPUTES SHALL INCLUDE CLAIMS RELATED TO THE CONSTRUCTION OR SALE OF ANY HOME OR PROPERTY INCORPORATING THE WORK, INCLUDING ANY CLAIMS ASSERTING ANY ALLEGED DEFECTS IN THE WORK OR ANY ALLEGED REPRESENTATIONS AND/OR WARRANTIES, EXPRESS OR IMPLIED, RELATING TO THE PROPERTY AND/OR THE IMPROVEMENTS.

**13.3 ARBITRATION**. IF THE PARTIES ARE UNABLE TO RESOLVE ANY DISPUTE BY AGREEMENT, REGARDLESS OF ANY OTHER CHOICE OF LAW PROVISION IN ANY UNDERLYING CONTRACT OR THIS AGREEMENT, THE DISPUTE SHALL BE SUBMITTED TO BINDING ARBITRATION UNDER THE FEDERAL ARBITRATION ACT, 9 U.S.C. § 1 ET SEQ. ("FAA"). ALL DEMANDS FOR ARBITRATION SHALL BE MADE BEFORE THE EXPIRATION OF THE APPLICABLE STATUTE OF LIMITATIONS OR REPOSE, EXCEPT THAT ANY CLAIM BY OWNER SHALL NOT ACCRUE FOR PURPOSES OF ANY TIME LIMITATION FOR CLAIMS UNTIL OWNER HAS DISCOVERED THE CLAIM, OR COULD HAVE DISCOVERED IT BY REASONABLE DILIGENCE. THE AWARD RENDERED BY THE ARBITRATOR(S) SHALL BE FINAL AND BINDING. A PETITION TO CONFIRM, VACATE, MODIFY OR CORRECT AN AWARD MAY BE FILED IN ANY COURT OF COMPETENT JURISDICTION, BUT THE AWARD MAY BE VACATED, MODIFIED OR CORRECTED ONLY AS PERMITTED BY THE FAA.

ECF No. 215-3 at 61.

On November 15, 2023, Vriens, on behalf of himself and the Homeowner Plaintiff Class[2] filed an Amended Summons and Complaint against D.R. Horton and other defendants in the Court of Common Pleas in Charleston County, South Carolina, Case No. 2023-CP-10-05346, (Nov. 15, 2023) (the "State Court Action"), alleging causes

---

[2] The proposed Plaintiff Class is defined as "[a]ll persons and entities that are owners of residences built by D.R. Horton in Coastal South Carolina which were permitted for construction on or after July 1, 2016." Am. Compl. at ¶ 10.

of action for negligence and gross negligence and breach of implied warranties.  See

generally, Am. Compl.  On December 19, 2023, this case was removed to this court

under the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. §§ 1332(d)

and 1453.  ECF No. 1.

On December 22, 2023, D.R. Horton filed its initial motion to compel arbitration.

ECF No. 5.  On January 5, 2024, Vriens filed his response in opposition to the motion to

compel arbitration.  ECF No. 10.  On December 18, 2024, D.R. Horton filed its amended

motion to compel arbitration and to stay proceedings.  ECF No. 215.  Vriens filed his

response in opposition to the amended motion on December 23, 2024.  ECF No. 226.  On

January 13, 2025, D.R. Horton filed its reply.  ECF No. 271.  Then, on April 23, 2025,

Vriens filed a supplement to his response in opposition to the motion to compel.  ECF

No. 542.  On May 7, 2025, D.R. Horton filed its reply to Vriens' supplement.  ECF No.

644.  A hearing was held before this court on June 23, 2025.  ECF No. 803.  As such, this

motion is fully briefed and ready for the court's review.

