EXHIBIT J

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF HORRY | IN THE COURT OF COMMON PLEAS |
| Sam Charles Prest, III and Kristina Sarah Prest,<br><br>　　　　　　Plaintiffs,<br>vs.<br><br>D.R. Horton, Inc.,<br>　　　　　　Defendant. | 2025-CP-26-00484<br><br><br><br><br>**ORDER** |
| D.R. Horton, Inc.,<br><br>　　　　　　Third-Party Plaintiff,<br>vs.<br><br>84 Lumber Company LP; RJM Plumbing, Inc.; Dean Custom Air, LLC; Quality Electric of the Coastal Carolinas, LLC; and US LBM, LLC d/b/a Southend Exteriors;<br><br>　　　　　　Third-Party Defendants. | |

On August 20, 2025, this matter came before the court on Defendant D.R. Horton, Inc.'s ("D.R. Horton" or "Defendant") Motion to Stay Action and Compel Arbitration (the "Motion"). Considering the arguments made at the hearing and the memorandum submitted by the parties, the Motion is GRANTED.

## FACTUAL BACKGROUND

On May 25, 2022, Plaintiffs Sam Charles Prest, III and Kristina Prest ("Plaintiff") entered into a contract with D.R. Horton (the "Homeowner Contract") for the purchase of a home located at 859 Flowering Branch Avenue, Little River, South Carolina (the "Home"). The Homeowner Contract contains an arbitration provision. The entirety of the arbitration provision provides as follows:

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

> **Mandatory binding arbitration.** Purchaser and seller shall submit to binding arbitration any and all disputes which may arise between them regarding this agreement and/or the property, including but not limited to any disputes regarding: (a) seller's construction and delivery of the home; (b) seller's performance under any punch list or inspection agreement; and (c) the limited warranty pursuant to section 14 above.
>
> The arbitration shall take place in the county in which the property is located.
>
> The proceeding shall be conducted pursuant to the rules of the American Arbitration Association, and to the extent possible, under rules which provide for an expedited hearing.
>
> The filing fee for the arbitration shall be paid by the party filing the arbitration demand, but the arbitrator shall have the right to assess or allocate the filing fees and any other costs of the arbitration as a part of the arbitrator's final order.
>
> The arbitration shall be binding and final, and either party shall have the right to seek judicial enforcement of the arbitration award.
>
> Notwithstanding any other provision herein, any disputes arising under the limited warranty shall be mediated, arbitrated and/or judicially resolved pursuant to the terms, conditions, procedures and rules of that warranty program.
>
> Notwithstanding the foregoing, seller shall have the right to interplead all or any part of the earnest money into a court of competent jurisdiction as provided for in section 4 herein. Notwithstanding the foregoing, the arbitration provisions of this subsection (b) shall not apply in the event that the dispute relates to a default by the seller under section 16(f) of this agreement

D.R. Horton's Memorandum in Support, Ex. A ("Ex. A.") ¶ 15 (formatting altered).

Plaintiff filed this lawsuit complaining of defects in the construction of the Home and the damages related to same. Plaintiff alleges certain components, including but not limited to the i-joists, were not constructed in accordance with the building codes and applicable construction and safety standards. Compl. ¶ 8. P

Separately, D.R. Horton contracted with Third-Party Defendants 84 Lumber Company LP; RJM Plumbing, Inc.; Dean Custom Air, LLC; Quality Electric of the Coastal Carolinas, LLC; and US LBM, LLC d/b/a Southend Exteriors (collectively, "Subcontractors") to perform various work

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

on the Home. D.R. Horton has filed a third-party complaint against Subcontractors related to their work. D.R. Horton entered into Independent Contractor Agreements ("ICAs") with Subcontractors. The ICA arbitration provisions are substantially the same and are as follows:

> 13.1 Disputes. All disputes, whether existing now or arising in the future between them, related in any way to this Agreement, to Contractor's Work, or to any dispute that Owner or Contractor shall have with any third party related to the Work ("Disputes") shall be subject to Alternative Dispute Resolution. These disputes shall include claims related to the construction or sale of any home or property incorporating the Work, including any claims asserting any alleged defects in the Work or any alleged representations and/or warranties, express or implied, relating to the property and/or the improvements…

> 13.3 Arbitration. If the parties are unable to resolve any Dispute by agreement, regardless of any other choice of law provision in any underlying contract or this Agreement, the Dispute shall be submitted to binding arbitration under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"). IN MAKING THIS AGREEMENT, THE PARTIES ARE WAIVING THEIR RIGHTS TO FILE A LAWSUIT, TO HAVE A JURY RESOLVE ANY DISPUTE BETWEEN THEM, AND TO APPEAL THE DECISION OF THE ARBITRATIOR TO A COURT OF LAW. All demands for arbitration shall be made before the expiration of the applicable statute of limitations or repose, except that any claim by Owner shall not accrue for purposes of any time limitation for claims until Owner has discovered the claim, or could have discovered it by reasonable diligence. The award rendered by the arbitrator(s) shall be final and binding. A petition to confirm, vacate, modify or correct an award may be filed in any court of competent jurisdiction, but the award may be vacated, modified or corrected only as permitted by the FAA.

