IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| DEREK WILLIAMS, COREY SMITH, WILLIAM WYATT, and HEATHER IWINSKI, individually and on behalf of all other similarly situated, | ) ) ) ) ) | No. 8:26-cv-00097-DCC |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **ORDER** |
| D.R. HORTON, INC.; ALPHA & OMEGA CONSTRUCTION, LLC; CANNADY SIDING & GUTTER, INC.; L & M ELECTRIC, INC.; LONG HEATING AND AIR CONDITIONING, INC.; and M&L REYNA CONSTRUCTION, LLC, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the Court on Plaintiffs' Motion to Remand. ECF No. 31.

Defendant D.R. Horton, Inc. ("DRH") filed a Response in Opposition, and Plaintiffs filed a

Reply. ECF Nos. 121, 148. For the reasons set forth below, Plaintiffs' Motion is granted.[1]

## I. BACKGROUND

---

[1] Prior to Plaintiffs' filing of the Motion to Remand, DRH filed a Motion to Compel Arbitration and to Stay. *See* ECF Nos. 24, 31. Though the Motions to Remand, Compel Arbitration, and Stay are all fully briefed, the Court considers the Motion to Remand first because it implicates the Court's ability to abstain from exercising jurisdiction over this action. *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 386–87 (6th Cir. 2016) (stating that if all four elements of the local controversy exception to [Class Action Fairness Act of 2005 ("CAFA")] are established, "the district court must abstain from hearing the case, despite having jurisdiction under § 1332(d)(2)"). Because the Court ultimately grants Plaintiffs' Motion to Remand, the Motion to Compel Arbitration and Stay are moot.

This case arises out of a construction dispute concerning approximately 99 single-family homes in the Rivermill subdivision ("Rivermill") in Piedmont, South Carolina. *See* ECF No. 1-1. As alleged in the Complaint, Plaintiffs are homeowners in Rivermill. *Id.* at 3–4. DRH is the alleged designer, builder, and seller of the homes and properties in Rivermill, including Plaintiffs' and the putative class's homes (the "Residences"). *Id.* at 5. DRH allegedly coordinated, performed, directed, managed, controlled, supervised and/or otherwise participated in the design, marketing, construction, sale, and/or repair of the Residences. *Id.* Defendant Alpha & Omega Construction, LLC ("Alpha Omega") allegedly supplied materials, installed roofing and/or performed repairs, among other work, at the Residences. *Id.* Defendant Cannady Siding & Gutter, Inc. ("Cannady") allegedly supplied materials, installed siding, and/or performed repairs, among other work, at the Residences. *Id.* Defendant L & M Electric, Inc. ("L & M Electric") allegedly supplied materials, installed electrical systems and/or performed repairs, among other work, at the Residences. *Id.* Defendant Long Heating & Air Conditioning, Inc. ("Long HVAC") allegedly supplied materials, installed HVAC systems and ductwork, and/or performed repairs, among other work, at the Residences. *Id.* at 6. Defendant M&L Reyna Construction, LLC ("M&L Reyna") allegedly supplied materials, installed masonry veneer (brick and/or stone) and/or performed repairs, among other work, at the Residences. *Id.*

Plaintiffs brought this action, both individually, and on behalf of a class of similarly situated claimants, which they define as follows:

> All persons and entities that own a single-family house designed/built by D.R. Horton within the Rivermill subdivision in Piedmont, South Carolina.

> The Class includes (1) a subclass of the first owners of the Residences who purchased their homes directly from D.R. Horton (referred to as the "Upstream Class") and; (2) a subclass of the subsequent owners of the Residences who did not purchase directly from D.R. Horton (referred to as the "Downstream Class").
>
> Plaintiffs Wyatt and Iwinski are nominated to represent the Upstream Class, and Plaintiffs Smith and Williams are nominated to represent the Downstream Class.
>
> The Class excludes (1) any affiliate or current employee of Defendants; (2) any current Rivermill owner that has a pending suit against D.R. Horton or who has released the claims set forth herein; and (3) all persons who properly execute and file a timely request for exclusion from the Class.

*Id.* at 8–9.

Plaintiffs allege that Defendants' acts and omissions resulted in building deficiencies that Defendants should have known existed and failed to disclose to Plaintiffs. *Id.* at 7–8. These latent and undisclosed defects in the Residences resulted in damages to the Plaintiffs. *Id.* at 8. On September 5, 2025, Plaintiffs filed suit against Defendants in the Anderson County Court of Common Pleas, Anderson, South Carolina.[2] *See id.* Plaintiffs, individually and on behalf of the class, assert the following causes of actions against all Defendants: (1) negligence and gross negligence and (2) breach of implied warranties. *Id.* at 13–15. Plaintiffs, individually, also assert a single cause of action against DRH for unfair trade practices. *Id.* at 15–16.