## II.  STANDARD

Courts recognize that the Federal Arbitration Act ("FAA") creates a strong

presumption in favor of arbitration.  See 9 U.S.C. §§ 1–14.  As the Supreme Court has

explained, "[t]he preeminent concern of Congress in passing the [FAA] was to enforce

private agreements into which parties had entered, and that concern requires that we

rigorously enforce agreements to arbitrate."  Dean Witter Reynolds, Inc. v. Byrd, 470

U.S. 213, 221 (1985).  Arbitration "is a matter of consent, not coercion."  E.E.O.C. v.

Waffle House, Inc., 534 U.S. 279, 294 (2002); see also Arrants v. Buck, 130 F.3d 636,

640 (4th Cir. 1997) ("Even though arbitration has a favored place, there still must be an

underlying agreement between the parties to arbitrate."). Thus, arbitration "is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010) (internal quotation marks and citations omitted).

The Fourth Circuit has stated that:

> Application of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

Galloway v. Santander Consumer USA, Inc., 819 F.3d 79, 84 (4th Cir. 2016) (quoting Rota-McLarty v. Santander Consumer USA, Inc., 700 F.3d 690, 696 n.6 (4th Cir. 2012)). Although courts must compel arbitration when a party satisfies these four factors, the standard of review and procedural mechanisms to be applied in resolving these four factors are less clear. Gibbs v. Stinson, 421 F. Supp. 3d 267, 299 (E.D. Va. 2019), aff'd sub nom. Gibbs v. Sequoia Cap. Operations, LLC, 966 F.3d 286 (4th Cir. 2020). "Recently, a number of district courts in the Fourth Circuit have determined the burden of proof is 'akin to the burden on summary judgment' because motions to compel arbitration 'often require courts to consider' evidence outside of the pleadings."[3] Gibbs,

---

[3] Alternatively, courts evaluate a motion to compel arbitration under the standards espoused by § 4 of the FAA, which states in relevant part, that the district court will compel arbitration "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue." 9 U.S.C. § 4. Under this standard, there must be "a judicial conclusion" that there is a validly formed, express agreement to arbitrate. Granite Rock Co., 561 U.S. at 303. As another court in this circuit has noted, "[i]t is unclear what daylight exists, if any, between the two approaches. Both require the party seeking arbitration to offer evidence to satisfy the court that an arbitration agreement actually exists, and both allow the non-moving party to rebut that evidence." Gibbs, 421 F. Supp. 3d at 299 n.51.

421 F. Supp. 3d at 299. (quoting Novic v. Midland Funding, LLC, 271 F. Supp. 3d 778, 782 (D. Md. 2017), rev'd on other grounds sub nom. Novic v. Credit One Bank, Nat'l Ass'n, 757 F. App'x 263 (4th Cir. 2019)); see also Galloway, 819 F.3d at 85 n.3. As such, the party asserting an arbitration agreement has the burden to show the making of the agreement. In re. Mercury Constr. Corp., 656 F.2d 933, 939 (4th Cir. 1981) (en banc), aff'd sub nom, Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1 (1983). Whether an arbitration agreement has been formed is an issue of state contract law. Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., 913 F.3d 409, 415 (4th Cir. 2019).

### III.  DISCUSSION

D.R. Horton argues that this case is subject to mandatory arbitration based on the arbitration provisions in both the Homeowner Contract and the ICAs. ECF Nos. 6 at 2–4; 215 at 12. Plaintiffs argue that the arbitration provisions in the Homeowner Contract and ICAs are unenforceable, and that if they were, that the Homeowner Contracts are subject to the South Carolina Uniform Arbitration Act, S.C. Code Ann. § 15-48-10 et seq. ("SCUAA") and not the FAA. ECF No. 42-1 at 1–2. At the hearing, D.R. Horton and the Subcontractors agreed to arbitration. ECF No. 803. As such, the court grants D.R. Horton's motion to compel arbitration with the Subcontractors.

To determine whether the Homeowner Contract is subject to arbitration, the court will first consider whether the FAA governs. Then, the court will analyze whether any contract defenses raised by Plaintiffs render the arbitration provision in the Homeowner Contract unenforceable. Finally, the court will determine whether the arbitration provision was extinguished pursuant to the merger doctrine.