> D.R. Horton's Memorandum in Support, Ex. B ("Ex. B.")

On August 20, 2025, D.R. Horton's Motion was heard. No Subcontractors objected to the Motion.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that legal proceedings must be stayed when any such issues in the suit are "referrable to arbitration under an agreement in writing." 9 U.S.C. § 3. "The FAA requires courts to stay a proceeding, pending arbitration, if the court determines that a valid arbitration agreement exists, and that the claims alleged fall within the scope of the

arbitration agreement." *LaPoint v. John Wieland Homes & Neighborhoods of the Carolinas, Inc.,* C/A No. 0:08-3553-CMC, 2009 U.S. Dist. LEXIS 146577, at *4, 2009 WL 10684895 (D.S.C. Dec. 1, 2009) (citing *United States v. Bankers Ins. Co.,* 245 F.3d 315, 319 (4th Cir. 2001); *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). "Once these criteria are met, the district court has 'no choice but to grant a motion to compel arbitration.'" *Id.* (quoting *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002)).

Because of the well-established federal policy favoring arbitration of disputes, courts must assess the validity and scope of an arbitration agreement with a heavy presumption in favor of arbitration. *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 542 S.E.2d 360 (2001). "Accordingly, any doubts concerning the scope of arbitrable issues are resolved in favor of arbitration." *Bernstein v. Pulte Home Co.,* C/A No. 0:19-cv-02805-JFA, 2019 WL 8014404, at *6 (D.S.C. Dec. 23, 2019) (citing *Hill v. PeopleSoft USA, Inc.,* 412 F.3d 540, 543 (4th Cir. 2005)).

When analyzing arbitrability, the "court must first determine whether the parties' agreement is governed by the FAA." *Id.* "A party can compel arbitration under the FAA by establishing (1) a dispute between the parties; (2) a written agreement that includes an arbitration provision purporting to cover that dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the opposing party to arbitrate the dispute." *Id.*

After determining that the FAA applies, "courts must apply state law to decide issues of contract formation" when a party challenges the enforceability of the arbitration agreement. *LaPoint*, 2009 U.S. Dist. LEXIS 146577, at *10. "The FAA recognizes arbitration agreements 'may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Sanders v. Savannah Highway Auto. Co.,* 2023 S.C. LEXIS 154, 892 S.E.2d

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

112, 115 (S.C. 2023) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). However, the FAA "preempt[s] any state law that completely invalidates the parties' agreement to arbitrate." *Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 592, 553 S.E.2d 110, 116 (2001).

Moreover, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id.* at 596, 553 S.E.2d at 118. A court may consider challenges to the arbitration clause itself, but any challenge to the contract as a whole should be resolved only by an arbitrator. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) ("[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance.").

## **DISCUSSION**

D.R. Horton argues that this case is subject to arbitration based on the arbitration provisions in both the Homeowner Contract and the ICAs. Plaintiffs argue that the arbitration provision in the Homeowner Contract is unenforceable.

To determine whether the Homeowner Contract is subject to arbitration, the court will first consider whether the FAA governs. Then, the court will analyze whether any contract defenses raised by Plaintiffs render the arbitration provision in the homeowner Contract unenforceable. Finally, the court will determine whether the arbitration provision was extinguished pursuant to the merger doctrine.

### I.     The Homeowner Contract and ICAs are Governed by the FAA.

Four factors determine whether an arbitration provision is governed by the FAA:

(1) a dispute between the parties;
(2) a written agreement that includes an arbitration provision purporting to cover that dispute;
(3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and
(4) the failure, neglect or refusal of the opposing party to arbitrate the dispute.

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

*Bernstein*, 2019 WL 8014404, at \*6 (citing *Wood*, 429 F.3d at 87).

### A. Dispute Between the Parties

First, there is clearly a dispute between the parties. Plaintiff entered into the Homeowner Contract for the construction and sale of the Home. Ex. A. Plaintiff now complains of defects in the construction of the Home and related issues. *See generally*, Compl.