On January 1, 2026, DRH filed a notice of removal pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453. *See* ECF No. 1. On

---

[2] *Williams v. D.R. Horton, Inc.*, Case No. 2025-CP-04-02216, pending in the Anderson County Court of Common Pleas, Anderson, South Carolina.

February 9, 2026, Plaintiffs filed a Motion to Remand.  ECF No. 31.  On March 9, 2026, DRH filed a Response in Opposition, and on March 26, 2026, Plaintiffs filed a Reply.  ECF Nos. 121, 148.  The Motion is now fully briefed and ready for review.

## II.  APPLICABLE LAW

Congress enacted CAFA in 2005 to address perceived "abuses of the class action device" and to ensure "[f]ederal court consideration of interstate cases of national importance." Pub. L. No. 109-2, § 2, 119 Stat. 4, 4–5.  "CAFA relaxes diversity jurisdiction requirements and provides district courts authority over class actions with (1) more than 100 class members, (2) an amount in controversy exceeding $5,000,000[,] and (3) minimally diverse parties." *Scott v. Cricket Commc'ns., LLC*, 865 F.3d 189, 194 (4th Cir. 2017).  In removing under CAFA, the defendant bears the burden of establishing these requirements by a preponderance of the evidence.  *Johnson v. Advance Am.*, 549 F.3d 932, 935 (4th Cir. 2008); *Cricket Commc'ns.*, 865 F.3d at 195.

Despite CAFA's broad grant of jurisdiction, Congress provided several exceptions to ensure that state courts can continue to adjudicate "class actions that have a truly local focus." S. Rep. No. 109-14, at 28 (2005).  Under the local controversy exception, a district court "shall decline to exercise jurisdiction"

> (i) over a class action in which—
>
> > (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
> >
> > (II) at least 1 defendant is a defendant—
> >
> > > (aa) from whom significant relief is sought by members of the plaintiff class;

4

> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>
> (cc) who is a citizen of the State in which the action was originally filed;
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

28 U.S.C. § 1332(d)(4)(A).  The burden of establishing this exception lies with the party seeking remand, who must show that a CAFA exception applies by a preponderance of the evidence.  *See Skyline Tower Painting, Inc. v. Goldberg*, 148 F.4th 209, 223 (4th Cir. 2025); *Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 681(4th Cir. 2018).

## III.  DISCUSSION

Plaintiffs argue that remand is appropriate based upon the "local controversy" exception to CAFA jurisdiction as they have established all four prongs of the exception.[3] ECF No. 31 at 1.  Plaintiffs further contend that, at minimum, this case involves an

---

[3] As outlined above, the removing party bears the initial burden of showing that CAFA's general jurisdiction requirements are satisfied, and, if this initial burden is met, the burden shifts to the party seeking remand to show an exception applies. *Bartels*, 880 F.3d at 681.  Here, Plaintiffs do not challenge whether DRH has met its initial burden to show that CAFA's general jurisdiction requirements apply and, instead, argue only that remand is appropriate based on an exception to CAFA.  *See* ECF No. 31.  Additionally, having reviewed DRH's Notice of Removal, the Court finds that DRH has met its initial burden to establish CAFA jurisdiction.  *See* ECF No. 1.  Accordingly, the burden shifts to Plaintiffs to show, by a preponderance of the evidence, that an exception to CAFA jurisdiction applies.

"uncertain removal scenario which must be resolved in favor of remand due to conflicting jurisdictional principles." *Id.* at 2.  First, Plaintiffs assert that well over two-thirds of putative class members are citizens of South Carolina.  ECF No. 31-1 at 2, 4, 11–16.  Second, Plaintiffs contend that Defendants Cannady, L & M Electric, Long HVAC, and M&L Reyna (collectively, the "SC Subcontractors") are citizens of South Carolina and, both collectively and individually, are Defendants from whom the putative class seeks significant relief, and whose deficient work on the Residences is a significant basis for their claims.  *Id.* at 2–3, 16–20.  Third, Plaintiffs assert that the damage resulting from the SC Subcontractors' conduct occurred within South Carolina.  *Id.* at 3, 21.  Fourth, Plaintiffs argue that no similar class action has been filed within the three years preceding this action.  *Id.* at 3, 22–28.

In response, DRH argues that Plaintiffs cannot satisfy the first, second, and fourth prongs of the local controversy exception, and that Plaintiffs have left significant doubts regarding the local controversy exception's applicability, which must be resolved against the Plaintiffs.  *See* ECF No. 121.  DRH contends that Plaintiffs have provided insufficient evidence to establish South Carolina citizenship for at least two-thirds of the putative class.  *Id.* at 4–8. Next, DRH contends that Plaintiffs have failed to satisfy the significance prong as DRH is the primary focus of Plaintiffs' claims and the SC Subcontractors account for only a small portion of the alleged defects in the Residences compared to other non-local subcontractors.  *Id.* at 9–14.  Finally, DRH asserts that Plaintiffs have not adequately distinguished the factual allegations of the putative class from those of the proposed class

action in *Baddorf v. D.R. Horton, Inc.,* No. 2022-CP-23-03974 (Greenville Cnty. Ct. Comm. Pl.). *Id.* at 14–16.