9

### A.    The FAA Governs the Homeowner Contracts

Four factors determine whether an arbitration provision is governed by the FAA:

(1) a dispute between the parties;

(2) a written agreement that includes an arbitration provision purporting to cover that dispute;

(3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and

(4) the failure, neglect or refusal of the opposing party to arbitrate the dispute. Galloway, 819 F.3d at 84.  The court takes each factor in turn.

#### 1.    Dispute Between the Parties

First, there is clearly a dispute between the parties.  Plaintiffs entered into the Homeowner Contracts with D.R. Horton.  ECF No. 215-2.  Plaintiffs now, in connection to the construction of the Homes, allege causes of action for negligence and gross negligence and breach of implied warranties.  See generally, Am. Compl.

#### 2.    Written Agreement that Includes an Arbitration Provision

Second, the court must determine if there is a written agreement that includes an arbitration provision purporting to cover the dispute.  See Galloway, 819 F.3d at 84. "The policy of South Carolina, as well as of the United States, is to favor arbitration of disputes; therefore, there is a strong presumption in favor of the validity of arbitration agreements." Jenkins v. CitiFinancial, Inc., WL 9753133, at *4 (D.S.C. Jan. 16, 2007) (citing O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273 (4th Cir. 1997)).

The Homeowner Contract provision concerning arbitration states that it covers "any and all disputes which may arise [] regarding this agreement and/or the property." ECF No. 215-2 ¶ 15.  The provision specifies that it covers "disputes regarding: (A)

10

seller's construction and delivery of the home." Id. Further, the provision is initialed separately by the purchaser. Id. As such, the court finds that the Homeowner Contract is a written agreement that includes an arbitration provision purporting to cover the dispute, as this is a dispute regarding the construction of the Home, and thus meets the second element of the FAA.

### 3.    Relationship of the Transaction to Interstate Commerce

Third, the court must determine whether the relationship of the transaction, which is evidenced by the agreement, relates to interstate or foreign commerce. See Galloway, 819 F.3d at 84.

The FAA provides, in relevant part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

"The United States Supreme Court has held that the phrase 'involving commerce' is the same as 'affecting commerce,' which has been broadly interpreted to mean that Congress intended to utilize its powers to regulate interstate commerce to its full extent." Blanton v. Stathos, 570 S.E.2d 565, 568 (S.C. Ct. App. 2002) (citing Allied-Bruce Terminix Cos., v. Dobson, 513 U.S. 265 (1995)). To ascertain whether a transaction involves commerce within the meaning of the FAA, the court must examine the agreement, the complaint, and the surrounding facts." Zabinski v. Bright Acres Assocs., 553 S.E.2d 110, 117 (S.C. 2001).

11

The South Carolina Supreme Court has held that construction of new homes "manifestly involve[s] interstate commerce, as they involve the construction of new homes built to [an owner's] specifications rather than the purchase of pre-existing homes." Damico v. Lennar Carolinas, 879 S.E.2d 746, 753 (S.C. 2022); Episcopal Hous. Corp. v. Federal Ins. Co., 239 S.E.2d 647, 652 (S.C. 1977) (observing that new construction implicates interstate commerce because "[i]t would be virtually impossible to construct" the building "with materials, equipment and supplies all produced and manufactured solely within the State of South Carolina").

Plaintiffs argue that "because the essential character of the [Homeowner Contract] was strictly for the purchase of a completed residential dwelling and not the construction" that this dispute is one of an intrastate nature. ECF No. 226-1 at 6 (quoting Bradley v. Brentwood Homes, Inc., 730 S.E.2d 312, 318 (S.C. 2012)). D.R. Horton argues this dispute is one of interstate nature, as the Homeowner Contract was for the construction and sale of a new custom-built home. ECF No. 215 at 12. The court will determine whether the Homeowner Contract is an agreement relating to interstate commerce.