Subcontractors entered into the ICAs with D.R. Horton. Now, a dispute has arisen between Subcontractors and D.R. Horton related to the work performed by Subcontractors.

### B. Written Agreement Including Arbitration Provision

Second, the court must determine if there is a written agreement that includes an arbitration provision purporting to cover the dispute. *See Bernstein*, 2019 WL 8014404, at \*6. The Homeowner Contract covers disputes over alleged construction defects. The Homeowner Contract states that it covers "any and all disputes which may arise . . . regarding this agreement and/or the property." The provision specifically covers "disputes regarding: (A) seller's construction and delivery of the home." *Id.*

The ICAs' arbitration provision states: "all disputes . . . related to this Agreement, to Contractor's Work, or to any dispute that Owner or Contractor shall have with any third party related to the Work . . . ." Ex. B., ¶ 13.1. As such, the court finds that the Homeowner Contract and the ICAs contain written agreements that include arbitration provisions purporting to cover the disputes.

### C. Transactions Involve Interstate Commerce

Third, the court must determine whether transactions involve interstate commerce. The FAA applies to any written agreement to arbitrate in a "contract evidencing a transaction involving

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

commerce." 9 U.S.C. § 2. Courts have interpreted "the words 'involving commerce' [as] the functional equivalent of 'affecting commerce,' which typically indicates Congress' intent to exercise its commerce power in full." *Zabinski*, 346 S.C. at 591, 553 S.E.2d at 115. Congress' authority in this area is incredibly broad, as "case law firmly establishes Congress' power to regulate [even] purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Gonzales v. Raich*, 545 U.S. 1, 17 (2005). Therefore, a dispute is subject to the FAA where there is a written agreement to arbitrate that encompasses it and the transaction at issue relates to or affects foreign or interstate commerce. *See, e.g.*, *Bernstein*, 2019 U.S. Dist. LEXIS 227884, at *6 (describing when a party can compel arbitration under the FAA).

The South Carolina Supreme Court has repeatedly held that an agreement for the construction of a new home built to a party's specifications "manifestly involve[s] interstate commerce." *Damico v. Lennar Carolinas, LLC*, 437 S.C. 596, 608, 879 S.E.2d 746, 753 (2022). A party could not construct a new home "with materials, equipment and supplies all produced and manufactured solely within the State of South Carolina." *Episcopal Housing. Corp. v. Fed. Ins. Co.*, 269 S.C. 631, 640, 239 S.E.2d 647, 652 (1977).

In support of its argument, D.R. Horton cites to the Homeowner Contract. Specifically, Exhibit C of the Homeowner Contract, "Stages of Construction," contemplates the construction of the Home. As another example, Addendum 8 of the Homeowner Contract, "Variations in Materials and Components," contains a list of materials to be used to construct the Home, many of which involve interstate commerce. *See*, e.g., Ex. A; *see generally, Episcopal Hous. Corp.,* 269 S.C. at 640, 239 S.E.2d at 652 ("It would be virtually impossible to construct an eighteen (18) story apartment building . . . with materials, equipment and supplies all produced and manufactured

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

solely within the State of South Carolina."). Additionally, the ICA clearly covers the construction of new homes, including the Home.

The court agrees with D.R. Horton that the transaction at issue here was for the construction and sale of the home, affected interstate commerce, and falls within the FAA.

### D.  Refusal of the Opposing Party to Arbitrate

Fourth, the court must find that there is a failure, neglect or refusal of the opposing party to arbitrate the dispute. D.R. Horton has requested that Plaintiff and Subcontractors arbitrate this matter, but Plaintiff has opposed D.R. Horton's attempts to arbitrate and Subcontractors have either not yet appeared in this action or not agreed to arbitrate. The court finds this element is met.

## II.     The Arbitration Provisions are Enforceable.

Plaintiffs argue that the arbitration provision in the Homeowner Contract is not enforceable, raising the defense of unconscionability. In contrast, D.R. Horton argues that the arbitration clause is enforceable because there are no general contract defenses that would invalidate it.

### a.  No Contract Defenses Render the Arbitration Provisions Unenforceable.

After determining that the FAA applies, "courts must apply state law to decide issues of contract formation" when a party challenges the enforceability of the arbitration agreement. *LaPoint*, 2009 U.S. Dist. LEXIS 146577, at \*10. "The FAA recognizes arbitration agreements 'may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Sanders*, 2023 S.C. LEXIS 154, 892 S.E.2d at 115 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)).