In reply, Plaintiffs assert that application residency-domicile presumption is proper in this case under recent Fourth Circuit case law and that DRH has failed to rebut the evidence provided by Plaintiffs. ECF No. 148 at 2–5. Next, Plaintiffs argue that they have established that they seek significant relief from at least one South Carolina Defendant because, for the local controversy exception, Plaintiffs only have to establish that they seek significant, not superlative, relief from the local defendants and that DRH has admitted that the SC Subcontractors' conduct account for at least one-third of the alleged defects, which is significant. *Id.* at 5–9. Finally, Plaintiffs argue that the *Baddorf* class action was filed more than three years prior to the filing of this action, is both legally and factually dissimilar to this action, and was never removed to federal court so there is no possibility of consolidation if this case were to remain in federal court. *Id.* at 10–11.

The Parties do not contest that the injuries of the putative class occurred in South Carolina, and thus, the Court finds that the third prong of the local controversy exception is satisfied. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(III). Accordingly, the Court turns its analysis to the first, second, and fourth prong of the local controversy exception.

## A. Greater than Two-Thirds of the Proposed Class are South Carolina Citizens

For individuals, citizenship is determined by domicile, which requires both physical presence in a state and an intent to remain there indefinitely. *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998); *Johnson v. Advance Am.*, 549 F.3d 932, 937 n.2 (4th Cir. 2008). Factors that indicate intent include "voter registration; current

residence; the location of real and personal property; location of bank and brokerage accounts; membership in clubs, churches, or other associations; place of employment or business; driver's license and automobile registration; and the state to which a person pays taxes." *Cricket Commc'ns.*, 865 F.3d at 195. "No single factor is dispositive." *Id.*

"The party seeking to invoke [the] [local controversy] exception must provide evidence (not merely assertions) that makes it more likely than not that more than two-thirds of the proposed class consists of citizens of the relevant state." *Ellis v. Montgomery Cnty.*, 267 F.Supp.3d 510, 516 (E.D. Pa. 2017) (emphasis omitted). "The citizenship inquiry under the local controversy exception should not be exceptionally difficult, but instead practical and reasonable." *Mason*, 842 F.3d at 392 (internal quotation marks and citation omitted). The party seeking to establish citizenship of the proposed class does not need to make a "definitive determination of domicile" but "must provide enough facts to allow a court to determine—not speculate—that it is more likely than not that the class action belongs in federal court." *Cricket Commc'ns*, 865 at 195. "This pragmatic approach obviates the need to ascertain absolute proof of domicile for every class member, which would make the application of CAFA's citizenship requirements 'unworkable' from a practical standpoint." *Ellis*, 267 F.Supp.3d at 516 (quoting *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 816 (5th Cir. 2007)).

Here, Plaintiffs have limited their class to "persons and entities that own a single-family house designed/built by [DRH] within the Rivermill subdivision in Piedmont, South Carolina." ECF No. 1-1 at 8–9. As such, Plaintiffs argue that at least two-thirds of the class, as homeowners in Rivermill, are citizens of South Carolina. ECF No. 31-1 at 2, 4,

11–16.  In support of their argument, Plaintiffs provide deeds for the Residences in Rivermill, 50 drivers' licenses from various owners of Residences in Rivermill, 5 voter registration cards from owners of Residences in Rivermill, and affidavits from the named Plaintiffs.  *Id.* at 2, 4, 11–16.  Plaintiffs contend that the national citizenship data for Piedmont, South Carolina further supports their contention that they have met their burden under the first prong.  *Id.* at 14–15.  Plaintiffs further assert that the residency-domicile presumption applies in the context of determining the applicability of the CAFA exception and that they have more than carried their burden in light of this presumption. *Id.* at 12; ECF No. 148 at 2–5.

DRH argues that Plaintiffs have failed to show two-thirds of the class are South Carolina residents because they have not provided enough facts or evidence to allow the Court to determine the citizenship of the class.  ECF No. 121 at 4–7.  DRH argues that Plaintiffs have not met their burden to demonstrate the South Carolina citizenship of the putative class.  *Id.* at 6. Specifically, DRH contends that "residency by itself is insufficient to establish citizenship," and thus, Plaintiffs' residency data is insufficient to establish domicile.  *Id.* at 8.