D.R. Horton argues that the Homeowner Contracts clearly cover both the construction and the sale of the Homes. ECF No. 215-1 at 10. It cites to Addendum 8 "Variations in Materials and Components," which contains a list of materials to be used to construct the Home, many of which involve interstate commerce. ECF No. 215-2 at 24. Here, D.R. Horton sourced materials and work from out-of-state manufacturers— Whirlpool Appliances (Michigan), CertainTeed Roof Shingles (Pennsylvania), and Carrier HVAC Equipment (Florida). Furthermore, 84 Lumber (Pennsylvania) supplied

and installed windows and Safe Haven (Missouri) installed security systems.  ECF No. 215 at 10.

The court agrees with D.R. Horton that the transaction at issue here was for the construction and sale of the home, affects interstate commerce, and as such falls within the FAA.  First, the Homeowner Contracts specifies that it covers "disputes regarding: (A) seller's construction and delivery of the home."  ECF No. 215-2 ¶ 15.  Next, due to the materials and work sourced from out-of-state entities, interstate commerce is clearly involved in the construction of the new Homes.  See Episcopal Hous. Corp.,  239 S.E.2d at 652; see also Bernstein v. Pulte Home Co., 2019 WL 8014404, at *1 (D.S.C. Dec. 23, 2019) (granting a motion to compel arbitration and stay proceedings where the agreement involved the construction of new homes, which would involve interstate commerce, and therefore was subject to the FAA) (citing Am. Gen. Life & Accident Ins. Co. v. Wood, 429 F.3d 83, 87 (4th Cir. 2005)).  Plaintiffs have not provided evidence that the materials, equipment, or supplies used to construct the Homes were exclusively sourced from within South Carolina.  Thus, the court finds that the transaction for the construction and sale of the Home is evidenced by the Homeowner Contract and relates to interstate commerce, thus meeting the third factor of the FAA analysis.  See Galloway, 819 F.3d at 84.

### 4.    Refusal of the Opposing Party to Arbitrate

Fourth, the court must find there is a failure, neglect, or refusal of the opposing party to arbitrate the dispute.  Galloway, 819 F.3d at 84.  The court finds that this element is clearly met by virtue of the pending matter as Plaintiffs not only contest whether the

FAA applies, but they contest that arbitration provision should be enforced at all.   ECF No. 42-1 at 1–2.

Because the four elements of the FAA are satisfied, the court finds that arbitration provision of the Homeowner Contract requires arbitration to be compelled in this matter. The court turns to whether the contract defenses raised by Plaintiffs render the arbitration provision unenforceable

**B.      No Contract Defenses Render the Provision Unenforceable**

Plaintiffs argue that the arbitration provision in the Homeowner Contract is not enforceable, raising the defenses of unconscionability and unenforceability as a matter of law and public policy.  ECF No. 542 at 2.  In contrast, D.R. Horton argues that the arbitration clause in the Homeowner Contract is enforceable because there are no general contract defenses that would invalidate the agreement to arbitrate.  ECF No. 215 at 17.

After determining that the FAA applies, "courts must apply state law to decide issues of contract formation" when a party challenges the enforceability of the arbitration agreement.  LaPoint v. John Wieland Homes & Neighborhoods of the Carolinas, Inc., 2009 WL 10684895, at *4 (D.S.C. Dec 1, 2009).  "The FAA recognizes arbitration agreements 'may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'"  Sanders v. Savannah Highway Auto. Co., 892 S.E.2d 112, 115 (S.C. 2023) (quoting Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68 (2010)).

"[I]t is well established that if a claim calls into question not the fairness of the arbitration process specifically, but rather the validity of the entire contract, the arbitrator must rule on the dispute."  Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 305

(4th Cir. 2001). A party cannot avoid arbitration through rescission of an entire contract when there is no independent challenge to the arbitration clause itself. Carolina Care Plan, Inc. v. United HealthCare Servs., 606 S.E.2d 752, 755 (S.C. 2008).