Under the *Prima Paint* doctrine, "the first task of a court is to separate the arbitration provision from the rest of the contract." *Doe v. TCSC, LLC*, 430 S.C. 602, 607, 846 S.E.2d 874,

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

876 (Ct. App. 2020). A court can consider only "challenges specifically [to] the validity of the agreement to arbitrate." *Rent-A-Ctr.*, 561 U.S. at 70 (citation omitted). "[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.* In other words, "a party must allege that the *arbitration agreement* is unconscionable, not that the *entire contract* is unconscionable." *Smith v. D.R. Horton, Inc.*, 417 S.C. 42, 48, 790 S.E.2d 1, 4 (2016).

Plaintiff argues that the arbitration provision is unconscionable due to its connection with the warranties provision and that it is an adhesion contract.

In *Smith*, the South Carolina Supreme Court reviewed a paragraph called "Warranties and Dispute Resolution," with "more than 1,800 words" and "ten separately denominated subparagraphs." 417 S.C. at 53, 60, 790 S.E.2d at 6, 10 (Kittredge, J., dissenting). Subparagraph (g) was specifically identified as "MANDATORY BINDING ARBITRATION" and detailed the parties' obligation to arbitrate their disputes. *Id.* at 57–58, 790 S.E.2d at 9. Notably, the agreement did not contain a severability clause. *Id.* at 50 n.6, 790 S.E.2d at 5 n.6 (majority opinion). The parties, and the justices, in *Smith* disagreed as to whether the ten subparagraphs should be read together as the "arbitration agreement," or only the specifically labeled arbitration subparagraph (g). *Id* at 48, 790 S.E.2d at 4. The majority concluded that "[t]he subparagraphs . . . contain[ed] numerous cross-references to one another" and therefore were "intertwin[ed] . . . so as to constitute a single provision." *Id.* In a 3–2 decision, the Court held that warranty disclaimers and damages limitations in various subparagraphs rendered the arbitration agreement unenforceable. *Id.* at 50, 790 S.E.2d at 5. Justice Kittredge filed a lengthy dissent, in which he noted that the plaintiffs "[did] not contend the specific agreement to arbitrate was unconscionable," and criticized the majority

for relying on "the fiction that the arbitration provision [was] the entirety of Paragraph 14." *Id.* at 53, 59, 790 S.E.2d at 6, 10 (Kittredge, J., dissenting).

In *Damico*, the court of appeals addressed a contract with "ten, numbered paragraphs setting forth the arbitration agreement" in a section called "Mediation/Arbitration of Disputes." 437 S.C. at 605, 879 S.E.2d at 751. The trial court held that the arbitration agreement "consisted of the entirety of the purchase and sale agreement and the [associated] limited warranty booklet" because "extensive cross-references between the two contracts combined them into a single agreement." *Id.* at 606–07, 879 S.E.2d at 752. The court of appeals reversed, finding that "the arbitration agreement . . . was contained in a distinct, separate section of the [contract]" and "the circuit court erred by considering the contract as a whole." *Damico v. Lennar Carolinas, LLC*, 430 S.C. 188, 198–99, 844 S.E.2d 66, 72 (Ct. App. 2020), *rev'd on other grounds*, 437 S.C. 596, 879 S.E.2d 746 (2022). The South Carolina Supreme Court affirmed the appellate court on that ground, concluding that the section with the arbitration agreement was a standalone provision that "deal[t] solely with the scope of arbitration and the requisite formalities accompanying an arbitration proceeding." *Damico*, 437 S.C. at 610, 879 S.E.2d at 754. Moreover, because the arbitration agreements in both the contract and the related warranty booklet were standalone provisions, in their own sections, "it [was] legally irrelevant that the portions of the contracts outside of the arbitration agreements extensively cross-reference[d] one another and incorporate[d] one another by reference." *Id.* at 610 n.6, 879 S.E.2d at 754 n.6.

The court of appeals acknowledged this standard in *Mart v. Great Southern Homes, Inc.*, 441 S.C. 304, 893 S.E.2d 360 (Ct. App. 2023). *Mart* involved an arbitration provision "in an unnumbered, standalone paragraph." *Id.* at 307, 893 S.E.2d at 361. Other unnumbered paragraphs included a limited warranty that disclaimed all other warranties, as well as liability for

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

consequential and punitive damages. *Id.* at 308, 893 S.E.2d at 362. The buyer "agree[d] to accept [the] limited warranty in lieu of all other rights or remedies, whether base[d] on contract or tort." *Id.* (third alteration in original) (emphasis removed). At closing, the buyer was provided with a warranty application and warranty that contained its own arbitration provision, and which likewise disclaimed all other warranties and precluded recovery of incidental and consequential damages. *Id.* at 309–11, 893 S.E.2d at 363. On appeal, the court of appeals considered whether the trial court erred by incorporating provisions from this separate limited warranty into the parties' sales contract. *Id.* at 312, 893 S.E.2d at 364.