The Court finds that Plaintiffs have presented sufficient evidence to show by a preponderance of the evidence that at least two-thirds of the putative class are citizens of South Carolina.  The Fourth Circuit recently held that a district court may reasonably find that evidence of residency creates a rebuttable presumption of citizenship in CAFA exception cases. *Skyline Tower Painting, Inc. v. Goldberg*, 148 F.4th 209, 226 (4th Cir. 2025) ("Where a plaintiff class presents evidence that a class member is a resident of a

9

given state, it is eminently reasonable for the district court to adopt a rebuttable presumption that the class member is a citizen of that state. Such a presumption does not undermine CAFA's 'goal' of 'keep[ing] *interstate* actions in federal court and truly *intrastate* actions in the state courts.'" (citations omitted) (alterations original)). The burden then shifts to the defendants to rebut the presumption, and the weight of that burden is highly dependent "on the specific facts of the case." *Id.* at 227. By example, the Fourth Circuit explained that "residency is weaker evidence of citizenship where a significant percentage of the class can be expected to be only temporary residents—such as where a large number of class members are residents of a university campus, a military base, or an area with many vacation homes." *Id*. at 227–28 (citation omitted). "By contrast, property ownership is a 'strong indicator of domicile,' so defendants faced with evidence that the plaintiff class is largely made up of residents who own their homes will have a more difficult time rebutting the presumption that those residents are citizens." *Id.* at 228 (citation omitted).

Here, the evidence of residency is a strong indicator of domicile as the class consists solely of property owners in Rivermill, a subdivision in Piedmont, South Carolina. ECF No. 1-1 at 8–9. Plaintiffs provided the Court with title records and deeds for the Residences in Rivermill. *See* ECF No. 31-3.[4] In relying on these deeds, Plaintiffs point

---

[4] Plaintiffs represent that they have provided all the title records and deeds for Residences in Rivermill, which amounts to over 400 pages of documents, and that these documents "confirm that the owners of approximately 100% of Rivermill homeowners reside in South Carolina, the majority of which occupy their homes in Rivermill"). ECF Nos. 31-1 at 4; 31-3; 148 at 2, 4. DRH does not dispute that Plaintiffs have provided true and correct copies of all the deeds for Residences in Rivermill. *See* ECF No. 121 at 6. From the Court's review of the attached property documents, it appears that all the deeds

out that the addresses listed as the "grantee address" on the deeds for Residences in Rivermill show that approximately 100% of these addresses are in South Carolina with many of these addresses being located in Rivermill.  ECF Nos. 31-1 at 15; 31-3.  Plaintiff also provides Census data to show that approximately 98.5% of the population of Piedmont, South Carolina, where Rivermill is located are United States citizens.  ECF Nos. 31-1 at 15; 31-11.  Other courts in this District have found that almost identical evidence along with the commonsense presumption that a neighborhood in a more rural area, like Piedmont, South Carolina, is likely comprised of South Carolina citizens, entitled the plaintiffs to the presumption that at least two-thirds of the property owners in that neighborhood were citizens of South Carolina.  *See, e.g.*, *Brunetti v. D.R. Horton, Inc.*, Case No. 2:23-cv06006-RMG (Feb. 15, 2024, D.S.C. 2024) (Order re Motion to Remand, ECF No. 24).  This Court likewise finds that Plaintiffs' evidence of residency of the putative class is enough to entitle them to the presumption that members of the putative class are citizens of South Carolina.

DRH cites no contrary evidence.  *See* ECF No. 121.  Instead, DRH relies on case law from outside this circuit to argue that the Court should not allow Plaintiffs to rely on the residency-domicile presumption; DRH further does not address controlling Fourth Circuit precedent that found reliance on this doctrine to be reasonable.  *Id.* at 8.  DRH has neither rebutted the presumed South Carolina citizenship of the putative class members,

---

and titles for the Residences in Rivermill have been provided.  At the very least, two-thirds of the property documents for Residences in Rivermill have been provided and show that the addresses for the grantees, or owners of the Residences, are in South Carolina.

nor has it shown that Plaintiffs' methods of determining citizenship are unreasonable. *See id.* Thus, the Court finds that Plaintiffs have made the requisite showing that it is more likely than not that at least two-thirds of the putative class are citizens of South Carolina. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(I).[5] Having found that the Plaintiffs met their burden on the first prong of the local controversy exception, the Court turns to the second prong.

## B. At Least One Significant Defendant is a South Carolina Citizen.

The local controversy exception also requires Plaintiffs to show that at least one defendant "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims asserted" is a "citizen of the state in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(A)(i)(II). The Fourth Circuit recently expounded on what the statute means by "significant relief" and "significant basis." *See Skyline*, 148 F.4th at 228–33. The Fourth Circuit's analysis of, as it coins this prong, the "at least one defendant rule" in *Skyline* is instructive to the Court's analysis here.