### 1. The Arbitration Provision is Not Unconscionable

Plaintiffs argue that the arbitration provision is unconscionable. ECF No. 226-1 at 17. First, they assert that it is is incomplete in scope if considered without the warranties provision. Id. Second, they argue that the arbitration provision is unconscionable because the purchase agreement is an adhesion contract with oppressive terms. Id. Third, they argue that the severance of the oppressive terms would violate South Carolina's public policy. Id.

"In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them, and no fair and honest person would accept them." Smith v. D.R. Horton, Inc., 790 S.E.2d 1, 4 (S.C. 2016) (quoting Simpson v. MSA of Myrtle Beach, Inc., 644 S.E.2d 663, 668 (S.C. 2007)). Inequity of bargaining power is not "on its own, sufficient basis to invalidate an arbitration agreement." LaPoint, 2009 WL 10684895 at *11 (citing Munoz v. Green Tree Fin. Corp., 542 S.E.2d 360, 365 n.5 (S.C. 2001)). "In conducting an unconscionability inquiry, courts may only consider the provisions of the arbitration agreement itself, and not those of the whole contract." Smith, 790 S.E.2d at 4. "Ambiguities in the scope of the arbitration clause must be resolved in favor of arbitration." Volt Info. Scis. Inc. v. Bd. Of Tr. of Leland Stanford Jr. Univ, 489 U.S. 469 (1989).

15

Plaintiffs specifically argue that "[u]nconscionability must be evaluated under two prongs: (1) lack of meaningful choice; and (2) oppressive terms."  ECF No. 226-1 at 17 (quoting Simpson v. MSA of Myrtle Beach Inc., 644 S.E.2d 663, at 668–69 (S.C. 2007). They analogize their situation to that of the plaintiffs in Smith v. D.R. Horton, Inc., 790 S.E.2d 1 at 4–5 (S.C. 2016).  Id.  They point to the court's finding in Smith that the arbitration provision at issue in that case was "intertwin[ed]" with the "clearly one-sided and oppressive" terms purporting to "disclaim[ ] all other warranties, expressed or implied" and allegedly absolving D.R. Horton of responsibility for "monetary damages of any kind."  Id.  Plaintiffs argue they had no meaningful choice in accepting the arbitration provision, as it was embedded in a purchase and sale agreement that was offered on a take it or leave it basis by D.R. Horton.  ECF No. 226-1 at 19.

The Warranties Provision in the Homeowner Contract provides:

**14. WARRANTIES AND DISCLAIMER.**

a. **Ten-Year Limited Warranty**.  Seller shall provide Buyer with a written, ten-year limited warranty on the House administered by Residential Warranty Corporation ("RWC") which shall be effective as of the Closing Date.  The terms and conditions of, and exclusions from, the ten-year limited warranty shall be as set forth in that document published by RWC, entitled "LIMITED WARRANTY, 10 YEAR LIMITED WARRANTY FOR NEW HOMES," and referred to herein as the "Limited Warranty".  At Closing, Seller shall deliver to Buyer the actual limited warranty for the House, to be validated by RWC after Closing.

b. **Manufacturers' Warranties**.  At Closing, Seller shall assign to Purchaser all warranties, expressed or implied, which are given by the manufacturer of any appliance or product installed in the House.

c. **Disclaimer and Limitation on Seller's Liability.** THE LIMITED WARRANTY GIVEN TO PURCHASER BY SELLER PURSUANT TO SUBECTION 14a ABOVE IS TO THE EXCLUSION OF ALL OTHER WARRANTIES, EXPRESSED OR IMPLIED, AND SELLER HEREBY DISCLAIMS ANY AND ALL SUCH OTHER