The *Mart* court looked to the South Carolina Supreme Court's conclusion in *Damico* that "'the circuit court impermissibly considered the terms found in the limited warranty booklet' when analyzing the arbitration provision of the purchase and sales agreement." *Id.* at 315, 893 S.E.2d at 365 (quoting *Damico*, 437 S.C. at 607, 879 S.E.2d at 753). The court added that "controlling case law [did] not permit [it] to consider the language of the separate limited Warranty or the propriety of the waiver of implied warranties in analyzing the standalone arbitration language of the Sales Contract." *Id.* at 315, 893 S.E.2d at 365. To demonstrate that the arbitration provision was unconscionable and, therefore, unenforceable, the plaintiff "was required to show that the language *in the arbitration section alone* was unconscionable." *Id.* at 315–16, 893 S.E.2d at 366 (emphasis added). The plaintiff failed to do that because although "[c]hallenged terms [could] be found elsewhere in the Sales Contract and/or the Warranty agreement," the arbitration provision itself "contain[ed] no such . . . term[s]." *Id.* at 315, 893 S.E.2d at 365.

*Damico* and *Mart* are consistent with the United States Supreme Court's holding in *Rent-A-Center*, where a company sought to enforce a delegation provision that gave the arbitrator "exclusive authority to resolve any dispute relating to the interpretation, applicability,

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

enforceability or formation of th[e] Agreement." *Rent-A-Ctr.*, 561 U.S. at 66 (citation omitted). Notably, "the underlying contract [was] itself an arbitration agreement" entitled "Mutual Agreement to Arbitrate Claims." *Id.* at 65, 72. The *Rent-A-Center* Court clarified that "[a]pplication of the severability rule [of *Prima Paint*] does not depend on the substance of the remainder of the contract." *Id.* at 72. No matter the underlying contract, when ruling on arbitrability a court can consider only challenges *specifically* to the provision providing for arbitration. *Id.* The *Rent-A-Center* plaintiff's unconscionability arguments—that the agreement "was one-sided" and contained a "fee-splitting arrangement" and "limitations on discovery"—were directed at the arbitration agreement *as a whole*. *Id.* at 73–74. The plaintiff "did not make any arguments *specific to the delegation provision*" or "contest the validity of *the delegation provision in particular*." *Id.* at 74 (emphasis added). *Rent-A-Center* makes clear that this is what the law requires.

In this case, the Homeowner Contract bears more in common with the separate arbitration provisions in *Damico* and *Mart* than the combined warranty and dispute resolution paragraph in *Smith*. As in *Rent-A-Center*, here the arbitration clause is a standalone provision located in section 15 of the Homeowner Contract, whereas warranties and related disclaimers are in section 14. Plaintiffs may argue that section 15 "incorporates" the warranty and disclaimer provisions of section 14. However, the arbitration provision in *Damico* stated that it applied to "any Dispute," including claims "arising by virtue of any . . . warranties alleged to have been made." 437 S.C. at 605, 879 S.E.2d at 751–52 (ellipsis in original). The arbitration provision must be interpreted on its own, despite any reference to warranties. *Id.* at 607, 879 S.E.2d at 752–53.

In this case, the relevant arbitration provision consists of the stipulation in section 15 of the Homeowner Contracts that the "purchaser and seller shall submit to binding arbitration any and all disputes which may arise between them regarding th[e] agreement and/or the property." (*E.g.*, Ex.

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

1 § 15 (capitalization altered).) Following *Damico* and *Mart,* Plaintiff's challenges to extraneous provisions outside of the standalone, unchallenged arbitration provision cannot be considered. Instead, Plaintiff's challenges to those other provisions in the Homeowner Contract are "for the arbitrator." *Rent-A-Ctr.*, 561 U.S at 72.

Here, the evidence suggests that the parties intended to treat section 15 as separate from the rest of the Homeowner Contract. Plaintiff "separately initialed [section 15] titled 'MANDATORY BINDING ARBITRATION,'" which "indicates the parties themselves viewed these terms as distinct contractual provisions to which they separately consented." *Smith*, 417 S.C. at 61, 790 S.E.2d at 11 (Kittredge, J., dissenting). In short, the arbitration provision is not combined with the warranty provision such that the two cannot be separated easily. Accordingly, section 15 is a standalone provision.