To begin, the Fourth Circuit reiterated its holding in *Quicken Loans Inc. v. Alig*, 737 F.3d 960 (2013). *See Skyline*, 148 F.4th at 229. In *Quicken Loans*, the Fourth Circuit determined whether several local defendants could be aggregated for purposes of

---

[5] Even if the Court were to find that Plaintiffs had failed to present evidence entitling them to this presumption, Plaintiffs further supplemented their residency-domicile argument with evidence of South Carolina citizenship, evincing putative class members' "intent to remain" in South Carolina. *See Cricket Commc'ns*, 865 F.3d at 195. Plaintiffs provided the Court with driver's licenses or voter registration cards for 55 Rivermill homeowners showing South Carolina addresses and have also provided affidavits from the class representatives indicating both their own intent to remain and their understanding of their neighbors' intent to do the same. *See* ECF Nos. 31-1 at 16; 31-4; 31-5; 148-1. The Court finds this evidence, along with the title records and deed information provided by Plaintiffs, is sufficient to show that it is more likely than not that at least two-thirds of the proposed class are citizens of South Carolina.

determining whether the "at least one defendant" rule had been met.  737 F.3d at 965.

Relying on the reasoning of *Quicken Loans*, the Fourth Circuit in *Skyline* explained "if

there are two or three or four defendants with roughly equal (or even unequal, but still

significant) liability, more than one could satisfy the 'significant relief' and 'significant

basis' requirements."  148 F.4th at 229.  Put simply, the Fourth Circuit found that it did not

matter if the in-state defendant was "allegedly *more* liable than (or *just as* liable as)" as

the out-of-state defendant, so long as the plaintiffs sought "significant relief" from the in-

state defendant and the in-state defendant's conduct "form[ed] a significant basis" for the

claims.  *Id.* at 229–30.  The Fourth Circuit also relied on the difference in statutory

language used in the home-state exception to CAFA in concluding that to be "significant"

under the local controversy exception a defendant did not necessarily have to be

"superlative" to all other defendants.  *Id.* at 230–31.  As the Fourth Circuit explained:

"Because the local-controversy exception requires only that the local defendant be

'significant,' while the home-state exception refers to '*the primary* defendants,' a review

of the statute as a whole supports that the local-controversy does *not* require that the

local defendant be superlatively 'primary,' but merely 'significant.'"  *Id.*

The Fourth Circuit thereafter adopted the comparative approach set out in

*Kaufman v. Allstate New Jersey Insurance Co*, 561 F.3d 144, 156 (3d Cir. 2009), while

noting that "such comparisons must admit the possibility (clear from CAFA's text) that

more than one defendant's conduct can be 'a significant basis' of the plaintiffs'' claims."

*Id.* (quoting *Kress Stores of Puerto Rico, Inc. v. Wal-Mart Puerto Rico, Inc.*, 121 F.4th

228, 241 (1st Cir. 2024) (per curiam)).  In *Kaufman*, the Third Circuit proposed that the

13

district court, in determining whether a defendant's conduct constituted a significant basis of the plaintiffs' claims, evaluated:

> (1) the relative importance of each of the claims to the action; (2) the nature of the claims and issues raised against the local defendant; (3) the nature of the claims and issues raised against all the defendants; (4) the number of claims that rely on the local defendant's alleged conduct; (5) the number of claims asserted; (6) the identity of the defendants; (7) whether the defendants are related; (8) the number of members of the putative classes asserting claims that rely on the local defendant's alleged conduct; and (9) the approximate number of members in the putative classes.

561 F.3d at 157 n.13.  "Whether the District Court considers any or all of these factors, it must in every case still provide a reasoned analysis that focuses on the conduct of the Defendants—local and non-local—as alleged in the complaint."  *Id.*

Here, considering the SC Subcontractors in the aggregate, the Court finds that Plaintiffs have met their burden to show that there is "at least one defendant" from the State of South Carolina "from whom significant relief is sought" and "whose alleged conduct forms a significant basis for the claims asserted."[6]    28 U.S.C. § 1332(d)(4)(A)(i)(II).  As noted above, it is undisputed the SC Subcontractors are all citizens of the State of South Carolina.  *See* ECF Nos. 31-1 at 20–21; 121.

In the instant case, one Defendant links every party and claim within this action: DRH.  *See generally* 1-1. DRH is an out-of-state business entity, which implicates interstate commerce more so than local, intrastate commerce.  For this reason, DRH

---

[6] Because, as set out by the Fourth Circuit in *Quicken Loans*, the Court may consider the SC Subcontractors in the aggregate, it does not address whether the SC Subcontractors individually would meet the threshold required under this prong of the statute.  *See* 737 F.3d at 965.

14

argues that Plaintiffs cannot establish the one significant defendant prong because, based on the allegations of the Complaint, DRH is the primary party from whom the Plaintiffs seek relief.  ECF No. 121 at 9–11.  However, as noted above, the Fourth Circuit has rejected the proposition that significant relief under the local controversy exception is equivalent to "superlative relief."  *Skyline*, 148 F.4th at 230–31.