16

WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ANY WARRANTY OF HABITABILITY, MERCHANTABIITY OR FITNESS FOR A PARTICULAR PURPOSE. IN ADDITION, SELLER MAKES NO REPRESENTATION OR WARRANTY WHATSOEVER REGARDING THE PAST, PRESENT OR FUTURE CONDITION OR USE OF ANY LANDS OR AREAS SURROUNDING THE PROPERTY OR IN THE VICINITY OF THE PROPERTY. AFTER CLOSING, THE SELLER SHALL HAVE NO LIABILITY OR OBLIGATION TO PURCHASER OF ANY NATURE WHATSOEVER EXCEPT AS PROVIDED IN THIS SECTION 14 OF THIS AGREEMENT, IN SECTION 9(d) ABOVE AND IN SELLER'S DEED TO PURCHASER. EXCEPT AS OTHERWISE PROVIDED IN THE LIMITED WARRANTY, SELLER SHALL NOT BE LIABLE FOR ANY REASON, UNDER ANY CIRCUMSTANCES, TO PURCHASER OR ANYONE CLAIMING THROUGH PURCHASER FOR MONETARY DAMAGES OF ANY KIND, INCLUDING SECONDARY, CONSEQUENTIAL, PUNITIVE, GENERAL, SPECIAL, OR INDIRECT DAMAGES.

ECF No. 215-2 ¶ 14.

D.R. Horton argues that the arbitration provision in ¶ 15 of the Homeowner Contract is a standalone provision, and that the warranties and related disclaimers are separately located in ¶ 14. ECF No. 215-1 at 19. D.R. Horton asserts that as a standalone provision, section ¶ 15 should be reviewed as such and is severable from any other language of the Homeowner Contract. Id. D.R. Horton further argues that Plaintiffs had a meaningful choice to enter the Homeowner Contract and were free to purchase a home from another builder, purchase a pre-existing home, or purchase no home at all, and as such they freely chose to assent to D.R. Horton's contractual terms, including arbitration of construction disputes. Id. at 20.

The court finds that the arbitration provision of the Homeowner Contract is not unconscionable because Plaintiffs did not lack a meaningful choice and were not subject to oppressive terms. See Simpson, 644 S.E.2d at 663. Plaintiffs had a meaningful choice

17

to enter into the Homeowner Contract with D.R. Horton, as they were free to purchase a home from another builder, purchase a pre-existing home, or purchase no home at all. See Smith, 790 S.E.2d at 4.  The arbitration provision is binding on both Plaintiffs and D.R. Horton and is not one-sided.  See LaPoint, 2009 WL 10684895 at *11.   There is nothing so oppressive about the terms in the arbitration provision such that no fair and honest person would accept them.  See Smith, 790 S.E.2d at 4.  The arbitration provision: (1) binds both D.R. Horton and Plaintiffs to arbitration for construction defect disputes; (2) provides for arbitration in Plaintiffs' home county; (3) provides for an expedited hearing schedule; and (4) gives the arbitrator complete discretion to assess the filing fees and costs against D.R. Horton.  ECF No. 215-1 at 20.  Further, the arbitration provision in ¶ 15 is a standalone provision, and is separately located from the warranties and related disclaimers in ¶ 14, and they are distinctively separate clauses, as evidenced by the "Initials" sections for the buyer, co-buyer and seller under each paragraph.  ECF No 215-2 at 5.  Further, at the hearing, D.R. Horton clarified it has changed the provisions in its Homeowner Contract since Smith to be separate arbitration provisions and warranty provisions.  ECF No. 803; see Damico, S.E.2d at 754.  Thus, the court finds that Plaintiffs and D.R. Horton engaged in a fair bargaining process, the provision has reasonable and customary terms, and as such, is not unconscionable and should be enforced.