### b.  The Arbitration Provisions Are Not Unconscionable.

The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also* S.C. Code Ann. § 15-48-10(a). Therefore, "courts may invalidate arbitration agreements on general state law contract defenses, such as fraud, duress, and unconscionability." *One Belle Hall Prop. Owners Ass'n v. Trammell Crow Residential Co.*, 418 S.C. 51, 60, 791 S.E.2d 286, 291 (Ct. App. 2016) (citation and internal quotation marks omitted). "In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Smith,* 417 S.C. at 49, 790 S.E.2d at 4 (quoting *Simpson v. MSA of Myrtle Beach, Inc.,* 373 S.C. 14, 24-25, 644 S.E.2d 663, 668 (2007)). Inequity of bargaining power is not "on its own, sufficient basis to invalidate an

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

arbitration agreement." *LaPoint,* 2009 U.S. Dist. LEXIS 146577, at \*11 (citing *Munoz v. Green Tree Fin. Corp.,* 343 S.C. 531, 541, 542 n.5, S.E.2d 360, 365 n.5 (2001)). "In conducting an unconscionability inquiry, courts may only consider the provisions of the arbitration agreement itself, and not those of the whole contract." *Smith,* 417 S.C. at 48, 790 S.E.2d at 4.

The touchstone of the analysis begins with the presence or absence of meaningful choice. *Damico*, 437 S.C. at 612, 879 S.E.2d at 755. This requires courts to "consider, among all facts and circumstances, the relative disparity in the parties' bargaining power, the parties' relative sophistication, and whether the plaintiffs are a substantial business concern of the defendant." *Id.* at 613, 879 S.E.2d at 755.

When analyzing conscionability in the context of arbitration agreements, "the Fourth Circuit has instructed courts to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." *Simpson*, 373 S.C. at 25, 644 S.E.2d at 668. That is the "general rubric" a court must use to "determine whether a contract provision is unconscionable due to both an absence of meaningful choice and oppressive, one-sided terms." *Id.* at 25, 644 S.E.2d at 669. However, "there is no specific set of factual circumstances establishing the line which must be crossed when evaluating an arbitration clause for unconscionability." *Id.* at 36, 644 S.E.2d at 674. Rather, courts should examine arbitration clauses for conscionability on a "case-by-case" basis. *Id.*

Here, the arbitration provision in the Homeowner Contract is not similar to those that courts have found to be unconscionable. "On the rare occasion when a court has determined that arbitral procedures render an arbitration agreement unenforceable, the one-sided provisions have been so pervasive and extreme that the arbitration provision created a 'sham system unworthy even of the name of arbitration.'" *LaPoint*, 2009 U.S. Dist. LEXIS 146577, at \*18–19 (quoting *Hooters of*

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

*Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999)). For example, in *Damico*, the court concluded that the arbitration agreement was unconscionable because it gave the homebuilder too much control over the *process* of arbitration: findings would not be binding in other proceedings without mutuality of parties, which the homebuilder had unilateral power to prevent because only the homebuilder could join contractors and other third parties. 437 S.C. at 615–16, 879 S.E.2d at 757. Recently, in *Huskins v. Mungo Homes, LLC*, the South Carolina Supreme Court declared that a provision in an arbitration agreement purporting to shorten the statute of limitations was "void and illegal as a matter of public policy." 444 S.C. 592, 595, 910 S.E.2d 474, 476 (2024), *reh'g denied*, 2025 S.C. LEXIS 17 (Jan. 16, 2025).

In contrast, the arbitration provision in the Homeowner Contract satisfies the fairness standard. In relevant part, the arbitration provision (1) binds both D.R. Horton and Plaintiff to arbitrate construction defect disputes; (2) provides for arbitration in Plaintiff's home county; (3) provides for American Arbitration Association ("AAA")[1] rules and an expedited hearing schedule; (4) gives the arbitrator discretion to assess the filing fees and costs against D.R. Horton; and (5) allows any party to seek judicial enforcement of the arbitrator's decision. There is nothing "so oppressive" about these terms such "that no reasonable person would make them and no fair and honest person would accept them." *Simpson*, 373 S.C. at 25, 644 S.E.2d at 668. To the contrary, these are reasonable and customary terms in an arbitration agreement and should be enforced.[2]

---

[1] The AAA is a "well-known arbitration forum[]" that courts have recognized as "consumer friendly and affordable." *Whitman v. Legal Helpers Debt Resolution, LLC*, No.: 4:12-cv-00144-RBH, 2012 U.S. Dist. LEXIS 176480, at *8 (D.S.C. Dec. 13, 2012) (citation omitted).

[2] Moreover, because the Home Purchase Agreement contains a severability clause (*E.g.*, Ex. 1, § 23), to the extent the court disagrees, it can sever any provisions it finds unconscionable.