Accordingly, when it comes to whether the SC Subcontractors' conduct forms a significant basis of Plaintiffs' claims, the Court considers DRH's control of the construction and sale of the Residences in Rivermill in comparison to the aggregate conduct of the SC Subcontractors.  In doing so, the Court finds that a majority of the *Kaufman* factors weigh in favor of finding the SC Subcontractors' conduct forms a "significant basis" of Plaintiffs' claims.  The nature of Plaintiffs' claims are all based on the deficient construction of homes within Rivermill that was performed by subcontractors, including the SC Subcontractors.  ECF Nos. 1-1 at 5–8, 13–15.  Plaintiffs seek relief directly from each of the SC Subcontractors based on building code violations and other construction defects common to the Residences, and the SC Subcontractors' conduct is implicated by all the claims pleaded by Plaintiffs.  *See id* at 13–15.  Plaintiffs seek the same relief from each local Defendant.  *Id.* at 14–16.

While there is a single cause of action solely against DRH, that does not mean that Plaintiffs have failed to show that the SC Subcontractors' conduct "forms a significant basis for all the claims asserted in the action."  *See* ECF No. 1-1 at 15–16; *Kaufman*, 561 F.3d at 155.  The court in *Kaufman* clarified that "[t]he [local-controversy] provision does not require that the local defendant's alleged conduct form a basis of *each* claim asserted;

15

it requires the alleged conduct to form a *significant basis* of *all* the claims asserted." *Id.* (third emphasis added). Further, the Fourth Circuit explained that "nothing in the statute indicates that, if there is even a single claim not asserted against the local defendant, the local-controversy exception does not apply." *Skyline*, 148 F.4th at 233. Accordingly, the Court finds that the conduct of the SC Subcontractors forms a significant basis of Plaintiffs' claims.

Turning to whether Plaintiffs seek significant relief from the local Defendants, the SC Subcontractors, the Court also finds that Plaintiffs have sufficiently established this portion of the "at least one defendant" prong as well. Here, Plaintiffs did not precisely quantify the damages and relief sought from each individual Defendant, but the Court finds this is not fatal to their claims. *See* ECF No. 1-1; *see e.g., Est. of Hanna v. Agape Senior, LLC*, 3:12-cv-02872-JFA, 2015 WL 247906, at *4 (D.S.C. 2015) (finding "significant relief" because damages could have been sought from either defendant, or both, though the complaint did not differentiate between sums sought from one defendant versus the other). Plaintiffs state in their Complaint that the putative class seeks actual, direct, indirect, resulting, consequential, and punitive damages against all Defendants, including the SC Subcontractors. ECF Nos. 1-1 at 14–16. Courts have found that similar relief structures weigh in favor of finding that "significant relief" is met. *See, e.g.*, *Fernandes v. D.R. Horton, Inc.*, 777 F. Supp. 3d 533, 549–50 (D.S.C. 2025); *Mungo v. Minn. Life Ins. Co.*, C/A No. 0:11-464-JFA, 2011 WL 2516934, at *4 (D.S.C. June 23, 2011) (finding a defendant significant because the plaintiff "seeks actual, statutory, and punitive damages from [that defendant]"). Importantly, a significant portion of the

16

aggregate relief sought by the putative class from the SC Subcontractors cannot be obtained directly from DRH because it does not build homes itself. ECF Nos. 1-1 at 4–6; 31-1 at 5, 18. Moreover, Plaintiffs claims against the SC Subcontractors are not for vicarious or some form of secondary liability, but rather, Plaintiffs assert that each of the SC Subcontractors is directly liable for their conduct. *See* ECF No. 1-1 at 13–16. Indeed, the crossclaims and third-party claims filed by DRH against the SC Subcontractors and multiple other non-local subcontractors,[7] many of whom were not named in the Complaint, further indicate that DRH believes the work done by subcontractors, like the SC Subcontractors, makes them liable for the construction defects and, likewise, the claims of the putative class. See ECF Nos. 1-1, 10. Thus, the putative class seek "significant relief" from the local defendants because every member of the putative class was harmed by the SC Subcontractors, and each member of the putative class seeks direct relief from the local Defendants. See *Fernandes*, 777 F. Supp. 3d at 549–50 (citing *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1167 (11th Cir. 2006)).

---

[7] DRH argues that the work of non-local subcontractors, many of whom were not named in Plaintiffs' Complaint, should be considered in analyzing whether Plaintiffs have met the requirements of the one significant defendant prong. *See* ECF No. 121 at 12–13 (arguing that the Court should also consider the work of Dupree Plumbing Co., Inc.; Rite Rug Co.; Brand Vaughan Lumber Company; Marlowe Environmental, LLC; Bianchi & Company, Inc.; and Bravo Carpenters, Inc.—none of whom are mentioned in Plaintiffs' Complaint—in determining whether Plaintiffs' have met their burden to meet the at least one defendant prong); *see also* ECF No. 1-1. As noted in *Kaufman*, the Court's analysis of the at least one significant defendant rule should "focus[] on the conduct of the Defendants—local and non-local—as alleged in the complaint." 561 F.3d at 157 n.13. Accordingly, the Court declines to consider the conduct and potential liability of parties who are not named in the Complaint in its analysis.