## 2.  The Merger Doctrine Does Not Extinguish the Provision

The merger by deed doctrine provides that "[t]he execution, delivery, and acceptance of a deed varying from the term of an antecedent contract indicates an amendment of the original contract, and generally the rights of the parties are fixed by

their expressions as contained in the deed." Shoney's, Inc. v. Cooke, 353 S.E.2d 300, 303 (S.C. Ct. App. 1987) (quoting Charleston & Western Carolina Ry. Co. v. Joyce, 99 S.E.2d 187, 193 (S.C. 1957)). The intent of the merger doctrine is not to extinguish agreements outside of these areas such as arbitration of future disputes, which everyone knows are bound to arise. Instead, agreements that are not intended to be merged in a deed are not merged into the deed. Hughes v. Greenville Country Club, 322 S.E.2d 827, 828 (S.C. Ct. App. 1984).

Plaintiffs argue the arbitration provision is extinguished under the merger doctrine. ECF No. 42-1 at 1-2. Plaintiffs argue that the arbitration provision in the Homeowner Contract merged out of existence once the deed was executed, as the arbitration clause is not in the deed. ECF No. 226 at 6. Plaintiffs argue that ¶ 15 of the Homeowner Contract, does not contain such "express" language providing that it will survive closing. ECF No. 226-1 at 24. D.R. Horton argues that the merger doctrine does not apply to the arbitration provision, and that even if it did, there are exceptions to its application in this instance. ECF No. 215 at 10, 24.

D.R. Horton argues that numerous courts have observed the merger doctrine applies only to issues of title, possession, quantity, or emblements of the property and therefore does not apply to the arbitration provision at issue in this matter. ECF No. 215-1 at 15. It argues South Carolina courts follow the same logic as to when the merger doctrine applies, and South Carolina courts have applied the merger doctrine in cases involving possession and title. See Epworth Children's Home v. Beasley, 616 S.E.2d 710 (S.C. 2005) (applying the merger doctrine in a case involving a trust and possession);

19

Hughes, 322 S.E.2d at 827 (applying the merger doctrine in a case involving possession and use conditions).

D.R. Horton further argues that the Homeowner Contracts contain a number of provisions that evidence the parties' intent not to merge the terms of the Homeowner Contracts with the deed. Id. at 16. It argues that a merger would mean that D.R. Horton's obligation to provide the Plaintiffs a ten-year warranty would also be merged out of existence, which the parties could not have intended. Id. It argues that, accordingly, the terms of the agreement clearly indicate that the parties did not intend for the arbitration provision to be superseded by the deed. Id.

The court finds the merger doctrine does not apply to the Homeowner Contract. Analyzing the intent of the parties, the court finds the language of the arbitration provision in ¶ 15 evidence it was not intended to merge, as it specifically references "any and all disputes which may arise." See Hughes, 322 S.E.2d at 828. Beyond that, the Homeowner Contracts contain a number of provisions that evidence the parties' intent not to merge the terms of the Homeowner Contracts with the deed, such as the warranties provision or post-closing remedies provision. See Carlson v. S.C. State Plastering, LLC, 743 S.E.2d 868, 872–75 (S.C. Ct. App. 2013) (concluding that the arbitration provision was not waived, was not unconscionable, did not merge with deed, and the claims fell within the scope of said provision) As such, the merger doctrine does not preclude enforcement of the arbitration provision.

In sum, finding that the FAA governs the Homeowner Contracts and no contract defenses preclude enforcement, the court finds that the arbitration provision is enforceable.

## IV.   CONCLUSION

For the foregoing reasons the court **GRANTS** D.R. Horton's motion to compel arbitration and stay proceedings as to the "upstream purchasers."  Further, the court **GRANTS** arbitration as to D.R. Horton's crossclaim to compel arbitration with the Subcontractors.  The court **ORDERS** D.R. Horton and plaintiffs to brief whether the "downstream purchasers" are also bound to arbitration and whether Plaintiffs may proceed as a Class in arbitration.

**AND IT IS SO ORDERED.**

David C. Norton
United States District Judge

September 4, 2025
Charleston, South Carolina

21