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

The questions as to the ICAs are the same: (1) whether Subcontractors lacked meaningful choice and the arbitration provision is one-sided; and (2) whether the terms of the arbitration provision "are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Smith*, 417 S.C. at 49, 790 S.E.2d at 4.

First, Subcontractors had a meaningful choice to enter the ICAs. Subcontractors were free to decline to enter into a business relationship with D.R. Horton. Subcontractors freely chose to assent to D.R. Horton's contractual terms, including the arbitration provision. Subcontractors also had the opportunity to negotiate terms. There is nothing unfair about this bargaining process. Arbitration is binding on all parties to the contract and is not one-sided.

Second, the terms of the arbitration provision are not "so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Smith,* 417 S.C. at 49, 790 S.E.2d at 4. To start, the Subcontractors are sophisticated parties who entered into these ICAs with D.R. Horton, under which they have performed hundreds of thousands of dollars of work for D.R. Horton. The arbitration provisions bind both D.R. Horton and Subcontractors to arbitrate disputes and do not contain any oppressive terms. There is nothing about the terms such that no fair and honest person would accept them. All of the Subcontractors involved in this matter, along with many others, agreed to these terms. These are reasonable and customary terms and should be enforced.

Plaintiff argues that the arbitration agreement lacks mutuality of remedies and limits the arbitrator's authority. Neither provides a basis for denying D.R. Horton's motion. Any limitation of liability is in separate provisions, not in the arbitration agreement. Therefore, Plaintiff's challenge should be addressed to an arbitrator.

In addition, the provisions that allow certain actions to proceed in court have no bearing on

this case. One deals solely with earnest money and how it will be treated in the transaction. (*See, e.g.*, Ex. 1, § 4.) The other addresses what happens if D.R. Horton does not complete construction of the Home. (*See, e.g.*, *id.* § 16(f).) Neither is relevant to the present dispute.

The South Carolina Supreme Court has recognized that "lack of mutuality of remedy in an arbitration agreement, on its own, does not make the arbitration agreement unconscionable." *Simpson*, 373 S.C. at 31, 644 S.E.2d at 672; *see also Munoz*, 343 S.C. at 542, 542 S.E.2d at 365 (stating that "the doctrine of mutuality of remedy does not apply" to an arbitration agreement because the agreement "does not determine the *remedy* for a breach of contract but only the *forum* in which the remedy for the breach is determined" (emphasis altered)).

The Court expressed concern about mutuality in *Damico* because the agreement gave the builder sole discretion to join third parties, such as contractors, while also mandating that findings in one proceeding could not be used in another unless there was mutuality of parties. 437 S.C. at 615–16, 879 S.E.2d at 757. The *Damico* court found that this violated the "fundamental principle of law that the plaintiff is the master of his own complaint." *Id.* at 616, 879 S.E.2d at 757. The *Damico* court also noted that it "create[d] the possibility of inconsistent factual findings that would preclude [homeowners] from recovery on a purely procedural (rather than a merit) basis." *Id.* at 616, 879 S.E.2d at 757. The Court was concerned that builder's ability to control the proceedings created the possibility of parallel "empty chair" defenses, where an arbitration defendant could blame an absent party, while in court, a litigation defendant could blame the parties that submitted to arbitration. *Id.* Moreover, the Court observed that because findings would not be binding in other proceedings without mutuality of parties, *which the homebuilder had unilateral power to prevent*, homeowners "could not even use the fact that the arbitrator had found [the builder] was not at fault when pursuing liability against the remaining circuit-court defendants, or vice versa."

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

*Id.* It was this "procedural defense to liability" that the Court found "wholly unreasonable and oppressive." *Id.*

Similarly, in *Simpson*, the agreement allowed one party—car dealers—to "bring a judicial proceeding that completely disregard[ed] any pending consumer claims that require[d] arbitration." 373 S.C. at 31, 644 S.E.2d at 672

As now-Chief Justice Kittredge noted in *Damico*, the yardstick of whether an agreement is unconscionable is even-handedness. 437 S.C. at 614, 879 S.E.2d 756. The agreement in that case failed to meet that standard by creating a "procedural defense to liability" that was "wholly unreasonable and oppressive." *Id.* at 616, 879 S.E.2d at 757. Similarly, in *Simpson*, the agreement at issue effectively elevated "the dealer's judicial remedies" above "the consumer's arbitral remedies," creating a process that was "one-sided and oppressive and d[id] not promote a neutral and unbiased arbitral forum." 373 S.C. at 32, 644 S.E.2d at 672. The arbitration provision in this case contains no such terms.