Without providing any direct evidence as to estimated damages at variance with Plaintiffs' claims of relief sought from the SC Subcontractors, DRH argues that Plaintiffs have failed to meet this burden because the SC Subcontractors only completed work for approximately a third of the type alleged to give rise to the claimed damages. ECF No. 121 at 12–13. Even if this assertion were true and supported by the record, the Court still finds that the SC Subcontractors are "significant" to Plaintiffs' claims. While the Fourth Circuit declined to adopt "a specific numerical threshold to resolve" what it means to be significant, the Fourth Circuit explained by example that where a local defendant was 25% liable, that defendant could be a significant defendant under the local controversy exception. *Skyline*, 148 F.4th at 230–31. The Fourth Circuit further explained that where a defendant was "not a peripheral player but rather was . . . central to the allegations in the complaint" and the plaintiff sought to hold defendant "responsible . . . for its *own* negligence" that meant the relief sought against the defendant is substantial. *Id.* at 232. As outlined above, even if the SC Subcontractors' conduct only amounts to a third of that which underlies Plaintiffs' claims for relief, Plaintiffs have sufficiently established that the SC Subcontractors are central to the allegations of their Complaint and that they seek to hold them responsible for their own negligence.

Accordingly, the Court finds that Plaintiffs have adequately shown that the putative class seeks "significant relief" from local defendants, the SC Subcontractors. Therefore, the Court finds that Plaintiffs have satisfied the second prong of the local controversy exception. *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II).

**D.  No Similar Class Actions Have Been filed against Defendants.**

18

The fourth prong of the local controversy exception requires that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii). The legislative history makes clear that the local controversy exception to CAFA was intended avoid the removal to federal court of class actions filed in state court which had a "truly local focus" in which the controversy "affects a particular locality to the exclusion of all others." S. Rep. No. 109-14, 2005 WL 627977 at **38. Further, the purpose of the "similar claim" language was intended to authorize removal to federal court claims that "can be coordinated with other overlapping or parallel class actions" or would be likely candidates for multidistrict litigation. *Id.*

The Parties contest whether one class action, *Baddorf v. D.R. Horton, Inc.*, No. 2022-CP-23-03974, precludes remand to state court. ECF Nos. 121 at 15–16; 148 at 10–11. Plaintiffs, anticipating that DRH would reference two other cases, also argue that the cases *Brunetti v. D.R. Horton, Inc.*, No. 2:23-cv-06006-RMG, remanded to Case No. 2023-CP-08-02903 (Berkeley Cnty. Ct. Comm. Pl.), and *Fernandes v. D.R. Horton*, 777 F. Supp. 3d 533 (remanding the action to the Dorchester County Court of Common Pleas, Dorchester, South Carolina), would not preclude remand. ECF No. 31-1 at 22.

First the Court finds that *Baddorf* does not preclude remand because it was not filed within the "3-year period preceding the filing of [this] class action." 28 U.S.C. § 1332(d)(4)(A)(ii) (using plain language to refer to the filing of the action as the calculus for determining the three-year benchmark); *see also Russo v. Eastwood Constr. Partners,*

*LLC*, No. 2:22-CV-1686-DCN, 2023 WL 2386453, at *18 (D.S.C. Mar. 7, 2023) (looking to the original filing date of actions to determine the applicable period for inquiry on similar class actions under CAFA); *Bridewell-Sledge v. Blue Cross of California*, 798 F.3d 923, 930 (9th Cir. 2015) ("[T]he relevant date under the fourth prong is the date when the actions were originally filed."). *Baddorf* was filed in the Greenville County Court of Common Pleas, Greenville, South Carolina on July 28, 2022. *See Baddorf*, No. 2022-CP-23-03974 (July 28, 2022, Complaint). As noted above, this action was filed in the Anderson County Court of Common Pleas, Anderson, South Carolina on September 5, 2025. *See* ECF No. 1-1. Accordingly, the Court finds that *Baddorf* does not preclude remand under CAFA's local controversy exception.