As noted above, the arbitration provision in the Homeowner Contract requires D.R. Horton *and* homebuyers to arbitrate all construction defect claims and allows any party to seek judicial enforcement of an arbitration decision. (*E.g.*, Ex. 2, § 15.) There is no lack of mutuality in these provisions; even if there were, there is no unconscionability.

There is also nothing unconscionable about the arbitral procedures the agreement dictates or the limits it places on an arbitrator's authority. In *Hooters*, the court found that the promised employment arbitration was a "sham" because the company "was responsible for setting up . . . a [neutral] forum by promulgating arbitration rules and procedures," but instead established rules that were "so one-sided that their only possible purpose [was] to undermine the neutrality of the proceeding." 173 F.3d at 938, 940. Among the rules' many problems, the company was "not

required to file any responsive pleadings or to notice its defenses"; "the employee [had to] provide the company with a list of all fact witnesses with a brief summary of the facts known to each," but the company had no obligation to reciprocate; the company could expand the scope of arbitration "to any matter," whereas the employee was limited to the issues in the initial claim; the company had the right to record audio or video of the arbitration hearing, but the employee did not; and only the company could "bring suit in court to vacate or modify an arbitral award." *Id.* at 938–39. Moreover, two of the three arbitrators that would resolve any dispute had to be picked from a list *created by the company. See id.* The court concluded "that the promulgation of so many biased rules—*especially the scheme whereby one party to the proceeding so control[led] the arbitral panel*—breache[d] the contract entered into by the parties." *Id.* at 940 (emphasis added).

The Homeowner Contract contains no similar provisions. It provides for arbitration before the AAA, a forum that is "well-known," "consumer friendly," and "affordable." *Whitman*, 2012 U.S. Dist. LEXIS 176480, at *8 (citation omitted). Moreover, the arbitration provision allows for either party to seek judicial enforcement of an arbitration award. (*E.g.*, Ex. 3, § 15.) These provisions are consistent with the goal of "achieving an unbiased decision by a neutral decision-maker." *Simpson*, 373 S.C. at 25, 644 S.E.2d at 668.

The propriety of any other provisions should be determined by the arbitrator, as even the court in *Hooters* recognized that "[g]enerally, objections to the nature of arbitral proceedings are for the arbitrator to decide in the first instance." 173 F.3d at 941. The court emphasized that the case was "the exception that proves the rule: *fairness objections should generally be made to the arbitrator*." *Id.* (emphasis added). Any questions about the conscionability or fairness of the Homeowner Contract must be resolved in arbitration.

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484

Therefore, the court finds that the arbitration clause is enforceable because there are no general contract defenses that would invalidate it.

### III.     The Arbitration Provision Did Not Merge with the Deed.

The merger by deed doctrine provides that "[t]he execution, delivery, and acceptance of a deed varying from the term of an antecedent contract indicates an amendment of the original contract, and generally the rights of the parties are fixed by their expressions as contained in the deed." *Shoney's, Inc. v. Cooke*, 291 S.C. 307, 311, 353 S.E.2d 300, 303 (Ct. App. 1987) (quoting *Charleston & Western Carolina Ry. Co. v. Joyce*, 231 S.C. 493, 99 S.E.2d 187, 193 (1957)).

Plaintiff argues that the arbitration provision merged out of existence when the deed was executed, as the arbitration clause is not in the deed and the provision does not contain express language providing that it will survive closing. D.R. Horton argues that the merger doctrine does not apply to the arbitration provision, and, that even if it did, exceptions to the merger doctrine apply.

The court finds the language of the arbitration provision evidences the parties did not intend to merge, as it specifically references "any and all disputes." The contract also includes a number of provisions that evidence the parties' intent not the merge the terms of the contract with the deed, such as the warranty provision. As such, the courts finds that the merger doctrine does not apply to the Homeowner Contract.

## CONCLUSION

Finding that the FAA governs and no contract defenses preclude enforcement, the court finds the arbitration provisions in the ICAs and Homeowner Contract enforceable. Accordingly, the court GRANTS D.R. Horton's Motion to Stay Action and Compel Arbitration.

**AND IT IS SO ORDERED.**

**[Judge's Electronic Signature Page Follows]**

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484



Horry Common Pleas

**Case Caption:**   Sam Charles Prest III , plaintiff, et al VS   DR Horton Inc , defendant, et al

**Case Number:**   2025CP2600484

**Type:**   Order/Other

15th Circuit Resident Judge

s/ B. Alex Hyman

Electronically signed on 2025-09-15 10:45:20    page 22 of 22

ELECTRONICALLY FILED - 2025 Sep 15 12:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2600484