The Court now turns to whether *Brunetti* or *Fernandes*, which were both filed within the three-years preceding this action, preclude remand. In *Brunetti*, the plaintiff brought a putative action asserting claims of negligence and gross negligence, breach of implied warranties, and unfair trade practices due to an alleged defective septic system for homes in the French Quarter Creek subdivision in Berkeley County, South Carolina. *See Brunetti*, No. 2:23-cv-06006-RMG (Order re Motion to Remand, ECF No. 24). The plaintiff asserted these claims against DRH, as the developer of the subdivision, and Alternative Septic Services, LLC, as the subcontractor. *Id.* The plaintiff defined the proposed class as "all persons and entities that are owners of property developed by D.R. Horton within the French Quarter Creek subdivision, off South Carolina Highway 41, in Berkely County, South Carolina." *Id.* Likewise in *Fernandes*, the plaintiffs brought causes of action for negligence and gross negligence and breach of implied warranties due to allegedly

20

defective installation of roofing and exterior vinyl siding on homes in Legacy at Pine Forest, a subdivision located in Dorchester County, South Carolina. *See* 777 F. Supp. at 537. The plaintiffs asserted these claims against DRH, as the developer of the subdivision, and Archer Exteriors, Inc.; Professional Exteriors II, LLC; and several unnamed defendants, as the subcontractors. *Id.* at 537–38. The plaintiffs defined the proposed class in pertinent part as: "All persons and entities that own, in whole or in part, a home within the Legacy at Pine Forest development located in Dorchester County, South Carolina." *Id.* at 551.

The Court finds that while looking at these cases broadly there are some obvious similarities, the cases are dissimilar in several material aspects. Both *Brunetti* and *Fernandes* involve neighborhoods in the state of South Carolina whose construction was managed by DRH. In each of the cases, the plaintiffs seek to hold DRH and subcontractors liable for deficient construction of homes in these neighborhoods, including for very similar or the same defects that are alleged in this action. Each of these cases defines the class similarly as homeowners in the affected neighborhood. However, the Court finds that this case and the cases cited by Plaintiffs are dissimilar in several material respects. First, with respect to *Brunetti*, the alleged defects involved only septic systems whereas in this action Plaintiffs allege defects in exterior building envelopes (including roofing, masonry and siding cladding, and fenestration systems); floorings, MEP (mechanical, electrical, plumbing) deficiencies; water intrusion; insufficient storm water drainage; and consequential damage to non-defective building components. *See* ECF No. 1-1 at 7. Further, the subcontractor—Alternative Septic Services, LLC—who

21

allegedly performed the deficient work in *Brunetti,* is not a party to this action, nor does it appear that it has been implicated by any of the subsequent third-party complaints in this action. Additionally, the neighborhood in *Brunetti* is in Berkeley County, South Carolina, which is near the coast and has different land, different soil, and different weather conditions than that found in Piedmont, South Carolina, which is closer to the mountains. With respect to *Fernandes*, while both this action and the action in *Fernandes* involve alleged roofing and siding defects, it appears that the cases involve different subcontractors who performed that work. Additionally, like *Brunetti*, the neighborhood in *Fernandes* is in Dorchester County, South Carolina, which is near the coast and as noted has different geographical and ecological conditions than the neighborhood at issue in this case, which was in the upstate of South Carolina, closer to the mountains.

For the reasons outlined above, the Court finds that this case is sufficiently dissimilar from the cases cited by the Parties "because each case concerns different subdivisions, different homes, different building procedures, and separate acts of wrongdoing resulting in individualized harm to different classes of homeowners."[8] *Fernandes*, 777 F. Supp. 3d at 552. Establishing negligence, causation, and damages in these actions would be determined by the specific facts of each case with highly individualized proof required. Accordingly, the Court finds that neither side has identified any other class action filed in the last three years "asserting the same or similar factual

---

[8] While the Court finds that the lapse of more than three years since the initial filing of *Baddorf* and this action are sufficient in and of itself to find that *Baddorf* does not preclude remand of this action, the Court notes that because the two actions involve separate neighborhoods, the reasons stated herein would also support finding that *Baddorf* does not preclude remand.

allegations against any of the defendants," and the Court's research has not uncovered one either. 28 U.S.C. § 1332(d)(4)(A)(ii).  Therefore, the Court finds that Plaintiffs have established the fourth prong of CAFA's local controversy exception.

Because Plaintiffs have established all four prongs, the Court finds that Plaintiffs have carried their burden of proving that CAFA's local controversy exception applies. Accordingly, the Court must abstain from exercising jurisdiction, and this case is remanded to state court.

### IV. CONCLUSION

For the reasons discussed above, Plaintiffs' Motion to Remand [31] is **GRANTED**. This matter is remanded to the Anderson County Court of Common Pleas, Anderson, South Carolina.  All remaining pending motions are mooted by the Court's grant of Plaintiffs' Motion to Remand.[9]

IT IS SO ORDERED.

**s/ Donald C. Coggins, Jr.**
United States District Judge

May 4, 2026
Spartanburg, South Carolina

---

[9] To extent the Court finds the remaining pending motions are mooted by its ruling, the Court notes that this is without prejudice and does not prevent the Parties from reraising, as appropriate, the motions in state court.

23